QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Margret M. Caruso (Bar No. 243473)
  margretcaruso@quinnemanuel.com
  Cheryl A. Galvin (Bar No. 252262)
  cherylgalvin@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA  94065-2129
Telephone:      (650) 801-5000
Facsimile:      (650) 801-5100
Attorneys for Defendant
Google Inc.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| DANIEL JURIN, an Individual, | CASE NO. 2:09-cv-03065-MCE-KJM |
|         Plaintiff, | **GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR COSTS AND TO STAY THE PROCEEDINGS UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 41(d)** |
|     vs. | |
| GOOGLE, INC., | |
|         Defendant. | Date:  January 28, 2010<br>Time:  2:00 p.m.<br>Hon. Judge England, Jr. |

## NOTICE OF MOTION AND MOTION FOR COSTS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, January 28, 2010 at 2:00 p.m. in Courtroom 7 of the United States District Court for the Eastern District of California, Sacramento Division, located at 501 I Street, Suite 4-200, Sacramento, CA, 95814, defendant Google Inc. ("Google") will and hereby does move for an order requiring Daniel Jurin ("Jurin") to pay costs for the previous action he filed against Google in the Central District of California on June 2, 2009 and voluntarily dismissed on July 23, 2009.  Google will and hereby does also move for an order to stay the current proceedings until the plaintiff has complied with the order to pay costs.

Case No. :09-cv-03065-MCE-KJM
GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR COSTS AND TO STAY THE PROCEEDINGS
UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 41(d)

1       Google's motion for costs and to stay is brought pursuant to Federal Rules of Civil

2  Procedure ("FRCP") Rule 41(d), on the grounds that Jurin previously filed and dismissed an

3  almost identical complaint against Google.

4       This motion is based upon the accompanying memorandum of points and authorities, all

5  judicially noticeable facts, as well as the pleadings, records and files in this action.

6

7  DATED: December 30, 2009         QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP

8

9                                    By  /s/ Margret M. Caruso

10                                      Margret M. Caruso
                                    Attorneys for Defendant Google Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR COSTS AND TO STAY THE PROCEEDINGS
UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 41(d)

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The complaint Plaintiff Daniel Jurin ("Jurin") filed in this action includes substantively identical claims to those in the complaint Jurin filed in the Central District of California against Google on June 1, 2009.  After being served with the Central District complaint, Google prepared to defend that action—in that jurisdiction, before that Court, against Jurin's original lawyers.  But Jurin voluntarily dismissed that complaint on July 23, 2009.  Jurin's decision to re-file a complaint containing the same core claims against Google in the Eastern District of California renders many of the costs Google incurred in the first action fruitless and wasted.

The Federal Rules of Civil Procedure provide a means to protect defendants from incurring wasteful costs in connection with earlier filed and dismissed actions.  Specifically, Rule 41(d) allows the Court to order "the payment of costs of the action previously dismissed" and to "stay the proceedings in the action until the plaintiff has complied with the order."  Consistent with the protective purpose of the Rule, courts have construed "costs" under Rule 41 to include attorneys' fees.  To compensate it for costs incurred in connection with the earlier action that are not useful in this action, Google respectfully requests that Jurin be ordered to pay Google $6,030.52 and that this action be stayed pursuant to Rule 41(d) until Jurin complies with that order.

## STATEMENT OF RELEVANT FACTS

Plaintiff Jurin filed a complaint against Google and Does 1-10, inclusive, in the Central District of California on June 2, 2009.  *See* Declaration of Margret Caruso, dated December 30, 2009 ("Caruso Decl."), ¶ 3, Ex. A.  The complaint alleged violation of 15 U.S.C. § 1114(1), violation of 15 U.S.C. § 1125(a), violation of 15 U.S.C. § 1125(c), common law trademark infringement, tortious interference with economic advantage, California unfair competition, and unjust enrichment.  *Id.*  In connection with its defense of that action, Google incurred legal fees and expenses.  Google's counsel reviewed the complaint, began preparing a motion to dismiss, and had its lead trial lawyer admitted to the Central District of California.  Caruso Decl. ¶¶ 7-8.  In addition, Google's counsel had numerous communications with opposing counsel concerning its negotiation of a short extension of time, which was initially refused—requiring Google to begin

1   preparing a motion for an extension—and then partially granted, resulting in Google's first

2   stipulation for an extension of time.  Caruso Decl. ¶ 4, Ex. B, ¶¶ 7-8.  Google then obtained a

3   second extension, covering the time it sought in its initial request.  Caruso Decl. ¶ 5, Ex. C, ¶¶ 7-8.

4   Further, Google incurred costs through other communications with Jurin's lawyers about the status

5   of the case.  *Id.* ¶¶ 7-8.  On July 23, 2009, just one week prior to the due date of Google's

6   response, Jurin voluntarily dismissed his complaint without prejudice.  *Id.* ¶ 6, Ex. D.

7          On November 10, 2009, almost four months after dismissing the first complaint, Jurin

8   served a new complaint on Google, this time in the Eastern District of California, represented by

9   different counsel.  This complaint is based on the same facts as the first one, and purports to allege

10  the same claims, along with additional ones for negligent interference with prospective economic

11  advantage, negligent interference with existing economic relations, fraud and deceit, and

12  conversion.  Because the complaint in this action suffers from the same legal infirmities (and

13  additional ones) as the earlier complaint, Google does not seek reimbursement for fees incurred

14  for work done on the motion to dismiss in the first action.

15                                          **ARGUMENT**

16  I.     **RULE 41(D) PERMITS AN AWARD OF COSTS, INCLUDING ATTORNEYS'**

17         **FEES, OF A PREVIOUSLY DISMISSED ACTION WHEN THE SAME CLAIM**

18         **AGAINST THE SAME DEFENDANT IS RE-FILED.**

19                 Rule 41(d) of the Federal Rules of Civil Procedure provides:

20                 Costs of a Previously-Dismissed Action.  If a plaintiff who

21                 previously dismissed an action in any court files an action based on

22                 or including the same claim against the same defendant, the court:

23                 (1) may order the plaintiff to pay all or part of the costs of that

24                 previous action; and (2) may stay the proceedings until the plaintiff

25                 has complied.

26  Rule 41(d) is an expression of the Court's inherent power to protect defendants from the

27  harassment of repeated lawsuits by the same plaintiff on the same claims.  *See Hacopian v. United*

28  *States Dept. of Labor,* 709 F.2d 1295, 1296 (9th Cir. 1983) ("Courts have consistently found the

GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR COSTS AND TO STAY THE PROCEEDINGS
UNDER FEDERAL RULES OF CIVIL PROCEDURE RULE 41(d)

power to dismiss an action for nonpayment of costs in a prior action to be part of the inherent power of the courts.").  The remedies set forth in Rule 41(d) are a codification of a well-settled practice whereby a second action cannot be maintained for substantially the same relief asked for in a prior action until the costs of the first action have been paid.  This practice was designed to prevent vexatious litigation and also to enable a party who has incurred costs in defending a suit to obtain reimbursement of those costs before being subjected to further litigation relating to the same subject matter.  *See id.* at 1297 (citing *Weidenfeld v. Pacific Improvement Co.,* 101 F.2d 699, 700 (2d Cir. 1939) (Augustus Hand, J.)).

In light of Rule 41(d)'s purpose of protecting defendants from incurring unnecessary expenses, it is not necessary for a court to find bad faith to award costs if a defendant expended money preparing to defend the first action before it was dismissed.  *E.g., Chien v. Hathaway*, 17 F.3d 393, 1994 WL 48319, *1 (9th Cir. 1994) (upholding district court's order of costs and a stay where plaintiff filed a case, dismissed it, and re-filed it in a different venue several months later); *Esquivel v. Arau*, 913 F. Supp. 1382, 1388 (C.D. Cal. 1996) (awarding costs where plaintiff filed actions in New York, then filed an action in California federal court that included the same claims and additional ones and dismissed the New York actions).

Further, to foster Rule 41(d)'s policy to prevent forum shopping and vexatious litigation, courts have often awarded attorneys' fees as part of costs.  *E.g., Esquivel*, 913 F. Supp. at 1392 (awarding expenses and attorneys' fees).[1]  For example, in *Esquivel*, the plaintiff filed an action in New York state court and New York federal court.  913 F. Supp. at 1385.  The plaintiff later filed a complaint arising out of the same facts and asserting additional claims in the Central District of

---

[1]  *See also, e.g.,Meredith v. Stovall*, 216 F.3d 1087, 2000 WL 807355, * 1 (10th Cir. June 23, 2000) ("Under the language of Rule 41(d), the decision whether to impose costs and attorney's fees is within the discretion of the trial court"); *Evans v. Safeway Stores, Inc.,* 623 F.2d 121, 121 (8th Cir. 1980) (affirming award of attorneys' fees under Rule 41(d)); *Loubier v. Modern Acoustics, Inc.,* 178 F.R.D. 17, 23 (D. Conn. 1998) (awarding attorneys' fees under Rule 41(d)); *Whitehead v. Miller Brewing Co.*, 126 F.R.D. 581, 582 (M.D. Ga. 1989) (same); *Eager v. Kain,* 158 F. Supp. 222, 223 (E.D. Tenn. 1957) (stating that Rule 41(d) authorizes a court to "require the payment of costs, including attorneys' fees, of the previously dismissed action as a prerequisite to the filing of the [subsequent] action").

