# EXHIBIT A

Dockets.Justia.com

Stephen M. Doniger, Esq. (SBN 179314)
Scott A. Burroughs, Esq. (SBN 235718)
**DONIGER / BURROUGHS APC**
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile: (310) 417-3538
Email: stephen@donigerlawfirm.com
Email: scott@donigerlawfirm.com
Attorneys for Plaintiff

BY ____
2009 JUN -2 PM 3: 00
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
FILED

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DANIEL JURIN, an Individual,

Plaintiff,

vs.

GOOGLE, INC., a Delaware Corporation;
and DOES 1-10, inclusive,

Defendants.

Case No. CV09-03934 GHK (Ex)

**PLAINTIFF'S COMPLAINT FOR:**

1. **VIOLATION OF 15 USC § 1114(1)**
2. **VIOLATION OF 15 USC § 1125 (a)**
3. **VIOLATION OF 15 USC § 1125(c)**
4. **COMMON LAW TRADEMARK INFRINGEMENT**
5. **TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**
6. **CALIFORNIA UNFAIR COMPETITION AND UNJUST ENRICHMENT**

Jury Trial Demanded

Plaintiff Daniel Jurin (hereinafter "Plaintiff" or "Jurin"), by and through his undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

1
COMPLAINT

## JURISDICTION AND VENUE

1. This action arises under the Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. §§ 1051 *et seq.*, and California law.

2. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 1338 (a) and (b), and §1121(a). This Court also has supplemental jurisdiction over the California statutory and common law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal trademark claims that they form part of the same case or controversy.

3. Venue in this judicial district is proper under 28 U.S.C. §§ 1391 (b) & (c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

4. Plaintiff Daniel Jurin ("Jurin") is an individual residing and doing business in the state of California.

5. Upon information and belief, defendant Google, Inc. (hereafter, "Google") is a corporation organized under the laws of the State of Delaware with its corporate offices located at 1600Amphitheatre Parkway, Mountainview, California 94043.

6. Plaintiff is unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, and for that reason, sues such Defendants under such fictitious names. Plaintiff is informed and believes and based thereon alleges that such fictitiously named Defendants have contributed to the infringement of Plaintiff's copyrights, or have engaged in one or more of the wrongful practices herein alleged. Plaintiff will seek leave to amend this Complaint to reflect the true names and capacities of such fictitiously named Defendants when said Defendants have been ascertained. As alleged herein, Defendants shall mean all named Defendants and all fictitiously named defendants.

7.　　Plaintiff is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

## **INTRODUCTION**

8.　　Through this action, Jurin seeks to address and remedy Google's egregiously law-violative, but highly profitable, practice of selling the rights to use and commercially exploit registered trademarks not owned by, or licensed to, Google.

9.　　Specifically, Google enters into contracts with entities and individuals whereby said parties purchase the right to use the trademarks of their competitors in such a way that when a customer or potential customer inputs that trademark into Google's search engine in an attempt to find the website of the goods and services associated with that trademark, the website of the competitor to the trademark holder appears in Google's published search results, and often in a position superior to that of the trademark holder. A mark, or the marks, sold in this fashion by Google will hereinafter be referred to as a "Keyword," or "Keywords."

10.　　Google is paid handsomely for this arrangement, and profits further when the user bypasses the website of the trademark owner, and instead clicks on the link leading to the competitor's website. In essence, Google's business plan is to indicate to the search engine user that the competitor's website, goods and services are preferable to that of the trademark holder, despite the user's indication – through the inputting of the trademarked word into the search engine –that he or she wants

information regarding the goods and services branded by the trademark. In doing so, Google is diverting customers and potential customers away from the websites of the trademark holder to its competitors and being paid by the competitors for this sleight of hand.

11.    Plaintiff now brings this lawsuit to hold Google accountable for selling to Plaintiff's competitors rights held exclusively by Plaintiff, including without limitation the right to use Plaintiff's mark in commerce and/or in connection with marketing, advertising, and sales.