California, and then voluntarily dismissed the pending New York actions. *Id.* The U. S. District Court for the Central District of California found that under Rule 41(d) the defendants were entitled to costs, including attorney's fees, expended in litigating the plaintiff's earlier filed New York actions; except the Court would not impose any costs associated with work that would be useful to defendants in the newly filed action. *See id.* at 1388.

The *Esquivel* Court reasoned that Rule 41(d) permitted an award of fees because Rule 41(a)(2), which governs voluntary dismissals, has been read to allow the imposition of attorneys' fees as a condition of dismissal: "The fact that Rule 41(a)(2) has been a basis to impose fee award 'conditions' lends support to the proposition that Rule 41(d) 'costs' awards should also include attorneys' fees." *Id.* at 1391. The Court explained that it would be inconsistent for a court to award fees as a condition of a voluntary dismissal but not to allow an award of fees when a case that was previously voluntarily dismissed is re-filed. *See id.*

## II.   GOOGLE IS ENTITLED TO COSTS, INCLUDING ATTORNEY'S FEES, AND TO A STAY OF THESE PROCEEDINGS.

The complaint filed in this action includes the exact claims (in addition to others) as the complaint Jurin filed and dismissed in the Central District of California against Google. *Compare* Counts I-VI of Central District Complaint (Caruso Decl., ¶ 3, Ex. A) *with* Counts I-IV, VII, X, XI of the Complaint in this action. As such, Jurin should "pay all or part of the costs of that previous action" to compensate Google for the expenses that it incurred. Fed. R. Civ. Proc. R. 41(d)(1). As detailed in the accompanying Declaration of Margret M. Caruso, the $6,030.52 for which Google seeks compensation is specific to costs incurred in connection with the first complaint in the Central District of California and that are inapplicable to the current action. Caruso Decl. ¶¶ 7-9, 11-14. In particular, Google does not seek reimbursement for costs such as legal research directed to the substantive allegations of the complaint, which may be of use to it in this action. The costs Google seeks in connection with the first action are reasonable and should be reimbursed by Jurin in full. These costs should include all of the attorneys' fees and expenses that Google seeks, including the fees of Quinn Emanuel, whose rates have been repeatedly approved by federal and

state courts. *See*, *e.g.*, Order Awarding Compensation for First Application for Compensation of Quinn Emanuel Urquhart Oliver & Hedges, LLP, Special Litigation Counsel for Debtors, *In re G-I Holdings Inc.*, Case Nos 01-30135 and 01-38790 (Bankr. D. N.J. Nov. 19, 2009); Order Granting Plaintiff's Motion for Award of Attorneys' Fees, *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, Mono Superior Court Case No. 15954 (Oct. 8, 2008); Order re Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensation to Representative Plaintiffs, *Bistro Executive, Inc. v. Rewards Network, Inc.*, Case No. CV04-4640 (C.D. Cal. Nov. 19, 2007); Order Setting Sanctions Pursuant to Fed. R. Civ. P. 11, *Eon-Net, L.P. v. Flagstar Bancorp, Inc.*, Case No. C05-2129MJP (W.D. Wash. Dec. 19, 2006).

In addition, this action should be stayed pending Jurin's payment of Google's costs. *See*, *e.g.*, *Chien*, 1994 WL at *1; *Esquivel*, 913 F. Supp. at 1393. Google requests this stay to prevent additional unnecessary expense to Google, and to ensure that Google is compensated for its prior costs.

## **CONCLUSION**

For the foregoing reasons, Google's motion for costs and for a stay of the proceedings should be granted.

DATED: December 30, 2009        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By /s/ Margret M. Caruso
     Margret M. Caruso
     Attorneys for Defendant Google Inc.

# Appendix of Unreported Citations
## (Pursuant to Local Rule 133(i)(3))



**Reference 1**

QUINN EMANUEL URQUHART
OLIVER & HEDGES LLP
Andrew J. Rossman (AJR-NY-0596)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7199
Facsimile: (212) 849-7100

*Special Litigation Counsel for the Debtor*



| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | In Proceedings for Reorganization under Chapter 11 |
|---|---|
| In Re:  G-I HOLDINGS INC., et al.,<br><br>Debtors. | Case Nos.: 01-30135 and 01-38790 (RG) Jointly Administered<br><br>Judge: Honorable Rosemary Gambardella, U.S.B.J. |

### ORDER AWARDING COMPENSATION FOR FIRST APPLICATION FOR COMPENSATION OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, SPECIAL LITIGATION COUNSEL FOR DEBTORS

The relief set forth on the following page, numbered two (2), is hereby **ORDERED.**

11-19-09   USBJ

Dbt f !12.41246.SH!!!!Epd!: 882.2!!!!G๓hel22016๐!: !!!!Fou่ sี e!22016๐!: !27;36;49!!!!Ef t d
!Qspqpt f e!P se่ s!!!!Qbhf !3!pg3

Case Nos. 01-30135 and 01-38790 (RG) (Jointly Administered)
Order Awarding Compensation to Quinn Emanuel for First Application of Fees and
Disbursements of Expenses

THIS MATTER having been opened to the Court pursuant to the First Interim Fee

Application of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel"), special

litigation counsel to the Debtors, and the Court having read and considered the First Interim Fee

Application filed pursuant to this Court's Order Establishing Procedures for Interim

Compensation; and for good cause shown,

IT IS ORDERED that the following awards of interim compensation be and the same are

hereby approved:

| APPLICANT | FEES | DISBURSEMENTS | TOTAL |
|-----------|------|---------------|-------|
| Quinn Emanuel Urquhart Oliver & Hedges, LLP | $236,770.20<br><br>(90% holdback of $263,078.00) | $6,794.68 | $243,564.88 |

and it is further

ORDERED that the Debtors are authorized to pay the amounts awarded herein,

credit all retainers, if any.

2

**EXHIBIT C**

| NAME OF PROFESSIONAL | TITLE AND YEAR ADMITTED (OR YEARS OF PROFESSIONAL SERVICE) | HOURS | RATE | FEE |
|---|---|---|---|---|
| 1. Andrew J. Rossman | Partner as of April 15, 2009, admitted in 1993 | 104.00 | $775.00 | $80,600.00 |
| 2. Scott C. Shelley | Counsel, admitted in 1993 | 3.30 | $680.00 | $2,244.00 |
| 2. Christopher D. Kercher | Associate for 4 years, admitted in 2005 | 171.80 | $520.00 | $89,336.00 |
| 3. Jeffrey C. Berman | Associate for 3 years, admitted in 2006 | 56.50 | $480.00 | $27,120.00 |
| 4. Harrison L. Denman | Associate for 3 years, admitted in 2006 | 11.70 | $480.00 | $5,616.00 |
| 5. Marc A. Palladino | Associate for 2 years, admitted in 2007 | 16.10 | $450.00 | $7,245.00 |
| 6. Elinor C. Sutton | Associate for 1 year, admitted in 2008 | 79.60 | $420.00 | $33,432.00 |
| 7. Curtis Waldo | Law Clerk | 8.00 | $310.00 | $2,480.00 |
| 8. Morgan Brady | Paralegal | 39.80 | $265.00 | $10,547.00 |
| 9. Shahreen Mehjabeenm | Paralegal | 0.20 | $265.00 | $53.00 |
| 10. James Bandes | Lit Support | 0.70 | $250.00 | $175.00 |
| 11. Joe Liao | Lit Support | 27.60 | $150.00 | $4,140.00 |
| 12. Michael Lee | Lit Support | 0.60 | $150.00 | $90.00 |
| | Total: | 519.90 | | $263,078.00 |



**Reference 2**



1 QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
   John B. Quinn (Bar No. 090378)
2    johnquinn@quinnemanuel.com
   Daniel L. Brockett (Bar No. 237551)
3    danbrockett@quinnemanuel.com
   John M. Pierce (Bar No. 250443)
4    johnpierce@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100