## STATEMENT OF FACTS

12.    Plaintiff is a company engaged in the business of marketing and selling its unique and proprietary "Styrotrim" building material to homeowners, contractors, and those in the construction and remodeling industries. Plaintiff has been very successful with its "Styrotrim" product, enjoying substantial sales, and building strong goodwill and brand awareness. Plaintiff has expended considerable resources on marketing his mark, brand, and products, including without limitation, buying advertising time on television stations, and advertising over the internet. The product became so well-known that it was featured on Home and Garden television network programming, and in other media outlets.

13.    Plaintiff spends a large amount of time and money each year to advertise and market its "Styrotrim" mark and the product bearing same. Through this advertising and market, and a superior and unique product, Plaintiff has become well known and famous in his market and has acquired a reputation for excellence.

14.    Plaintiff's "Styrotrim" trademark is a valuable business asset, and one which Plaintiff strongly polices and protects. The "Styrotrim" mark has become distinctive and famous and serves to distinguish Plaintiff's reputation, goods and services from his competition.

15.    The market in which Plaintiff operates associates the "Styrotrim" mark with Plaintiff and Plaintiff only, and his exclusive control of this mark provides a benefit in that potential customers will use the "Styrotrim" mark to search through internet engines such as Google's to find Plaintiff's products and web presence.

16.    Google operates an internet search engine and markets and sells advertising tied to its search engine. A large portion of Google's revenues are derived from Google's "Adwords" program (hereinafter "Adwords"). Through this program, Google auctions or otherwise sells words and terms, including without limitation Keywords, to parties that wish to advertise to Google search engine users that input those words or terms while searching the internet. The highest bidder for a search term has its website address listed as a clickable link under the title "Sponsored Links" either above or to the right of the other website address links. Clicking on these links brings the user to the website of the company who purchased use of the Keyword and was listed as a "Sponsored Link." As each user clicks the "Sponsored Links" set forth on Google's published results page, *which are represented to the user to be listed by relevance* to the user's search, Google earns and realizes revenues.

17.    Google uses a propriety code or algorithm to determine what results to publish after a use inputs search terms, and what order in which to publish those results. It is generally understood that the higher a listing is published on the Google search results page, the more likely the user is to "click through" to that listing and view the page and purchase goods or services. In fact, Plaintiff alleges on information and belief that there exists a whole industry that purports to be able to manipulate Google's code or algorithm to ensure that a company's listing appears higher in Google's published search results.

18.    On information and belief Plaintiff alleges that Google represents to its users and the public that the higher a result is listed on the search results page, the

more relevant it is to the party searching. Many of the "Sponsored Links" appear at the very top of the list of published search results, indicating to the consumer that said links are the ones most relevant to the terms searched, and the needs and interests of the user.

19.    The "Sponsored Links" are not clearly marked as advertisements and/or as "paid-for placements," and are depicted in such a way as to confuse the user as to the reasons why the "Sponsored Links" have appeared as a result of the user's search for the goods and services identified by the trademarked term input by the user.

20.    Plaintiff operates a website at www.styrotrim.com. This website is one of Plaintiff's primary sources of advertising and sales. Many users search for Plaintiff's website and products through internet search engines such as Google's search engine. This website, and the "Styrotrim" mark, are well-known and oft-searched for on internet search engines. The trademark "Styrotrim," and the www.styrotrim.com domain name, were submitted to Google by Plaintiff to ensure that if such terms were searched by a user, the search results published by Google would list as the lead link the link for Plaintiff's website. Clicking on this link would lead the user to Plaintiff's website.

21.    Plaintiff owns the federal registration in and to the "Styrotrim" mark. Plaintiff applied for the registration for the mark on August 8, 2005, and the registration was granted on July 25, 2006. Plaintiff has also applied for and received a design mark for Styrotrim. At no time has Plaintiff licensed or otherwise granted any rights in these marks to Google, aside from Google being able to use the marks to locate and/or identify Plaintiff's website.

22.    Plaintiff is informed and believes and thereon alleges that Google sold certain rights to Plaintiff's "Styrotrim" mark to Plaintiff's competitors, and others, in the same or similar industries and/or markets.