7  Attorneys for Mammoth Lakes Land
   Acquisition, LLC

8

9

**FILED**

OCT - 8 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF MONO
BY _____

9

                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10

11                              COUNTY OF MONO

12

13  MAMMOTH LAKES LAND ACQUISITION,        CASE NO. 15954
    LLC, a California Limited Liability Company,
14                                         [~~PROPOSED~~] ORDER GRANTING
                   Plaintiff,              PLAINTIFF'S MOTION FOR AWARD OF
15                                         ATTORNEYS' FEES
             v.
16                                         (BY "FAX")
    TOWN OF MAMMOTH LAKES, a
17  California Municipality,               [FILED CONCURRENTLY HEREWITH:
                                           NOTICE OF MOTION AND MOTION
18                 Defendant.              FOR AWARD OF ATTORNEYS' FEES
                                           AND MEMORANDUM IN SUPPORT,
19                                         DECLARATION OF JOHN M. PIERCE,
                                           DECLARATION OF JAY R. BECKER,
20                                         AND LODGING OF AUTHORITIES]

21                                         Date:   ~~July 9, 2008~~ OCT - 7 2008
                                           Time:   9:30 a.m.
22                                         Crtrm.: Telephonic
                                           Judge:  Honorable Roger D. Randall
23
                                           Date Action Filed:   November 20, 2006
24                                         Trial Date:          April 7, 2008

25

26

27

28

1     ~~[PROPOSED]~~ ORDER

2

3          AND NOW, this _7_ day of _October_, 2008, upon consideration of

4    Plaintiff's Motion For Award of Attorneys' Fees, papers filed concurrently therewith, papers filed

5    in opposition thereto, arguments of counsel and other matters of record, the Court finds that:

6          A.    the total hours claimed are reasonable, _except as modified by the Court_

7          B.    the rates claimed are reasonable and market rates, and

8          C.    the total amount of attorneys' fees requested is reasonable _as modified by the Court_

9          Therefore, it is hereby **ORDERED** that Plaintiff's Motion for Award of Attorneys'

10   Fees is **GRANTED** and Plaintiff is awarded the amount of $~~9,060,576.75~~ in attorneys' fees.
                                                          _$2,361,130_

11

12          **IT IS SO ORDERED.**

13   DATED:    _10 / 8_ , 2008

14

15

16   _____
     The Honorable Roger D. Randall
17   Judge of the Superior Court

18

19

20

21

22

23

24

25

26

27

28



**Reference 3**



1

2

3

4

5

6

7       **UNITED STATES DISTRICT COURT**

8       **CENTRAL DISTRICT OF CALIFORNIA**

9       **WESTERN DIVISION**

10

11      BISTRO EXECUTIVE, INC., et al.,        No. CV04-4640 CBM

12              Plaintiffs,

13      v.                                      ORDER RE PLAINTIFFS' MOTION
                                                FOR AWARD OF ATTORNEYS' FEES,
14      REWARDS NETWORK, Inc., et al.           REIMBURSEMENT OF EXPENSES,
                                                AND COMPENSATION TO
15              Defendant.                      REPRESENTATIVE PLAINTIFFS

16

17

18          The matter before the Court, the Honorable Consuelo B. Marshall, United

19      States District Judge presiding, is Plaintiffs' Motion for Award of Attorneys' Fees,

20      Reimbursement of Expenses, and Compensation to Representative Plaintiffs.

21                              **JURISDICTION**

22          This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

23                  **FACTUAL AND PROCEDURAL HISTORY**

24          This class action was brought on behalf of restaurants and their owners

25      ("Plaintiffs") against Rewards Network, Inc. and its affiliates ("Rewards Network").[1]

26      In March 2007, the parties entered into a proposed settlement agreement, which was

27      ─────────────────────
        [1] The parties are well acquainted with the pre-settlement history of this litigation, and the Court
28      does not recite it here.

1    finally approved by this Court on July 25, 2007. *See* Final Approval of Class Action

2    Settlement. Under the terms of the Settlement, Class Members are expected to

3    receive between 26.6 million and $28.8 million, primarily in cash and, to a lesser

4    extent, airline miles, and $32 million in debt relief. The total value of the Settlement

5    to Class Members is expected to be approximately $60 million. Declaration of

6    Daniel Brocket ("Brocket Decl.") ¶ 42.

7         As part of the Settlement, Defendants agreed not to oppose Class Counsel's

8    application for attorneys' fees and expenses up to $11 million. Brockett Decl. ¶ 34.

9    The issue of attorneys' fees was negotiated separately from the benefits to be paid to

10   Class Members. *Id.* Defendants also agreed to make a separate $50,000 payment to

11   each of the three individual Class Representatives, subject to court approval. *Id.*

12   Class Members were required to file any objections to the Proposed Settlement,

13   including the proposed attorney fee application, by May 25, 2007. Class Notice at 5.

14   No objections were filed.

15        On June 4, 2007, Class Counsel filed the instant Motion requesting that the

16   Court approve an $11 million payment for attorney fees and expenses and $50,000 in

17   Class Representative compensation as negotiated by the parties. The proposed $11

18   million fee includes all services and expenses incurred by Class Counsel in this

19   action, whether incurred before or after final approval of the Settlement. Brockett

20   Decl. ¶ 34. The fee will be paid in addition to, and not from, amounts paid to the

21   Class. *Id.* At the hearing on the Motion, the Court ordered Class Counsel to submit

22   additional information, including detailed billing records, in support of the requested

23   fees. The Court, having reviewed the pleadings and evidence submitted in support of

24   the fee application, hereby approves an award for attorneys' fees and expenses of

25   $10,260,000 to Class Counsel, and an award of $50,000 to each Class Representative,

26   for the reasons set forth below.

27   ///

28   ///

-2-

1                              **DISCUSSION**

2    **I. WHETHER THE PROPOSED ATTORNEY FEE IS REASONABLE**

3          In class actions, the district court has broad authority over the award of

4    attorney fees. *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 472 (9th Cir. 1997). "In

5    'common-fund' cases where the settlement or award creates a large fund for

6    distribution to the class, the district court has discretion to use either a percentage or

7    lodestar method" to determine an appropriate fee award. *Hanlon v. Chrysler Corp.*,

8    150 F.3d 1011, 1029 (9th Cir. 1998); *In re Washington Public Power Supply Sys. Sec.*

9    *Litig.* (hereinafter "*WPPSS*"), 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). Regardless of

10   the approach used, the attorney fee award must be reasonable under the

11   circumstances. *WPPSS*, 19 F.3d at 1295 n.2. Courts that adopt the percentage

12   method routinely perform a "lodestar cross-check" to assess the reasonableness of the

13   percentage fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002)

14   ("Calculation of the lodestar, which measures the lawyers' investment of time in the

15   litigation, provides a check on the reasonableness of the percentage award."); *In re*

16   *HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 914 (N.D. Cal. 2005) (observing

17   that lodestar cross-checks against percentage fees are "now in common use").

18         The presence of an arms' length negotiated agreement among the parties

19   weighs strongly in favor of approval, but such an agreement is not binding on the

20   court. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) *citing Jones v.*

21   *Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 884 (2d Cir. 1983). In a "class

22   action, whether the attorneys' fees come from a common fund *or are otherwise paid*,

23   the district court must exercise its inherent authority to assure that the amount and

24   mode of payment of attorneys' fees are fair and proper." *Staton*, 327 F.3d at 964

25   *quoting Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328 (9th Cir. 1999).

26   Thus, even though Defendants have agreed to pay fees independently of any

27   monetary recovery to Class Members, the Court is obligated to carefully scrutinize

28   the fee award to "assure itself that the fees awarded in the agreement were not

                                      -3-

1  unreasonably high, so as to ensure that class members' interests were not

2  compromised in favor of those of class counsel." *Id.* at 964-65.

3      **A. The Proposed Fee Award As a Percentage of the Common Fund**

4      Under the percentage method, the court awards class counsel a percentage of

5  the fund sufficient to provide them with a reasonable fee. *Hanlon,* 150 F.3d at 1029;

6  *WPPSS,* 19 F.3d at 1295 n.2 *citing Paul, Johnson, Alston & Hunt v. Graulty,* 886

7  F.2d 268, 272 (9th Cir. 1989). The Ninth Circuit has established 25 percent of the

8  common fund as a "benchmark" award for attorney fees. *Hanlon,* 150 F.3d at 1029;

9  *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.

10  1990).

11      Class Counsels' requested $11 million fee is inclusive of all services and

12  expenses and represents 18.33% of the expected $60 million value to the Settlement

13  Class. *See* Brockett Decl. ¶ 3. However, Class Counsel have incurred out-of-pocket

14  expenses of $862,341, to date. *Id.* at 36. The Court has reviewed the itemized

15  expenses and finds them to be reasonable. Excluding the $862,341 in expenses from

16  the percentage calculation, the net requested fee ($10,137,659) represents 16.90% of

17  the expected $60 million benefit to the Class. Thus, depending on whether expenses

18  are included in the calculation, Class Counsels' requested fee ranges between 16.90%

19  and 18.33% of the total settlement value. A fee within this range is significantly

20  lower than the Ninth Circuit's 25 percent "benchmark" fee. It also appears to be on

21  the low end of percentage fees recovered in class action cases. *See e.g., In re HPL*

22  *Tech.,* 366 F. Supp. 2d at 918 (surveying attorney fee awards in securities class action

23  cases with a gross recovery of $20 to $30 million and concluding that the mean

24  percentage fee award, between the mid-1970's and mid-2002, was 27.7 percent); *In*

25  *re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming fee

26  representing 33.3 percent of recovery); *see also Glass v. UBS Fin. Serv., Inc.,* C-06-

27  4068, slip op., 2007 WL 221862 at *15-16 (C.D. Cal. Jan. 26, 2007) (awarding $11

28  million fee representing 25 percent of fund).