23.    Google has improperly infringed upon and diluted Plaintiff's name and trademark "Styrotrim" by selling the trademark "Styrotrim" to Plaintiff's competitors as a Keyword so that when an user of Google's search engine searches for "Styrotrim," the competitor's advertisement hyperlink will appear on the first page of the search results. In many cases, the link to the competitor's website will appear *higher and more conspicuously* than the link for Plaintiff's website. This enables Google and Plaintiff's competitors to exploit Plaintiff's trademarks in such a way so as to place their advertising hyperlinks in front of consumers who specifically search for "Styrotrim," thereby diverting a percentage of such customers away from Plaintiff's website. In addition, Plaintiff's competitors benefit from all of the goodwill, initial interest, and "buyer's momentum" associated with Plaintiff's valuable trademark, and at a fraction of the cost. Attached as Exhibit A is a true and correct screen shot taken on May 28, 2009 of the search results published by Google when a Google search engine user searches for "Styrotrim." As is evident from said search results, the links to the websites of Plaintiff's competitors, none of which have any connection to Plaintiff or the "Styrotrim" mark, appear above and in combination with Plaintiff's links in Google's published results.

24.    In searching for Plaintiff's products and web presence by entering "Styrotrim" as a search term into Google's internet search engine, a user is indicating that he or she is interested in Plaintiff and its products, and making purchases of Plaintiff's products.

25.    Google exploits for profit its knowledge of this interest by selling contextual advertising space to competitors in the market that services users with this interest.  This type of advertising space allows companies with similar, related, and/or competing goods and services to those being searched for to have links advertising said goods and services appear on the same page of results on which the Keyword results appear. This implies to the search engine user a sponsorship,

endorsement and connection between the product identified by the Keyword, and the third party companies' goods and services. It also allows third parties to free-ride off of the reputation and good will associated with the term that is input into the search engine. This sort of advertising is advantageous because it targets a specific market that has already exhibited an interest, through the input of the Keyword, in the type of goods and services offered by the third party.

26.    Google thereby profits financially from infringing upon and diluting Plaintiff's protected trademarks and assisting and encouraging third parties to do so as well.

27.    Upon information and belief, Google also employs software or other programming known as a "Keyword Suggestion Tool." This tool suggests to Plaintiff's competitors that they should use Plaintiff's "Styrotrim" trademark as a Keyword for their advertising and to maximize their sales. Google's use of this tool is designed to make such competitors' advertising more successful, and to lead more users to bypass the link to Plaintiff's website and click on the competitors' links. The more times said links are clicked by the user, the more profits are realized by Google. In essence, by intercepting and diverting Plaintiff's customers and potential customers to websites owned by Plaintiff's competitors, Google is realizing revenues.

28.    Upon information and belief Plaintiff alleges that it is Google's policy to sell the rights to use marks such as Plaintiff's to Plaintiff's competitors in order to increase revenues, and such sales are uses in commerce as defined in the Lanham Act; and it is also Google's policy not to investigate complaints about Google's policies and practices to the extent they are based on trademark infringement.

29.    Plaintiff has provided written notice to Google of his allegations that Google has violated his trademark rights. No remedial action was taken by Google.

30.    Upon information and belief, Plaintiff alleges that Google sells the right to use Plaintiff's "Styrotrim" trademark to third parties without the consent of Plaintiff. Google sells this use of Plaintiff's "Styrotrim" trademark to third parties in connection with advertising that Google hosts on its websites, and from which it profits. In doing so, Google, in concert with these third parties, exploits Plaintiff's "Styrotrim" mark to divert customers and potential customers of Plaintiff's to websites hosted by, and offering the competing products and services of, these third parties.

31.    Upon information and belief, Plaintiff alleges that in committing the acts alleged in the preceding paragraph, Google contravenes fair business practices by intercepting and diverting customers and Plaintiff's that were rightly those of Plaintiff and had entered Plaintiff's marks into Google's search engine; by trading on the goodwill, brand awareness and business reputation of Plaintiff; by diluting the value of Plaintiff's marks by associating them with companies and products of a different and inferior nature; by creating a false sense of sponsorship, affiliation, or connection, between Plaintiff and the goods and services of third parties; by indicating to consumers that the goods and services of those third parties that appear on the search results page that is published after the entry of Plaintiff's marks are as credible, quality, and trustworthy as Plaintiff's, and qualify as acceptable substitutes for Plaintiff's goods and services; by profiting from the use of Plaintiff's marks without compensation to, or the authorization of, Plaintiff; and by negating the value of Plaintiff's own online advertising campaign by allowing itself and third parties to benefit and profit when users search for the marks advertised, marketed and developed by Plaintiff.