-4-

1    However, courts have observed that the appropriate common fund percentage
2    fee award may change depending on the size of the fund. *See e.g., WPPSS*, 19 F.3d
3    at 1297. "[P]icking a percentage without reference to all the circumstance of the
4    case, including the size of the fund, would be like picking a number out of the air."
5    *Id.* This concern is particularly salient where, as here, the Court is faced with a large
6    settlement fund. *See id.* The benchmark percentage may "be adjusted, or replaced by
7    a lodestar calculation, when special circumstances indicate that the percentage
8    recovery would be either too small or too large in light of the hours devoted to the
9    case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311. In order
10   to determine whether any adjustments should be made to the percentage award in this
11   case, the Court cross-checks the reasonableness of the percentage fee through
12   evaluation of the appropriate fee using the lodestar method.
13       **B. Lodestar Cross-Check**
14       · Under the lodestar method, the district court first establishes a "lodestar" by
15   multiplying the number of hours reasonably expended on the litigation by a
16   reasonable hourly rate. *WPPSS*, 19 F.3d at 1295 n.2; *City of Burlington v. Dague*,
17   505 U.S. 557, 559 (1992); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945
18   (9th Cir. 2007). Once the "lodestar" is calculated, the court may enhance the lodestar
19   with a "multiplier," if necessary, to arrive at a reasonable fee. *WPPSS*, 19 F.3d at
20   1295 n.2 *citing Blum v. Stenson*, 465 U.S. 886, 888 (1984). However, there is a
21   "strong presumption" that the lodestar represents the "reasonable fee." *Fischel v.*
22   *Equitable Life Assur. Soc'y of United States*, 307 F.3d 997, 1007 (9th Cir. 2002).
23       1. Reasonableness of Requested Rate
24       A critical inquiry for purposes of determining a reasonable attorneys' fee is the
25   reasonable hourly rate. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.
26   1987) *citing Blum*, 465 U.S. at 895 n.11. The prevailing market rate in the community
27   is indicative of a reasonable hourly rate. *Id.* The fee applicant has the burden of
28   producing satisfactory evidence, in addition to the affidavits of its counsel, that the

-5-

1  requested rates are in line with those prevailing in the community for similar services

2  of lawyers of reasonably comparable skill and reputation. *Id.* at 1263.

3                              a. Attorney Timekeepers

4       Two firms, Quinn Emmanuel ("Quinn") and Anat Levy & Associates, P.C.,

5  ("Levy") served jointly as Class Counsel in this case. Class Counsel have provided

6  the Court with a list of the individual attorneys who worked on this matter, and their

7  current hourly rates. *See* Brockett Decl. ¶ 48 ("Lodestar Chart"); Declaration of Anat

8  Levy ("Levy Decl.") ¶ 11; Supplemental Declaration of Anat Levy ("Levy Supp.") ¶

9  2. The use of current hourly rates is appropriate because it accounts for the time

10  value of money where, as here, Class Counsel have not been paid contemporaneously

11  with their work in this case. *In re Coordinated Pretrial Proceedings in Petroleum*

12  *Prod. Antitrust Litig.*, 109 F.3d 602, 609 (9th Cir. 1997) (holding the district court has

13  discretion to compensate for delayed payment by either applying current rates or

14  applying historical rates with a prime rate enhancement); *Welch*, 480 F.3d at 947

15  (same).

16       Quinn's quoted rates range from $290 to $440 per hour for associates and from

17  $505 to $700 per hour for counsel and partners. As evidence of the reasonableness of

18  these fees, Quinn submits the most recent National Law Journal survey of the nations

19  250 largest law firms and their billing rates. Brockett Decl. ¶ 51, Exh. B. The survey

20  includes several Los Angeles-based firms who, like Quinn, have more than 200

21  attorneys. *Id.* The hourly rates charged by these firms ranged from $415 to $825 for

22  partners, and from $215 to $475 for associates. *Id.* Thus, the hourly rates of Quinn

23  attorneys fall within the range of rates charged by other large Los Angeles area firms.

24  *Id.* In addition, although based in Chicago, Reward Network's counsel, Jenner &

25  Block, have comparable rates ranging from $230 to $395 per hour for associates, and

26  from $410 to $800 for partners. *Id.*

27       Quinn has also provided the Court with its firm biography, in which it

28  promotes its litigation and trial experience and reports that it has won 92 percent of

                                        - 6 -

1  the 1160 cases it has tried. Brockett Decl. ¶ 47, Exh. A. Quinn reports that it
2  represents Fortune 500 companies, as well as smaller companies in numerous
3  industries including entertainment, venture capital, banking, semiconductor, health
4  care, and securities. *Id.* Given its breadth of experience and track record, Quinn's
5  rates appear to be in line with those prevailing in the Los Angeles legal community
6  for the services of a large firm of reasonably comparable skill and reputation.

7          Levy submitted hourly rates for three attorney timekeepers. The first is Ms.
8  Levy's own hourly rate of $495 per hour, which is amply justified by Ms. Levy's
9  experience and track record. Ms. Levy has been a litigator for more than 20 years,
10  the last seven of which have been with her own firm. Levy Decl. ¶ 15. Ms. Levy's
11  firm handles transactional and litigation matters for clients in business and
12  entertainment, and is currently serving as co-counsel in two other large class action
13  lawsuits. *Id.* Prior to starting her firm, Ms. Levy supervised large, multi-party
14  lawsuits worldwide on behalf of Paramount records. She has also served as a pro-tem
15  judge, mediator and arbitrator with the California Superior Court for more than 13
16  years. *Id.* Given the length and breadth of her experience, Ms. Levy's hourly rate
17  appears to be reasonable, especially when juxtaposed against those of partners at
18  large Los Angeles firms. Levy also employed two contract attorneys to assist on a
19  limited basis. Attorney Speigel, who billed at $275 per hour, is a lawyer with 22
20  years experience. Levy Supp. ¶ 2. Attorney Cohn, who billed at $225 per hour, has
21  21 years experience and now serves as an administrative judge. *Id.* The contract
22  attorneys' considerable experience justifies their hourly billing rates.

23          Based on the foregoing, the Court is satisfied that the hourly rates requested by
24  Class Counsel for attorney timekeepers are reasonable and consistent with prevailing
25  market rates.

26                          b. Non-Attorney Timekeepers

27          Quinn also requests that fees be awarded for the work of ten law clerks,
28  paralegals and case assistants. Reasonable fees for non-attorney timekeepers may be

-7-

1   recovered as part of the lodestar amount. *Missouri v. Jenkins*, 491 U.S. 274, 285

2   (1989) (holding "reasonable attorney's fees" under § 1988 should compensate for

3   paralegal and law clerk work). To establish the reasonableness of the non-attorney

4   timekeeper fees, Class Counsel provided excerpts from the International Paralegal

5   Management Association's Annual Compensation Survey for Paralegals/Legal

6   Assistants and Managers, 2007 Edition, which indicates that the average amount

7   charged for paralegals in the "Los Angeles – Long Beach" area is $190 per hour, and

8   the median is $195 per hour. Supplemental Declaration of Daniel Brockett

9   ("Brockett Supp.") ¶ 11, Exh. B. The hourly rate indicated for paralegals in Quinn's

10  Lodestar Chart is $195 hour, which is equal to the median rate and therefore appears

11  reasonable.

12      The survey also indicates that the mean and median billing rates for

13  Clerk/Project Assistants are $125 and $135, respectively. Quinn has asked the Court

14  to approve Case Assistant billing rates of $195 per hour, which is $60 per hour higher

15  than the median rate. The Court finds that Quinn has not established the

16  reasonableness of its Case Assistant rate and reduces that hourly rate to $135.00 per

17  hour. *See* Section I.B.3, *infra*.

18      Finally, Quinn staffed three summer associates on this matter at a rate of $210

19  per hour. The Court finds this rate, at $80 per hour below Quinn's junior associate

20  rate, to be reasonable.