32.    Upon information and belief, Plaintiff alleges that Google's use of Plaintiff's marks to identify and direct consumers to the goods and services of others causes significant confusion in the marketplace, dilutes the value of Plaintiff's

marks, implies a false sponsorship and association between Plaintiff and his competitors, allows Plaintiff's competitors to free-ride on and benefit from the goodwill and reputation of Plaintiff, and denies Plaintiff the ability to control his marks, and the goods and services with which they are associated.

33.    Upon information and belief, when Google presents a user that searched through Google's search engine for Plaintiff's mark with published results that conspicuously display "Sponsored Links" containing links of Plaintiff's competitors, the user will often times bypass Plaintiff's link and instead go to the websites of Plaintiff's competitors, or attempt another search that does not seek information regarding Plaintiff's website or goods. This damages Plaintiff, and does so even if the user eventually realizes that the website is not Plaintiff's, and is not associated with Plaintiff.

34.    Upon information and belief Plaintiff alleges that Google is and was aware that its actions as described herein constitute trademark infringement and unfair business practices. As such, its actions were and are deliberate and willful, and were and are taken with full knowledge that they constitute a violation of the law.  Google knowingly exploited and traded on the goodwill of trademarks in which it had no ownership rights for the Said conduct was undertaken by Google for the sole purpose of increasing its own profits. This constitutes willful infringement.

35.    Internet users that search through Google's search engine for any of Plaintiff's marks, or for any of Plaintiff's marks in combination with other terms, are deceived  into believing that the "Sponsored Links" of plaintiff's competitors that appear on Google's published results list are related to Plaintiff by their placement on the results page, their appearance and similarity to the results, the good and services they offer, and/or their content. There is no indication whatsoever on the results page to communicate to the user that the "Sponsored Links" are not

sponsored by Plaintiff or otherwise bear a relationship to Plaintiff, and are in fact paid advertisements by Plaintiff's competitors.

## FIRST CLAIM FOR RELIEF
## (VIOLATION OF THE LANHAM ACT - 15 USC § 1114 (1))

37. Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

38. Plaintiff owns the United States Trademark Registration for the word mark "STYROTRIM." He also owns a design mark registration bearing the same word.

39. Upon information and belief Plaintiff alleges that Google has violated plaintiff's exclusive rights to the name and trademark "Styrotrim," and contributed to the violation of such rights by others, by using and suggesting and encouraging the use by its AdWords advertisers of the trademark "Styrotrim" as a Keyword for purposes advertising and selling the goods and services of Plaintiff's competitors through Google's AdWords advertising system, and the publishing by Google of "Sponsored Links," including Plaintiff's competitors links, in response to a search for "Styrotrim" by a user of Google's search engine.

40. Google's use of Plaintiff's trademark "Styrotrim" constitutes a use in commerce in connection with the sale, offering for sale, distribution and advertising of goods and services. Google's sales of rights to exploit Plaintiff's "Styrotrim" trademark, and the branding of certain Google searches with the "Styrotrim" trademark, also constitutes use in commerce.

41. The goods and services offered by one or more of Plaintiff's competitors which participated in Google's AdWords campaign by using the trademark "Styrotrim" as a Keyword are substantially similar to the goods and services offered by Plaintiff under the "Styrotrim" mark.

42. Upon information and belief, Google's use of Plaintiff's trademark causes at least some consumers actively seeking to find and do business with Plaintiff to

click on one or more "Sponsored Links" linking to the websites of Plaintiff's competitors, either by mistake, or through confusion or because they are deceived into believing such "Sponsored Links" are related to Plaintiff; and, further, causes some users to abandon their attempts to locate Plaintiff's website.

43. Upon information and belief, Google's use of Plaintiff's name and trademark causes at least initial confusion among users of Google's search engines who see competitors' "Sponsored Links" published by Google in response to a search by the user for Plaintiff's marks.