21          2.   Reasonableness of Hours Claimed

22      The party seeking fees bears the burden of documenting the hours expended

23  and must submit evidence supporting those hours and the rates claimed. *Welch*, 480

24  F.3d at 945-46 *citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In

25  determining the appropriate lodestar amount, the court may exclude from the fee

26  request any hours that are "excessive, redundant, or otherwise unnecessary." *Id.*

27      According to the Lodestar Chart submitted by Quinn in support of the attorney

28  fee award, Quinn attorneys and legal staff worked a total of 7727 hours on this matter

-8-

1    through June 3, 2007. Brockett Decl. at 9-10. However, the billing statement
2    submitted in response to this Court's Order indicates that, as of June 3, 2007, 7708.3
3    hours had been billed. *See* Brockett Supp., Exh. A at 148. The Court's review of
4    these records indicates that attorney Brockett's hours were understated by 10.5 and
5    attorney Parker's hours were overstated by 29.2 in the original Lodestar Chart as
6    compared to the billing record statement.[2] Quinn provides no explanation for this
7    disparity. Because the Court has not been provided an explanation for these
8    discrepancies, the Court excludes the understated and overstated amounts from the
9    calculation of reasonable lodestar hours. *See* Section I.B.3, *infra.*

10    The attorney hours reflected on Levy's billing statement also differ from the
11    hours used in Class Counsel's lodestar calculation. Ms. Levy's original declaration
12    indicates that she personally worked more than 1,217.50 hours on the litigation, and
13    that contract attorneys worked 42 hours, for a total of 1259.5 hours. Levy Decl. at 3-
14    4. However, Levy's billing statement indicates a total of 1206 attorney hours were
15    billed through June 4, 2007, including contract attorney hours. *See* Levy Supp., Exh.
16    A at 37. Ms. Levy declares that the discrepancy is due to inadvertent entries
17    identified upon review of the statement, which have been corrected. The Court
18    therefore adopts the revised hours reflected in the billing statement as the starting
19    point for its review of the Levy firm's reasonable hours.

20                              a.   Block Billing

21    The vast majority of Class Counsels' billing entries are block-billed. "Block
22    billing" is the time-keeping method by which each lawyer and legal assistant enters
23    the total daily time spent working on a case, rather than itemizing time expended on

24    ─────────────────
     [2] The Lodestar Chart indicates Brockett worked 1,886.50 hours as of June 3, 2007. Brockett Decl.
     at 10. The billing statement indicates Brockett worked a total of 1899 hours, 2 of which were after
25    June 3. (Brockett Supp., Exh. A). Excluding the 2 hours Brockett worked after June 3, this amounts
     to a difference of 10.5 hours.
26
     The lodestar chart indicates Parker worked 893 hours as of June 3. Brockett Decl. at 10. The
27    billing statement indicates Parker worked a total of 868.8 hours, 5 of which were after June 3.
     Brockett Supp., Exh. A. Excluding the 5 hours Parker worked after June 3, this amounts to a
28    difference of 29.2 hours.

1    specific tasks. *Welch*, 480 F.3d at 945 n.2. Because Class Counsels' billing

2    statements lump together multiple tasks, it is impossible for this Court to determine

3    how much time was spent on particular activities, or to evaluate whether the time

4    spent on such tasks was reasonable. *See id.* at 948. Furthermore, a 2003 study by the

5    California State Bar's Committee on Mandatory Fee Arbitration concluded that block

6    billing "may increase time by 10% to 30%." *Id. citing* The State Bar of California

7    Committee on Mandatory Fee Arbitration, Arbitration Advisory 03-01 (2003).

8    Accordingly, the Ninth Circuit has approved fee reductions to account for increased

9    hours attributable to block billing. *Welch*, 480 F.3d at 948.

10    Because Class Counsel failed to provide the Court with billing records that

11    enable it to conduct a thorough review of the reasonableness of the requested fee, the

12    Court finds that a 5% reduction should be applied to the lodestar amount to account

13    for increased time that may have resulted from block billing. Although the Court has

14    not calculated a precise percentage, substantially more than half of all hours

15    submitted by Class Counsel are block-billed. In order to ensure that reductions are

16    not taken on billing entries that contain single tasks, the 5% reduction will only be

17    applied to 50% of the total lodestar amount. *See Welch*, 480 F.3d at 948 (holding any

18    reduction for block billing must fairly account for those hours actually billed in block

19    format).

20                                    b. Attorney Attendance at Hearings

21    The billing records indicate that, with the exception of the hearing on

22    Plaintiff's Motion to Remand, which was attended by two attorneys for the Class,

23    Plaintiffs were represented by more than two attorneys at every hearing. Absent

24    unusual circumstances, this Court believes that a single attorney is sufficient to

25    represent each party at a hearing. However, the Court recognizes that counsel Levy

26    personally represented Class Representative Averna in an earlier, related, proceeding,

27    and was the primary contact for all three Class Representatives. Because of Ms.

28    Levy's unique role in this litigation, the Court approves her attendance at each of the

- 10 -

1   hearings, in combination with counsel from Quinn. Further, Defendants had as many,
2   and often more, attorneys in attendance at every hearing save one.[3] Thus, it appears
3   that both parties believed this case was complex and justified the presence of more
4   than one attorney at the hearings. In light of the foregoing, the Court will approve
5   payment for all attorneys that appeared at hearings in this matter.

6                   c. Attorneys That Billed Minimal Time

7       Because Quinn staffed this matter with 35 attorneys and summer associates, the
8   Court reviewed the billing records to ascertain whether any of the work performed
9   appeared to be redundant or unnecessary. The Court paid particular attention to
10  attorneys billing a limited number of hours to ensure that they made substantive
11  contributions to the case despite their limited involvement. Based on this review, the
12  Court excludes the following attorney hours from the lodestar calculation because all
13  or a majority of their time appears to have been spent getting up to speed on the case:

14      • John S. Gordon: Attorney Gordon spent 3.6 hours reviewing pleadings,
15        reviewing legal and fact research, reviewing correspondence and participating
16        in three conferences with attorney Doroshow.
        • Scott G. Larson: Attorney Larson spent 11.6 hours in conference calls
17        regarding the background of the case and reviewing the pleadings, contracts
18        and a deposition transcript.

19      The remaining attorneys billing less than 12 hours do not appear to have
20  performed duplicative or unnecessary work and their hours will not be excluded from
21  the lodestar calculation. Several of these attorneys appear to have been consulted for
22  their expertise in a particular area. For example, attorney Hawxhurst participated in a
23  single conference with attorney Brockett regarding 17200 issues, attorney Land's
24  time was dedicated to electronic discovery issues, and attorney Bromberg's time
25  focused on appellate issues relating to Defendants' mandamus petition. Other

26

27  _____
    [3] Only two defense counsel appeared at the hearing on Cross Motions for Summary Judgment.
28  Plaintiffs were represented by four attorneys at the same hearing.

                                    – 11 –

1     attorneys who billed 12 hours or less appear to have spent only a limited amount of

2     time "getting up to speed" before performing discrete research assignments.

3                   3. Lodestar Calculation

4        Quinn's Lodestar: According to Quinn's Lodestar Chart, Quinn attorneys and

5     non-attorney timekeepers worked a total of 7,727 hours through June 3, 2007.

6     Brockett Decl. ¶ 48. Multiplying these hours by the hourly rate for each timekeeper

7     results in a total fee of $ 3,616,607.50. Using this amount as a starting point, the

8     Court makes the following adjustments to arrive at the lodestar for Quinn's work on

9     behalf of the Class:

10         (1)    As set forth in Section B.1.b., *supra*, the hourly rate for Quinn's Case

11                Assistants is $60 per hour higher than the median rate for Clerk/Project

12                Assistants in the local community. Multiplying $60 per hour by the 36.7

13                hours billed by Case Assistants amounts to $2,202.00, which will be

14                deducted from Quinn's proposed lodestar.

15         (2)    To eliminate unnecessary or redundant hours from the lodestar, the

16                Court also deducts the $2322 billed by attorney Gordon, and the $6032

17                billed by attorney Lawson for a total deduction of $8,354.

18         (3)    To account for unexplained discrepancies in hours, the Court deducts

19                10.5 hours for attorney Brockett and 29.2 hours for attorney Parker.

20                This amounts to a deduction of $7,350 (10.5 hours x $ 700) for Brockett,

21                and $8,468 (29.2 x $290) for Parker, for a total deduction of $15,818.

22        The Court deducts the total adjustments ($26,374) from Quinn's proposed

23     lodestar (3,616,607.50) for a balance of $3,590,233.50. To this balance, the Court

24     adds $585,373.25 (the Levy firm's fees charged through June 3), for a total of

25     $4,175,606.75. Finally, the Court reduces 50% of this fee by 5%, or $104,390.17 to

26     arrive at a Class Counsel lodestar in the amount of $4,071,216.58.