44. Upon information and belief, there is an expectation among internet users who conduct searches on Google's search engine that the results published by Google in response to the search, including the "Sponsored Links," will be related to the search term, especially with regard to "Sponsored Links" that appear immediately above the published results of the search, and are designed to look similar to the other search results published by Google in response to a search.

45. Plaintiff expends significant sums of money in advertising its brand and trademark both on the internet and on television. As a result, the name the mark "Styrotrim" has become well-known, famous and distinctive in its market among contractors, homeowners, and those in the construction and remodeling industries.

46. Google is promoting, encouraging, enabling and profiting from Plaintiff's competitors "free-riding" on Plaintiff's goodwill and the name recognition it enjoys in its marketplace and among its customers.

47. Upon information and belief, some users who search for Plaintiff's marks on Google's search engines by inputting the terms "Styrotrim" or "www.styrotrim.com," thereafter click upon a competitor's link by mistake, or out of confusion or because they are deceived into believing it is related to the search terms set forth above, and thereafter do not continue their search for Plaintiff either because

they do business with a competitor, or out of discouragement or because they are diverted and distracted from continuing their search.

48. Upon information and belief, after being diverted from their search for Plaintiff, some users lose the initial "momentum' generated by the goodwill associated with the "Styrotrim" brand, or are otherwise presented with purchasing barriers associated with making a choice between competing providers of goods and services, and causes Plaintiff to lose one of the key benefits of its well-known trademark.

49. By reason of the above, Google has violated the exclusive rights of Plaintiff in and to its use of the registered trademark "Styrotrim" and has contributed to the violation of such rights by others by enabling, cooperating with, suggesting and encouraging the use of Plaintiff's trademark by others, and may be held liable in a civil action under 15 U.S.C. 1114 (1).

50. Google has refused written notice of Plaintiff's claim and has refused to take remedial measures and refused to alter its policy permitting companies other than Plaintiff, including Plaintiff's competitors, from using the "Styrotrim" trademark to direct consumers to "Sponsored Links" which include Plaintiff's competitors; therefore its violation of plaintiff's trademark rights under the Lanham Act is a willful and intentional violation of Plaintiff's exclusive rights.

51. Upon information and belief, Google used and encouraged third parties to use the name and trademark "Styrotrim" with the intention of benefitting from the goodwill associated with Plaintiff's trademark in that such use was intended to cause confusion, mistake or to deceive potential customers, or to divert customers from Plaintiff to third parties, or otherwise improperly benefit from the goodwill associated with plaintiff's mark.

52. Upon information and belief, Google has altered its policy of regarding

trademark violations through its search engine and its AdWords advertising program for the purpose of profiting from the sale of such additional trademarked search terms and the advertising benefit it provides to Plaintiff's competitors. This change in policy was made with the intent of increasing Google's advertising revenues.

53. By reason of the above, Google is in violation of 15 U.S.C. 1114 (1) and Plaintiff is entitled to recover profits and damages from defendant.

54. Plaintiff has been damaged by defendant's violations of its rights under the Lanham Act in an amount to be determined at trial.

55. As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (FALSE DESIGNATION OF ORIGIN - 15 U.S.C. § 1125 (a))

56. Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

57. Google's sale of the right to use Plaintiff's registered trademark "Styrotrim" to competitors of Plaintiff in order for said competitors to use the term to drive customers to their websites constitutes a use in commerce.

58. Internet users who search using the term "Styrotrim" on Google's search engine have a reasonable expectation that the websites and hyperlinks appearing on Google's published list of search results are sponsored by or related to Plaintiff.

59. Internet users who view the "Sponsored Links" on Google's published list of results, some or all of which appear to be part of the published search results, may become confused, mistaken, misled and/or deceived that "Sponsored Links" which link to Plaintiff's competitor's websites may be affiliated with, connected to, or approved or sponsored by Plaintiff.

60. Google's publishing of the "Sponsored Links" in response to a search by an user using the trademark "Styrotrim" as one or more of the search terms constitutes a false designation of origin, affiliation, connection or association of such competitor with Plaintiff, or a false description of origin, sponsorship or approval of the goods or services or activities of such competitor by Plaintiff, and a contribution to the false designations by others by enabling, cooperating with, suggesting and encouraging the use of Plaintiff's trademark by others. Such conduct also constitutes false advertising.