27     ////

28     ////

1    4. Lodestar Multiplier

2          Although the $4,071,216.58 lodestar presumptively represents a reasonable fee

3    (*Fischel*, 307 F.3d at 1007), upward adjustments of the lodestar by use of multipliers

4    are proper in exceptional cases. *Jordan*, 815 F.2d at 1262. The fee applicant who

5    seeks more than the lodestar amount has the burden of showing that "such an ·

6    adjustment is necessary to the determination of a reasonable fee.'" *Blum*, 465 U,S. at

7    898. Class Counsel argue that factors including Class Counsels' experience and skill,

8    the novelty of issues presented, Class Counsels' efforts on behalf of the Class, and the

9    favorable result obtained justify an enhancement to the lodestar. The Court finds that

10   these factors are reflected in the lodestar, and does not consider them as independent

11   bases for increasing the fee award. *See Wing v. Asarco, Inc.*, 114 F.3d 986, 989 (9th

12   Cir. 1997) (identifying factors "ordinarily reflected in the lodestar"); *Pennsylvania v.*

13   *Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (same).

14   However, the Court is persuaded that an upward adjustment of the lodestar is justified

15   in this case because of (1) the contingent nature of the fee, and (2) the future work

16   Class Counsel must perform without additional compensation.

17          a. Contingent Nature of the Fee

18          District courts "routinely enhance[] the lodestar to reflect the risk of non-

19   payment in common fund cases" *WPPSS*, 19 F.3d at 1300; *Fischel*, 307 F.3d at 1008.

20   Risk multipliers are necessary because, without the prospect of some consideration

21   for the risks and uncertainties of the action, the incentive for prosecuting such a suit

22   would be lacking and a major weapon for enforcing various public policies would be

23   blunted. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987)

24   *citing* 7B C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1803,

25   at 527 (1986). The need for a risk multiplier is enhanced when the "diminutive

26   character of the individual claims" forces counsel to bring the action on a class basis.

27   *Id.* Indeed, a court abuses its discretion if it fails to apply a risk multiplier in cases

28   where (1) the attorneys took the case with an expectation that they will receive a risk

- 13 -

1   enhancement if they prevail, (2) there is evidence that the case was risky, and (3) the
2   hourly rate does not reflect that risk. *Fischel,* 307 F.3d at 1008.
3                          i.       The Evidence of Risk
4          Although no evidence has been introduced regarding Class Counsels'
5   expectation of receiving a risk enhancement, Class Counsel has demonstrated that
6   they undertook a significant risk of nonrecovery by accepting representation of
7   plaintiffs in this Class Action. *See* Brockett Decl. ¶¶ 37-41. In order to prevail,
8   Plaintiffs had to demonstrate that Rewards Network's Cash Advance Program was
9   really a disguised loan; that it charged usurious interest; that it was absolutely payable
10  and that Rewards Network intended to skirt California usury laws. Establishing
11  whether a particular transaction constitutes a loan depends upon the economic
12  substance of the transaction, which is typically a fact-specific inquiry. *See Southwest*
13  *Concrete Prod. v. Gosh Constr. Corp.,* 51 Cal. 3d 701, 705 (1990). Because the
14  outcome of this litigation was dependent upon facts uncovered during discovery, it
15  was impossible to predict the outcome at the time Class Counsel initially accepted the
16  representation.
17         Further, Rewards Network has consistently denied wrongdoing, and has
18  alleged that its cash advances were in economic substance sales. In fact, Rewards
19  Network prevailed on summary judgment in the only published case against it that
20  alleged usury. That decision, *Transmedia Res. Co. v. 33 E. 61st Street Rest. Corp.,*
21  was decided four years before Plaintiffs filed their complaint in this case.
22  *Transmedia Res. Co. v. 33 E. 61st Street Rest. Corp.,* 710 N.Y.S.2d 756 (N.Y. App.
23  Div. 2000) (holding that certain Rewards Network's cash advance agreements were
24  not loans). This last fact, in particular, establishes the significant risk undertaken by
25  Class Counsel in assuming representation in this case.
26                         ii.      The Hourly Rate Does Not Reflect the Risk
27         As set forth above, the hourly rates used to determine the lodestar represent the
28  prevailing rates in Los Angeles for attorneys of reasonably comparable skill and

                                   – 14 –

1  reputation. In addition, Quinn has provided a declaration stating that the hourly rates
2  set forth in its lodestar chart reflect "the usual and customary rates" charged by each
3  timekeeper in all of their cases. Brockett Decl. ¶ 48. Thus, the Court finds that the
4  the risk of non-payment in this case is not reflected in the hourly rates adopted in
5  calculating the lodestar.

6      In selecting an appropriate lodestar enhancement to account for the risk of non-
7  payment, it is helpful to review fee awards in other class actions of comparable size.
8  The Ninth Circuit, in *Vizcaino*, prepared a survey of attorney fee awards in common
9  fund cases valued at $50 to $200 million between 1996 and 2001. *Vizcaino*, 290 F.3d
10  at 1052, App. A. According to the survey, cases with fund values between $50
11  million and $70 million awarded fees with lodestar multipliers ranging between 1.0
12  and 2.3, with an average (mean) multiplier of 1.52.[4]  The Court finds that the
13  contingency risk attendant in this litigation justifies an above-average lodestar of 2.0.

14                b. Future Work

15      An enhancement to the lodestar may also be justified when Class Counsel
16  assumes continuing obligations to the Class. *Wing*, 114 F.3d at 989. In *Wing*, the
17  Ninth Circuit approved a lodestar multiplier of 2 where class counsel had
18  considerable ongoing obligations to the class, which were expected to continue for 10
19  years. *Id.* Here, the Settlement Agreement provides that Class Counsel are
20  responsible for responding to Class Member inquiries related to claims submission,
21  and representing Class Members in connection with any disputes regarding denied
22  claims. Brockett Supp. ¶ 18. Class Counsel are also responsible for mediating any

23  [4] *Id. citing In Re Carbon Dioxide Antitrust Litig.,* 1996-2 Trade Cases P 71,522, 1996 WL 523534
24  (M.D.Fla. July 15, 1996) ($53 million fund; 1.2 multiplier); *In Re Melridge, Inc., Sec. Litig.,* No.
   87-1426 (D. Or. March 19, 1992, Nov. 1, 1993, and April 15, 1996)(Frye, J.) ($54 million fund; 1.4
25  multiplier); *In Re Teletronics Pacing Systems, Inc.,* 137 F. Supp. 2d 1029 (S.D.Oh.2001) ($62
   million fund; 1.0 multiplier); cited at 19 Class Action Reports 65-66 (1996) ($54 million fund; 1.4
26  multiplier); *In Re Nat'l Health Laboratories Sec. Litig.,* Nos. 92-1949 & 93-1694 (S.D.Cal. Aug. 15,
   1995) (Brooks, M.J.); cited at 19 Class Action Reports 64-65 (1996) ($64 million fund; 2.3
27  multiplier); *In Re MiniScribe Corp.,* 257 B.R. 56 (Bankr.D.Colo.2000) ($67 million fund; 1.7
   multiplier).

28

- 15 -

1  disputes that cannot be resolved informally, with the costs of mediation to be shared
2  equally between Reward's Network and Class Counsel. *Id.* ¶ 19.

3      Pursuant to the Settlement Agreement, payments to Class Members will
4  continue until January 2009. *Id.* ¶ 18. As of July 6, 2007, only 6 percent of Class
5  Members had submitted claims. *Id.* ¶ 20. Due to the small number of Class
6  Members who had submitted claims at the time the fee application was made, and
7  Class Counsels' obligation to provide services on behalf of the Class through at least
8  2009, the Court finds that the multiplier should be increased by .3 to account for this
9  future work. Combined with the 2.0 enhancement for risk, the Court finds that a total
10  lodestar multiplier of 2.3 is justified in this case.

11      5. Application of the Lodestar Cross-Check

12      Applying the 2.3 multiplier to the $4,071,216.58 lodestar results in a final
13  lodestar figure of $9,363,798.13. Adding to this figure the $862,341 in out-of-pocket
14  expenses incurred by Class Counsel in this action results in total reasonable fees and
15  expenses of $10,226,139.13. This amount represents 17.04% of the total $60 million
16  settlement value. To account for future out-of-pocket expenses Class Counsel may
17  incur in carrying out its ongoing obligations to the Class, the Court increases the
18  percentage fee award by .06% to 17.10%. The Court finds that 17.10% of the $60
19  million fund represents a reasonable percentage fee award for attorneys' fees and
20  expenses in this case. Accordingly, the court approves an award of fees and expenses
21  in the amount of $10,260,000.