61. As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

## (DILUTION OF PLAINTIFF'S TRADEMARK - 15 U.S.C. § 1125 (c))

62. Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

63. Plaintiff's mark "Styrotrim" is a distinctive and famous mark under 15 U.S.C. 1125 for the following reasons:

A. "Styrotrim" is a distinctive unique word which is not merely descriptive;

B. "Styrotrim" is used extensively in connection with television and internet advertising for Plaintiff's goods and services;

C. "Styrotrim" is recognized widely, particularly among Plaintiff's market of homeowners, contractors, construction workers and remodelers.

D. No other party uses a mark similar to Plaintiff's mark for similar services;

E. "Styrotrim" has been federally registered by plaintiff as a trademark.

64. Google's sale to competitors of Plaintiff the use of the trademark "Styrotrim" as a search term that, when input by a user, will trigger the publishing of "Sponsored Links" including the competitor is a commercial use in commerce

because defendant is a commercial entity selling and offering for sale advertising on its search engine located on the internet at www.google.com.

65. Upon information and belief, Google's use of the trademark "Styrotrim" for commercial use in commerce occurred after Plaintiff's trademark "Styrotrim" became famous or distinctive.

66. Defendants' use of the trademark "Styrotrim" dilutes the distinctive quality of Plaintiff's trademarks as it causes and can cause confusion among customers and potential customers of Plaintiff. In addition, customers and potential customers may view competitor's advertisements/Sponsored Links in response to a search for "Styrotrim" on Google's search engine and reasonably believe that the advertising company, often a competitor of Plaintiff, is affiliated or associated with, or approved by or sponsored by Plaintiff.

67.     Google's use of Plaintiff's trademarks causes a "blurring" of the trademark's relationship to Plaintiff. It also may lead to consumers viewing Plaintiff's name and trademarks as a generic term referring to home improvement. Finally, customers or potential customers and potential customers may view competitor's websites after clicking on the "Sponsored Links" published by Google, and be dissatisfied with the level of quality of services provided by such competitor, thereby tarnishing the "Styrotrim" mark and name in the mind of the consumer.

67. Google's use of Plaintiff's trademarks therefore constitutes a dilution of same, or a contribution to the acts of dilution of such trademark by others by suggesting and encouraging the use of such

68. Plaintiff has incurred and may incur damages related to lost or diverted customers and potential business, and the decline in the value and goodwill of its marks. In addition, if a potential customer is misdirected by Google's published results to a competitor's business, believing a relationship exists between this competitor and Plaintiff, or that the quality of such competitor's goods and services

are indicative of the quality of Plaintiff's goods and services, or because of a perception that Plaintiff is not controlling the use of its trademark for the exclusive use of his company, and that Plaintiff's marks are diluted and/or tarnished by Defendant's use of identical marks as a means of advertising such competing businesses, Plaintiff will be greatly harmed.

69. Upon information and belief, Plaintiff alleges that Google was aware of Plaintiff's use of the trademark "Styrotrim," and its own lack of rights to use or sell rights in that mark, and willfully intended to trade upon Plaintiff's reputation or to cause dilution of Plaintiff's trademark, or to contribute to such dilution by others. At the very least, Google's actions were willful after it refused to remove such competing Sponsored Links and refusing to remove Sytrotrim's name from its list of suggested search terms via its Keyword Suggestion Tool program.

70. As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### (COMMON LAW TRADEMARK VIOLATION)

71. Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

72. Google's use of Plaintiff's trademark "Styrotrim" for the commercial purpose of selling it in return for advertising revenue, and for the purpose of advertising the goods and services of those in competition with Plaintiff, and not for the purpose of referring to Plaintiff and its goods and services, and without the permission of Plaintiff, is an infringement of Plaintiff's common law trademark rights.

73. Google's use of the "Styrotrim" name and trademark allows defendant

to freely trade off of and benefit from the goodwill and reputation associated with Plaintiff's name and trademark "Styrotrim" without consequent expense to itself, to its advertisers, or compensation to Plaintiff.