22  **II. PROPRIETY OF CLASS REPRESENTATIVE FEES**

23      The Court has discretion to award class representatives reasonable incentive
24  payments for their efforts. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463
25  (9th Cir. 2000); *Staton*, 327 F.3d at 976-77. The Court must evaluate the awards
26  individually using relevant factors including, (1) the risk to the class representative in
27  commencing suit, both financial and otherwise; (2) the notoriety and personal
28  difficulties encountered by the class representative; (3) the amount of time and effort

- 16 -

1  the class representative expended in pursing the litigation; (4) the duration of the

2  litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class

3  representative as a result of the litigation. *Staton*, 327 F.3d at 977; *see also Van*

4  *Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (approving

5  an award of $50,000 (one-half of the amount requested) to named plaintiff who

6  actively participated in the litigation, provided "key testimony" at trial, and whose

7  claim made up only a tiny fraction of the common fund).

8          There are three Class Representatives for whom fees in the amount of

9  $50,000.00 are sought. All three have submitted declarations indicating that they

10 have spent significant time working with Class Counsel to prosecute this case. Class

11 Representative Lambert declares that she has dedicated more than 600 hours working

12 on this case, which amounts to $83.33 per hour, and is less than the income she

13 currently receives from running her businesses. Declaration of Patrice Lambert

14 ("Lambert Decl.") ¶ 10. Class Representatives Barrow and Avernal both declare that

15 they have worked more than 500 hours on this case, which amounts to $100 per hour

16 for their efforts. Declaration of Rebekah Barrow ("Barrow Decl.") ¶ 7; Declaration

17 of Tom Averna ("Averna Decl.") ¶ 8.

18         All three Class Representatives assisted Class Counsel by providing

19 information, assisting with preparation of discovery requests and responses, preparing

20 declarations in support of motions, and participating in discussions regarding

21 litigation strategy and settlement. All three prepared for and submitted to 16 hours of

22 deposition – 8 hours on behalf of themselves as guarantors of the loans, and 8 hours

23 on behalf of their respective restaurants. Lambert Decl. ¶ 7; Barrow Decl. ¶ 5;

24 Averna Decl. ¶ 6. Barrow also coordinated with her accountants, who were likewise

25 deposed. Barrow Decl. ¶ 5.

26         The Class Representatives also assumed significant risk in pursuing this

27 litigation. Rewards Network counterclaimed against two of them for the amounts

28 owed under their contracts, and counterclaimed against all three for attorneys' fees.

1   Lambert Decl. ¶ 4; Barrow Decl. ¶ 6; Averna Decl. ¶ 4.  Lambert and Barrow refused

2   Defendants' offer to dismiss their counterclaims, and Averna refused Defendants'

3   offer to dismiss an earlier lawsuit against him, in exchange for the Representatives'

4   dismissing their own claims and refusing to serve as class members.  Lambert Decl. ¶

5   5; Barrow Decl. ¶ 6; Averna Decl. ¶ 3-4.  Without the requested compensation, the

6   Class Representatives will take no more from the Settlement than they would have

7   received in the absence of their involvement and efforts over the course of this three-

8   plus year litigation.

9         The Court finds that an incentive award is warranted in this case.  Although

10  Class Representative Lambert declared she has dedicated more time to this case than

11  the other Class Representatives, the work she has performed on behalf of the Class

12  appears to be substantially the same as the work performed by Barrow and Averna.

13  The Court therefore approves a $50,000 incentive fee for each Class Representative

14  as just and reasonable under the circumstances.

15                              **CONCLUSION**

16        For the forgoing reasons, the Court APPROVES an award of fees and expenses

17  to Class Counsel in the amount of $10,260,000 and APPROVES an incentive fee for

18  each Class Representative in the amount of $50,000.

19

20  IT IS SO ORDERED.

21  DATE: November 18, 2007

22                                   CONSUELO B. MARSHALL
23                                   UNITED STATES DISTRICT JUDGE

24

25

26

27

28

                              - 18 -



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EON-NET, L.P.,

                Plaintiff,

      v.

FLAGSTAR BANCORP, INC.,

                Defendant.

CASE NO. C05-2129MJP

**ORDER SETTING
SANCTIONS PURSUANT
TO FED. R. CIV. P. 11**

      This matter comes before the Court pursuant to Defendant Flagstar Bancorp's ("Flagstar") Memorandum Establishing Attorneys' Fees and Costs (Dkt. No. 80), filed as directed by this Court's Order on Sanctions Pursuant to Fed. R. Civ. P. 11 (Dkt. No. 79). Defendant Flagstar requests its reasonable attorneys' fees and costs in this litigation in the amount of $141,984.70.

      This Court previously found Plaintiff Eon-Net, L.P. ("Eon-Net") and its counsel failed to undertake a reasonable pre-filing investigation of Defendant Flagstar's allegedly infringing software before filing suit for patent infringement. The Court found that Eon-Net and its counsel asserted frivolous claims, failed to identify infringing products or functionality, and failed to compare any product or functionality against the claims of the

ORDER – 1

1    '697 Patent before filing suit. The Court concluded that Eon-Net asserted and maintained

2    baseless claims of patent infringement in hopes of a quick settlement in violation of Rule

3    11, and awarded Defendant Flagstar its reasonable attorneys' fees and costs in this

4    litigation.

5         To establish Flagstar's attorneys' fees and costs, the Court set a briefing schedule

6    regarding fees and costs. The Court has now reviewed Flagstar's Memorandum

7    establishing attorneys' fees and costs (Dkt. No. 80), the Opposition filed by Plaintiff

8    Eon-Net (Dkt. No. 84), and Flagstar's Reply (Dkt. No. 85), and the supporting

9    declarations and exhibits submitted by the parties.

10                              **I. DISCUSSION**

11   **1.    Monetary Sanctions**

12        The Court's Order on Sanctions Pursuant to Fed. R. Civ. P. 11 (Dkt. No. 79)

13   awarded Defendant Flagstar its "reasonable attorneys' fees and costs expended to date in

14   this litigation." The Order outlined Eon-Net's indiscriminate failure to comply with Rule

15   11, and determined that sanctions were appropriate. The Court also noted Eon-Net's

16   apparent scheme to extort quick settlement from numerous corporations doing business

17   on the internet. The Court's Order concluded that monetary sanctions, as well as notice

18   to the parties and courts involved, provided an appropriate deterrent for the inappropriate

19   conduct witnessed in this case. See id. at 17 ("An appropriate sanction is required to

20   deter future bad conduct.").

21        In opposition to Flagstar's Memorandum establishing attorneys' fees and costs,

22   Eon-Net essentially urges the Court to reconsider its award of monetary sanctions.

23   Eon-Net urges the Court to find that the non-monetary sanctions have deterred Eon-Net

24   and its counsel from "asserting the '697 Patent against web sites that use HTML forms

25   technology." See Pl.'s Opp'n at 2-3 (Dkt. No. 84). Eon-Net notes that it is in the process

26

27

28

ORDER – 2

1  of dismissing "every existing Eon-Net infringement action." Id. On that basis, Eon-Net
2  requests that the Court decline to award monetary sanctions.

3      The primary purpose of Rule 11 is to "deter repetition of the conduct by the
4  offending person" and to deter "comparable conduct by similarly situated persons." Fed.
5  R. Civ. P. 11 Advisory Committee Notes; View Eng'g, Inc. v. Robotic Vision Sys., Inc.,
6  208 F.3d 981, 987 (Fed. Cir. 2000). The deterrent purpose of the Rule would not be
7  served if the Court allowed a misbehaving party to avoid sanctions, simply by dismissing
8  other similar cases where they failed to perform a reasonable pre-filing inquiry, or to
9  reasonably evaluate the claims of the patent at issue. Indeed, the Plaintiff's approach
10  would transform Rule 11 into the mere threat of sanctions, rather than an actual deterrent
11  to misconduct.
12

13      Rule 11 is a "sanction provision to compel appropriate advocacy, not a simple fee
14  shifting rule." See United Services Funds v. Ward, 121 F.R.D. 673, 678 (D. Alaska
15  1998). The Court cannot agree with Eon-Net's contention that the deterrent purpose of
16  Rule 11 would be served in this case without monetary sanctions. Rule 11 sanctions may
17  not be avoided, after the fact, by taking actions which should have been taken during the
18  21-day grace period afforded by Rule 11(c)(1)(A). A monetary sanction in this case is
19  appropriate to deter future instances of bad conduct by Eon-Net and its counsel; similarly,
20  monetary sanctions in this case will help to deter future inappropriate conduct by other
21  patent plaintiffs tempted to adopt a similar style of litigation. The purposes of Rule 11
22  are properly served by an award of monetary sanctions against the Plaintiff in this case.

23  **2.    Amount of Sanctions**

24      Defendant Flagstar's Memorandum Establishing Attorneys' Fees and Costs (Dkt.
25  No. 80) sets forth its request for attorneys' fees and costs of $141,984.70. The
26  Memorandum includes great detail as to the efforts of Flagstar's counsel, including
27  281.25 hours billed by associate Melissa Baily, 48.6 hours billed by partner Jon Steiger,
28  and 3.3 hours billed by partner Charles Verhoeven. See Def.'s Memo. (Dkt. No. 80) at 3.