74. Google's use of the "Styrotrim" name and trademark is deceptive and is likely to cause confusion or mistake in the minds of potential customers and potential franchisees who search for "Styrotrim" on Google's search engine, and is therefore a violation of Plaintiff's common law trademark rights and a contribution to the violation of such rights by others by encouraging, suggesting and enabling them to do so.

75. As a result, Plaintiff has suffered damages in an amount to be determined at trial.

76. As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## (TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE)

80. Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

81. Upon information and belief, potential customers of Plaintiff use the internet to find information on Plaintiff and his goods and services.

82. Upon information and belief, potential customers of Plaintiff are individuals and businesses who own computers and computer systems, and typically use the internet to find information on Plaintiff and other providers of goods and services.

83. Potential customers of Plaintiff are likely to attempt to find information on Plaintiff, or look for Plaintiff's website, prior to doing business with Plaintiff.

84. Plaintiff's website contains substantive and extensive information regarding Plaintiff's goods and services, and is a major source of Plaintiff's business. Potential customers may also purchase goods and services through Plaintiff's website.

85. Drawing interested parties to Plaintiff's website is a key aspect of Plaintiff's marketing and sales strategy.

86. Upon information and belief, Google was aware that Plaintiff attempts to do business through his website and seeks to attract customers as part of his sales and marketing strategy. Google was so aware because, inter alia, Plaintiff is an AdWords advertising partner with Google and spends a significant sum of money each month with Google to advertise its websites through Google's search engine.

87. Upon information and belief Plaintiff alleges that Google was therefore aware that Plaintiff had a reasonable expectation of obtaining new business, new customers and further future economic advantage through attracting individuals and businesses to its websites as a result of searches on Google's search engine containing the word "Styrotrim."

88. Upon information and belief, a percentage of Google's search engine users who performed searches on defendant Google's search engine using the protected trademark "Styrotrim" were diverted from their clear attempt to locate Plaintiff to competitors who had purchased Keywords in order to appear as one of the "Sponsored Links" which appeared on the results page published by Google following a search for "Styrotrim."

89. Upon information and belief, Plaintiff would have realized additional sales and customers and revenue from such diverted internet users were it not for Google's intentional and improper sale of Plaintiff's protected trademark "Styrotrim" as a search term used to generate competing "Sponsored Links," and Google's affirmative

suggestions and encouragement for competitors to use "Styrotrim" for such purposes through its Keyword Suggestion Tool.

90. Such use and encouragement of others to use Plaintiff's protected trademark as a search term to generate its inclusion in the publishing by Google of the "Sponsored Links" allows both Google and others to benefit and profit from the goodwill and notoriety of plaintiff's trademark without the expense, time, effort and years of quality service which Plaintiff has invested into its business reputation and its trademark, and is therefore a violation of trademark laws, unfair competition, "free-riding" and is otherwise improper.

91. Google has intentionally and improperly interfered with Plaintiff's prospective economic advantage by diverting customers actively seeking to find Plaintiff through Google's search engine.

92. Google has refused to cease and desist from such improper use of Plaintiff's trademarks, despite a written demand for same.

93. As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

(For California Unfair Competition and Unjust Enrichment – Against All Defendants, and Each)

94.    Plaintiff repeats and realleges each and every allegation made above as if set forth in full herein.

95.    Defendant's wrongful conduct, as alleged above and otherwise, constitutes unfair competition and deceptive practices under California Business & Professional Code §§ 17200, *et seq.*, and 17500, *et seq.*

96.    Moreover, Defendant's conduct, as set forth above, constites unlawful, unfair, and/or fraudulent business practices, and presents a continuing threat to the consuming public in that the public is likely to be deceived as to the affiliation,

connection, and association of the "Sponsored Links" published by Google after a member of the public enters a Keyword into Google's search engine.

97.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer injury in fact resulting in the loss of money, goodwill and/or property in an amount to be determined at trial.