ORDER – 3

1  Flagstar also requests attorneys' fees and costs for local counsel: 21.2 hours billed by

2  associate Jofrey McWilliam, and 4.9 hours billed by partner Brad Keller. See id. at 4.

3     Eon-Net argues that any attorneys' fees award against it should be limited. Eon-

4  Net alleges that Flagstar's attorneys billed excessive time at unreasonable rates, provided

5  Eon-Net with inaccurate information regarding its website, and provided the Court with

6  inaccurate information. Eon-Net also alleges that Flagstar failed to mitigate its damages.

7  The Court addresses each basis for a reduction in the attorneys' fees award due Flagstar.

8        **A.    Representations at the Rule 11 Hearing**

9     Before oral argument on September 8, 2006, the Court sent questions by email to

10  the lawyers for the parties. The questions sought to guide the parties' presentations at

11  oral argument, and the email instructed the parties to address various questions during

12  argument. A question to Defendant Flagstar inquired as to what attorneys' fees Flagstar

13  was requesting: "What attorney's fees does Flagstar seek as part of its motion for

14  sanctions pursuant to Rule 11?" Flagstar's counsel, Melissa Baily, responded during oral

15  argument that Flagstar's fees totaled approximately $95,000.

16

17     As previously noted, Flagstar now requests attorneys' fees of $141,984.70.

18  Eon-Net characterizes this difference as a "large discrepancy" and questions the

19  truthfulness of the records submitted by Flagstar's counsel:

20        [t]his large discrepancy, therefore, calls into question the veracity of the
        time records Flagstar now submits to the Court and whether the time
21        records actually reflect work performed by Quinn Emanuel attorneys.

22  See Pls.' Opp'n (Dkt. No. 84) at 7. On short notice, Flagstar provided a "ballpark" figure

23  as to its attorneys' fees. The Court finds no misrepresentation occurred, and finds no

24  basis for questioning the veracity of Flagstar's time records.

25        **B.    Failure to Mitigate**

26     An award of attorneys' fees pursuant to Rule 11 is limited to expenses and fees

27  reasonably necessary to resist the offending action. See, e.g., In re Yagman, 796 F.2d

28  1165, 1184–85 (9th Cir. 1986). Eon-Net contends that any award of attorneys' fees to

   ORDER – 4

1   Flagstar must be reduced because Flagstar did not raise its defense to infringement earlier

2   in the litigation. Eon-Net argues that Flagstar "could have mitigated the fees it incurred

3   by raising the Kofax license issues in May 2005 rather than delay doing so for nine

4   months . . ." See Pls.' Opp'n (Dkt. No. 84) at 6. In Reply, Flagstar notes that it tried for

5   months to convince Eon-Net that its suit was baseless. Flagstar specifically informed

6   Eon-Net that the suit was a bad faith shakedown suit, and that Flagstar would seek Rule

7   11 sanctions.

8       Patent litigation is expensive, and usually a time consuming affair. The Court is

9   not persuaded that Flagstar could have mitigated its costs and legal fees by filing an

10  earlier motion, or by taking some different course. Rather, the Court finds that Flagstar

11  took a reasonably effective, direct route to summary judgment and its motion for

12  sanctions. The Court finds that Flagstar did not fail to mitigate its costs and legal fees.[1]

13

14  **C.   Time Billed**

15      Eon-Net argues that Flagstar billed an excessive amount of time in this case. The

16  measure of a monetary award is one of reasonableness, and is not the amount actually

17  expended. See In re Yagman, 796 F.2d at 1185. The Court's own review of the time

18  spent by Flagstar's counsel shows a reasonable amount of time was spent on each task,

19  and time was appropriately allocated between associates and partners. Eon-Net's attempt

20  to reduce Flagstar's billing rates to a "per page" rate is unavailing. Flagstar was well-

21  represented, prevailed on nearly every motion it filed, and the Court finds that the amount

22  of time spent by Flagstar's counsel was reasonable.

23

24

25

---

26      [1] Eon-Net also argues that Flagstar made misstatements with regard to its HTML forms
    technology and the applicable scope of the Kofax license. This argument is without merit. Eon-
27  Net made generalized claims of infringement without identifying the allegedly infringing product
    or functionality. Flagstar's defense under the Kofax license was entirely proper, regardless of
28  other software that may have been used in Flagstar's web operations.

ORDER – 5

1    Eon-Net's argument that Flagstar billed an "excessive" amount for its participation in the

2    Rule 11 hearing before this Court is also without merit. The Court commends Flagstar for

3    recognizing that a capable associate (with a much lower hourly rate) was equipped to handle all

4    aspects of the oral argument itself, with the assistance of local counsel.[2]

5    **D.    Hourly Rates**

6        Eon-Net contends that Flagstar's hourly rates are excessively high. Eon-Net

7    contends the Court should find an "average market rate for attorneys in the Seattle area of

8    $138.20/hr." See Pl.'s Opp'n (Dkt. No. 84). Flagstar's counsel, the Quinn Emanuel firm,

9
     charged substantially more than $138.20 per hour in this case. Mr. Verhoeven's billing
10
     rate in this case was $650 per hour. Mr. Steiger's rate was initially $600 per hour, and
11
12   increased to $645 per hour in September 2006. Ms. Baily's billing rate was initially $310

13   per hour, and increased to $350 per hour in September 2006. The drafting and research

14   in this case appears to have been appropriately allocated between the partners and the

15   associate, Ms. Baily, who billed the vast majority of time and has the lowest billing rate.

16        Eon-Net's apparent contention is that the average market rate for "reasonably

17   competent counsel" is $138.20, and that Flagstar should not recover attorneys' fees in

18   excess of that amount. The federal courts are well aware of the high cost of patent

19   litigation, and this Court must reject Eon-Net's assertion that "reasonably competent"

20   patent litigation counsel may be obtained for $138.20 per hour. After reviewing the

21   American Intellectual Property Law Association Economic Survey, see Second Baily

22   Decl. (Dkt. No. 85), Ex. 4, the Court concludes that Flagstar's counsel's rates are

23   consistent with rates charged by attorneys in similar cases, both in the Western District of

24   Washington and throughout the United States. See View Eng'g, 208 F.3d at 987

25

26

---

27        [2] Flagstar's attorneys' fees and costs exclude time billed to others members of a
     joint defense group; as a result, Flagstar requests less in attorneys' fees than it actually
28   billed to the entire joint defense group.

ORDER – 6

1  (approving district court's lodestar determination based in part on AIPLA economic

2  survey); see also Meiklejohn Decl. at ¶¶ 3-4.

3        The Court also notes several additional factors which justify the hourly rates in

4  this case. First, this was an infringement action with implications on a national scale.

5  Flagstar was justified in choosing a trial firm based on skill, reputation, and experience.

6  Second, while Flagstar's counsel may have charged a high hourly rate, the work was high

7  quality and Flagstar's counsel was successful at every turn. Lastly, Eon-Net itself has

8  benefitted from the high cost of the patent lawyers whose fees it now seeks to deny. The

9  exceedingly high cost of patent litigation provides an infringement defendant facing

10  frivolous, baseless litigation with a strong incentive to settle; such defendants may be

11  willing to pay a "small" settlement to avoid hundreds of thousands, or millions, in legal

12  fees. It would be unjust to allow the Plaintiff to reimburse Flagstar at $138.20 per hour

13  when scores of other defendants have defended against its baseless lawsuits at market

14  rates (i.e. $300 - $600 per hour).

15

16        The hourly rates charged by patent litigation counsel may not be acceptable in

17  every case where fees are an issue. In this case, however, the hourly rates of Mr.

18  Verhoeven and Mr. Steiger are considered together with Ms. Baily's lower hourly rate,

19  the efficient allocation of time between partner and associate, and the overall

20  reasonableness of Flagstar's attorneys' fee request. Flagstar's hourly rates are not

21  excessively high and the Court declines to reduce those rates in determining Flagstar's

22  reasonable attorneys' fees and costs. The Court similarly rejects Eon-Net's challenge to

23  various other costs, such as photocopying, which the Court concludes were necessarily

24  and reasonably incurred by Flagstar's counsel in the course of this action.

25

26

27

28

ORDER – 7

1

## II. CONCLUSION

2      Flagstar is entitled to its reasonable attorneys' fees and costs in the amount of

3   $141,984.70, and the Clerk is directed to enter judgment in that amount.

4

5      IT IS SO ORDERED.

6      Dated this 19th day of December, 2006.

7

8

9                                   /s/ Marsh J. Pechman

10                              MARSHA J. PECHMAN
                               United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 8

# CERTIFICATE OF SERVICE

I certify that counsel of record who are deemed to have consented to electronic service are being served on December 30, 2009 with a copy of this document via the Court's CM/ECF system per Local Rule 135(a).

/s/ Margret M. Caruso
Margret M. Caruso