98.     In addition, Defendants, and each of their, conduct, unless enjoined and restrained has, and will continue to cause irreparable harm to Plaintiff, for which Plaintiff has no adequate remedy at law. In order to restore Plaintiff's interests in monies and property acquired by Defendants, and each of them, by the unfair competition complained of herein, Plaintiff seeks to have Defendants, and each of them, enjoined from unlawfully selling to Plaintiff's competitors, or any other party, the right to use in commerce Plaintiff's "Styrotrim" trademark.

99.     Google also used, exploited and profited from use of Plaintiff's marks. This use of Plaintiff's marks had value, as Google received payment by Plaintiff's competitors for the right to use Plaintiff's trademarks in connection with the generation of "Sponsored Links" in Google's published search results. It did so without the authorization and consent of Plaintiff, and to the detriment of Plaintiff. This conduct resulted in the unjust enrichment of Plaintiff, and it would be inequitable to allow Google to retain these ill-gotten gains.

99.     Plaintiff has been generally and specially damages by the above in an amount to be proven at trial, and has been irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel Jurin respectfully requests that this Court grant judgment against the Defendants on all causes of action as follows:

A.     A preliminary and permanent injunction against defendant Google, Inc. directing it to discontinue use of the trademark "Styrotrim", or any substantially similar word as a search term or as part of a search term phrase in connection with

advertising on its search engine, including without limitation, with its sale of Sponsored Links through its AdWords advertising program;

B.    A preliminary and permanent injunction against Google, Inc. directing it to discontinue the practice of suggesting and encouraging advertisers to use the "Styrotrim" name and trademark as part of their AdWords search terms via Google's Keyword Suggestion Tool, or by any other means;

C.    A preliminary and permanent injunction against defendant Google, Inc. directing it to suspend all current Sponsored Links which use "Styrotrim" as a search term or part of a search term phrase, other than Plaintiff's Sponsored Links;

D.    An accounting of all revenue earned by Google, for its own account or through affiliates or agents, by selling plaintiff's trademark "Styrotrim" in its AdWords program, or any other advertising program, and an Order to pay such revenue to Plaintiff, or such percentage of revenue as determined by this Court to be just and fair;

E.    Damages in an amount determined by the Court, up to treble plaintiff's actual damages in a sum to be determined at trial, or alternatively statutory damages of not less than $500.00 per use of plaintiff's mark, as the Court considers just, together with punitive damages as determined by the Court;

F.    Reasonable attorneys fee as determined by the Court upon application;

G.    Costs and disbursements incurred by the plaintiff; and

H.    Together with such other and further relief as this Court deems just and proper.

A **TRIAL BY JURY** PURSUANT TO FED. R. CIV. P. 38 AND CONSTITUTIONAL AMENDMENT SEVEN IS HEREBY DEMANDED.

Dated: June 1, 2009

DONIGER / BURROUGHS

By: _____

Scott A. Burroughs, Esq.
Attorney for Plaintiff

22
COMPLAINT



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV09- 3934 GHK (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Scott A. Burroughs, Esq. (SBN 235718)
DONIGER / BURROUGHS APC
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 590-1820
Facsimile: (310) 417-3538

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL JURIN, an Individual,<br><br>PLAINTIFF(S)<br>v.<br><br>GOOGLE, INC., a Delaware Corporation; and DOES 1-10, inclusive,<br><br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-03934 GHK (Ex)<br><br><br>SUMMONS |

TO:     DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Scott A. Burroughs, APC , whose address is  DONIGER/BURROUGHS APC, 300 Corporate Pointe, Ste. 355, Culver City, CA 90230 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____JUN - 2 2009_____

By: _____LA'REE HORN_____
                   Deputy Clerk

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                        SUMMONS

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
DANIEL JURIN, an Individual,

**DEFENDANTS**
GOOGLE, INC., a Delaware Corporation; and DOES 1-10, inclusive,

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Scott A. Burroughs, Esq. (SBN 235718)
DONIGER / BURROUGHS APC
300 Corporate Pte., Ste. 355, Culver City, CA 90230 Telephone: (310) 590-1820

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes    ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No    ☐ **MONEY DEMANDED IN COMPLAINT: $_____**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☑ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number: _____ **CV09-03934**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
    ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
    ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
    ☐ D.  Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| DANIEL JURIN- Los Angeles County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | GOOGLE, INC.- Delaware |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____    Date June 1, 2009

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |