PAUL R. BARTLESON #119273
LAW OFFICES OF PAUL R. BARTLESON
1007 7th Street, Suite 214
Sacramento, CA 95814
Ph. # (916) 447-6640
Fax # (916) 447-7840
paulbartlesonlaw@comcast.net

Attorney for Plaintiff,
DANIEL JURIN

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

-o0o-

| | |
|---|---|
| DANIEL JURIN, an Individual, | CASE NO. 2:09-CV-03065-MCE-KJM |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS |
| vs. | |
| GOOGLE, INC. | DATE: January 28, 2010 |
| Defendant. | TIME: 2:00 PM |
| | DEPT: Honorable Morrison C. England, Jr. |

-1-

# TABLE OF CONTENTS

I.
INTRODUCTION AND STATEMENT OF FACTS .................................. 1

II.
STANDARD OF REVIEW ........................................................ 3

III. PLAINTIFF HAS ALLEGED VIOLATIONS OF THE LANHAM ACT .......... 3

    A).  JURIN'S COMPLAINT STATES A CLAIM FOR FALSE
    DESIGNATION OF ORIGIN ................................................ 7

    B).  THE USE OF THE TRADEMARK IS LIKELY TO
    CAUSE CONFUSION IN CONSUMERS .................................. 7

    C).  GOOGLE IS A COMPETITOR OF PLAINTIFF ...................... 8

    D).  PLAINTIFF HAS ALLEGED A LIKELIHOOD OF CONFUSION ........ 9

IV.
GOOGLE IS NOT IMMUNE UNDER THE CDA ................................

    A)    ADWORDS IS NOT A "NEUTRAL TOOL" WHEN
        IT SUGGESTS SPECIFIC, TRADEMARKED KEYWORDS .......... 11

    B)    GOOGLE IS ARGUABLY AN "INFORMATION CONTENT
        PROVIDER" WHEN IT SUGGESTS SPECIFIC,
        TRADEMARKED KEYWORDS ...................................... 12

    C)    THE INSERTION IN THE ADWORDS SUGGESTION
        TOOL OF A TRADEMARKED KEYWORD IS MISLEADING
        IN THE GENERAL MARKETPLACE FOR 1) GOOGLE
        ADWORDS CUSTOMERS AND 2) THE GENERAL PUBLIC ........ 13

    D)    SECTION 230 OF THE CDA DOES
        NOT PROVIDE A BLANKET IMMUNITY ........................ 13

V.
PLAINTIFF'S COMPLAINT STATES A CAUSE OF
ACTION FOR INTERFERENCE WITH CONTRACT
OR ECONOMIC ADVANTAGE ............................................ 15

-1-

**VI.**
**THE COMPLAINT STATES A CAUSE OF**
**ACTION FOR NEGLIGENT INTERFERENCE**
**WITH ECONOMIC RELATIONS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**VII.**
**PLAINTIFF'S COMPLAINT STATES**
**A CAUSE OF ACTION FOR FRAUD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**VIII.**
**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**TABLE OF AUTHORITIES**

3   <u>Federal Cases</u>

4   *AMF, Inc. v. Sleekcraft Boats,*, 599 F2d 341 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

5   *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1106 (9th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . **13**

6   *Barrus v. Sylvania* 55 F. 3d 468 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

7   *Batzel v. Smith,* 333 F.3d 1018, 1029-35 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . **14**

8   *Bell Atlantic v. Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (2006). . . . . . . . . . . . . . . . . . . . **3**

9   *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.,* 206 F.3d 980, 984-86 (10th Cir.2000) . . . . . **14**

10   *Bronson v. Florida* (N.D. Cal 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

11   *Carafano v. Metrosplash,* 339 F.3d 1119, 1123-24 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . **13**

12   *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994). . . . . . . . . . . . . . . . . . . **3**

13   *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir.2008), . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

14   *Eastwood v. Nat'l Enquirer, Inc.,* 123 F.3d 1249, 1256 (9th Cir. 1997). . . . . . . . . . . . . . . . . **8**

15   *Estee Lauder, Inc. v. The Gap, Inc,* 108 F.3d 1503, 1508-09 (2d Cir. 1997). . . . . . . . . . . . . . **7**

16   *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC (Roommates).*

17   521 F.3d 1157, 1162 (9th Cir.2008) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

18   *Goddard v. Google* 640 F. Supp. 2d 1193 (N.D. CA 2009) . . . . . . . . . . . . . . . . . . . . . . . . . **6**

19   *Green v. America Online,* 318 F.3d 465, 471 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . **13**

20   *Jack Russell Terrier Network of Northern California v. American Kennel Club,*
    407 F. 3d 1027, 1037 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8, 9**
21

    *Kournikova v. General Media Communic'ns,* Inc. 278 F. Supp. 2nd 1111. 1117-1118 (C.D. Cal
22   2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8, 9**

23   *New Kids on the Block v. News Am. Publ., Inc,* 971 F. 2nd 302 (9th Cir. 1992) . . . . . . . . . . **14**

24   *Rescuecom, Inc. v. Google, Inc.* 06-4881-CV, 523 F. 3d 123, 4/3/2009 (2nd Cir. 2008) . . . . . . **6**

25   *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-34 (9th Cir.1984). . . . . . . . . . . . **3**

26   *Yahoo v. American Airlines.* (N.D. Cal 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

27   *Wendt v. Hos't In'l, Inc.,* 125 F. 3d 806, 812 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

**Federal Statutes**

15 USC § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3, 4**

15 USC § 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3, 4**

Communications Decency Act of 1996, § 509(f)(3), 47 U.S.C.A. § 230(f)(3). . . . . . . . . . . . . . . **6**

**California Cases**

*Biankanja v. Irving* (1958) 49 Cal. 2d 647 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

*Della Penna v. Toyota Motor Sales, U.S.A.* 11 Cal. 4th 376, 378 (1995). . . . . . . . . . . . . . . . **15**

*J'Aire Corp. v. Gregory* (1979) 24 Cal. 3d 799. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15, 16**

*Ramona Manor Convalescent Hosp. v. Care Enterprises*
(1986) 177 Cal. App. 3d 1120, 1140. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

**California Statutes**

California Civil Code §1709 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

CC § 1710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

CC § 1571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

CC § 1572 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

CC § 1573 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

**Other Authorities**

10 Witkin Summary of Cal. Law, Torts, §1709. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

1  PAUL R. BARTLESON #119273
   LAW OFFICES OF PAUL R. BARTLESON
2  1007 7ᵗʰ Street, Suite 214
   Sacramento, CA 95814
3  Ph. # (916) 447-6640
   Fax # (916) 447-7840
4  paulbartlesonlaw@comcast.net

5  Attorney for Plaintiff,
   DANIEL JURIN
6

7

8              UNITED STATES DISTRICT COURT
9           EASTERN DISTRICT OF CALIFORNIA
                 SACRAMENTO DIVISION
10
                        -o0o-
11

12  DANIEL JURIN, an Individual,          CASE NO. 2:09-CV-03065-MCE-KJM

13          Plaintiff,                    **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF**
14                                        **MOTION TO DISMISS**
    vs.
15                                        DATE: January 28, 2010
    GOOGLE, INC.                          TIME: 2:00 PM
16                                        DEPT: Honorable Morrison C. England, Jr.

17          Defendant.
                                     /

18      Plaintiff herein, DANIEL JURIN, hereby files his opposition to the instant motion to

19  dismiss and states as follows:

20                                  I.
               INTRODUCTION AND STATEMENT OF FACTS
21

22      Plaintiff DANIEL JURIN  ("JURIN") is an individual and owner of a small business that

23  markets and distributes an building industry product named STYROTRIM, which is an exterior

24  application. In developing his business, he markets nationally and has advertising on National

25  Televisions, print media, and, the internet, including GOOGLE Adwords.

26      The name STYROTRIM is Trademarked.  Through this lawsuit, JURIN seeks to redress the

27  unauthorized use of the Trademark by GOOGLE and third parties by use of the Keyword Suggestion

28  Tool and sponsored Advertising in GOOGLE Adwords.

The problem arises in this case because of GOOGLE'S, and plaintiff's competitors' unauthorized use of a trademarked name as a generic "keyword."

The GOOGLE suggests keywords which are then put up for bid by advertisers and used in constructing their ads to be seen in the Google Adwords, or sponsored results. STYROTRIM is not a generic keyword but trademarked. Plaintiff alleges that GOOGLE wrongfully suggests the trademark as a keyword, sells advertising to others, and then rewards the advertising by ranking them for "relevance" in response to that keyword. By doing this GOOGLE facilitates plaintiff's competitors in infringing on plaintiff's trademarks. Not only have plaintiffs competitors been successful in bidding on plaintiff's trademarked "keywords" it has facilitated the dilution of plaintiff's customer base and diverted customers and traffic that rightfully is plaintiffs, and plaintiffs alone.

Specifically, GOOGLE enters into contracts with entities and individuals whereby said parties purchase the right to use the trademarks of their competitors in such a way that when a customer or potential customer inputs that trademark into GOOGLE's search engine in an attempt to find the website of the goods and services associated with that trademark, the website of the competitor to the trademark holder appears in GOOGLE's published search results, and often in a position superior to that of the trademark holder. In order for an Adwords user to rank in the sponsored search results, it is not necessary to use the Trademark in the Ad. All that is necessary is for the third party to bid on the keyword and link it to its ad. But these purchasers of adwords are not "competitors" in the sense that they have the right to compete for the keywords of plaintiff. They are more appropriately called interlopers, usurpers or keyword pirates. However, for sake of ease, they will be referred to as "competitors."

This complaint was filed in October, 2009, and defendant now brings the instant motion to dismiss plaintiff's complaint, or parts thereof.

This appears to be a case of first impression and presents several unsettled questions.

1. To what extent does the CDA override Trademark Law?

2. By suggesting Specific Trademarked Keywords, does GOOGLE become an "information content provider"?

3. By suggesting specific, trademarked keywords, is the GOOGLE KEYWORD SUGGESTION tool a "neutral tool"?

# I.
## STANDARD OF REVIEW

A complaint may be dismissed for failure to state a claim upon which relief may be granted for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. ***Robertson v. Dean Witter Reynolds, Inc.***, 749 F.2d 530, 533-34 (9th Cir.1984). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. ***Clegg v. Cult Awareness Network***, 18 F.3d 752, 754 (9th Cir.1994). A complaint should not be dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." ***Clegg***, 18 F.3d at 754. However, a plaintiff is required to provide "more than labels and conclusions," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." ***Bell Atlantic Corp. v. Twombly***, 550 U.S. at 555, 127 S.Ct. 1955 (2006).

# II.
## PLAINTIFF HAS ALLEGED VIOLATIONS OF THE LANHAM ACT

The Lanham Act, 15 USC § 1114 (1) provides:

(1) Any person who shall, without the consent of the registrant—
(a) *use in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or ...

15 USC § 1125 (a) provides:

(a) Civil action
(1) Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or

commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.....

....(d) Cyberpiracy prevention

(1) (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(I) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section;

(ii) registers, *traffics in*, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 20506 of title 36.

GOOGLE's mission may be to provide relevant search results. But its business model is based on advertising. It makes money by, and is in the business of, internet advertising. It makes its money by selling GOOGLE AD WORDS to others who wish to compete in an open market place. In this case, GOOGLE is selling specific keywords in a closed market place which should not be open to competitive bidders. The Trademark Styrotrim is not in the public domain. It is protected by United States Trademark Law. STYROTRIM's owner has the exclusive use of the name. To hold otherwise renders the trademark protection meaningless. If Google's criteria for ranking other sites for the keyword Styrotrim was "relevance", there would be no other search results in the sponsored searches, because the only search responsive to the request is Styrotrim. There are no other authorized competitors, and the Trademarked keyword Styrotrim is not capable of two meanings.

GOOGLE claims immunity because it is acting merely as an ISP. In the use of adwords, it provides the keyword to the competitors, not the other way around. Google maintains probably the largest database in the world. Why then does it not screen out the Trademarked Styrotrim, or any other Trademark, for that matter? If no other results are responsive the query "STYROTRIM," why does Google allow others to rank for the term. GOOGLES use of the keyword in the Adword tool

and in GOOGLE Adwords is a use of the Trademark in violation of the Lanham Act.

Further, the confusion in the general marketplace has two aspects. First, an ill informed or unaware competitor decides to rank for the Keyword Styrotrim without knowing that is Trademarked or protected. The fact that it is being recommended by Google is deceiving, because, after all, Google is the biggest and best as far as search is concerned. The fact that the trademarked keyword shows up in the Keyword Suggestion tool gives credence to the idea that the term is subject to general use. (See Robert Cialdini's *Influence*). Google is, after all the authority, and if Google recommends it, it must be o.k.

In the second situation, when the third party ads rank in terms of sponsored search results, Google is giving confirmation of those ads relevance to the particular keyword. It is also not necessary for the third party ad to use the keyword in their Google Adword, it is only necessary for them to bid on, and rank for the keyword. That leads to confusion in the public that the third party ads are directly sponsored by, approved by, of affiliated with the maker of STYROTRIM.

In either case, it doesn't matter to Google, because they are making money on Adwords campaigns either way by marketing to, and ranking third parties for only their use of the word Styrotrim. This despite their superior knowledge, and vast database. It is ironic that GOOGLE'S stated policy is to respect trademarks and then fail to screen out Trademarked Keyword. Under GOOGLE'S view, the CDA allows GOOGLE to ignore the concept of Trademark and facilitate Trademark infringement under the guise of the innocent internet service provider. Congress intended to give internet service providers an immunity where they did not provide the content. While GOOGLE argues it is up to the GOOGLE Adwords user to submit the content, this ignores the fact that they were the ones who suggested the use in the first place. Further, by allowing Styrotrim to rank as a relevant keyword, and then to allow an advertiser to rank for the keyword, Google is falsely leading the public to believe that the keyword is a name in usage in the general domain, and not a trademarked term. By giving its blessing to the keyword, and then allowing the advertiser to rank for that keyword in derogation of the rights of the copyholder, GOOGLE defies the long held tenets of intellectual property law. At the same time it claims to have no control over the content of

GOOGLE Adwords advertisers, it suggests the use of the word, and then at the same time, claims that competitors who show up in the search results are there because they choose their own content and then ranks them for relevance. This is nothing but sophistry. GOOGLE as at once encouraging the conduct in the creation, and then rewarding the piracy of the keyword when the competitors ads are simply not relevant to the search term. GOOGLE apparently does not police it add words suggestions. It is not the content per se of the competitors ads that is in question. It is the unauthorized use in commerce by GOOGLE and Plaintiff's competitors. The issue is the 1) the suggestion of the keyword by Google and 2) their rewarding of the clearly improper use or behavior by the third party by ranking them in the sponsored results for the keyword. Google has two chances to screen out the Trademarked term: 1) before it is recommended by the Keyword Research Tool; and 2) after the Adwords Advertiser submits the Ad for Review. Their policy also states that they will not remove offending use of Trademarked Keywords after notice. One might also make a further argument that the GOOGLE Algorithm fails to screen out the copyrighted term from the search results because it ranks competitor's ads when they are not truly directly relevant.

Under the Communications Decency Act (CDA), a website operator does not become liable as an information content provider merely by augmenting the content of online material generally; rather, website must contribute materially to its alleged unlawfulness. Communications Decency Act of 1996, § 509(f)(3), 47 U.S.C.A. § 230(f)(3).

In *Goddard v. Google* 640 F. Supp. 2d 1193 (N.D. CA 2009), a consumer brought an action against Google, alleging that it illegally further a scheme of fraudulent web-based advertisements for mobile subscription services. The complaint alleged that the keywords "free" and "ringtone" A website does not "contribute" materially to alleged unlawfulness, under Communications Decency Act (CDA), when it merely provides third parties with "neutral tools" to create web content, even if the website knows that the third parties are using such tools to create illegal content. Communications Decency Act of 1996, § 509(f)(3), 47 U.S.C.A. § 230(f)(3). *Goddard*, supra, at 1198.

There does not appear to be any case directly on point in the 9th Circuit involving Trademarked Keywords. However, in the case of *Rescuecom, Inc. v. Google, Inc.* 06-4881-CV,

523 F. 3d 123, 4/3/2009, the Second Circuit held the trial court erred in dismissing the complaint, where plaintiff alleged that Google displayed, offered and sold the Trademark to Googles advertising customers selling its advertising services. In addition, Google encouraged the purchase of Rescuecom's mark through its Keyword Suggestion Tool. The court stated that Google's utilization of Rescuecom's mark fits literally within the terms specified by 15 USC § 1127. In this case, as in Rescuecom, plaintiff alleges that GOOGLE displayed, offered, recommended and sold the Trademark to its advertising customers, and encouraged its use through the Keyword Suggestion Tool.

### A). JURIN'S COMPLAINT STATES A CLAIM FOR FALSE DESIGNATION OF ORIGIN

In the *Rescuecom* case, GOOGLE made the same argument that use of the Trademarked keyword was not a use in commerce, saying,

> "Google's recommendation and sale of Rescuecom's mark to its advertising customers are not internal use...Furthermore, 1-800 did not imply that use of a trademark in a software program's internal directory precludes a finding of trademark use. Rather influenced by the fact that the defendant was not using plaintiff's trademark at all, much less using it as the basis of a commercial transaction, the court asserted that the particular use before it did not constitute a use in commerce. See I-800, 414, F3d at 409-12. We did not imply in 1-800 that an alleged infringer's use of trademark in an internal software program insulates the alleged infringer from a charge of infringement, no matter how likely the use is to cause confusion in the marketplace. If we were to adopt Google and it's amici's argument, the operators of search engines would be free to use trademarks in ways designed to deceive and cause consumer confusion. This is surely neither within the intention on the letter of the Lanham Act. *Rescuecom*, supra, 562 F. 3d 131.

Here, in a similar circumstance, Jurin alleges an unauthorized use in commerce that is likely to cause confusion (Plaintiff's complaint ¶ 14-50, 55, 57-70.)

### B) THE USE OF THE TRADEMARK IS LIKELY TO CAUSE CONFUSION IN CONSUMERS

The *Rescuecom* court also addressed GOOGLE'S argument, for purposes of pleading, that the use of the TRADEMARK was not likely to cause confusion or to cause mistake, or to deceive as to the affiliation, or as to the origin, sponsorship, or approval of...goods [or] services. See *Estee Lauder, Inc. v. The Gap, Inc.* 108 F.3d 1503, 1508-09 (2d Cir. 1997).

> "We have no idea whether Rescuecom can prove that Google's use of Rescuecom's trademark in its Adwords program causes likelihood of confusion or mistake. Rescuecom has alleged that it does, in that would be purchasers (or explorers) of its services who search for its website on Google are misleadingly directed to the ads and websites of its competitors

in a manner which leads them to believe mistakenly that these ads or websites are sponsored by, or affiliated with Rescuecom. This is particularly so, Rescuecom alleges when the advertiser's link appears in a horizontal space at the top of the list of search results in a manner which makes it appear to be the most relevant search result and not an advertisement. What Rescuecom alleges is that by the manner of Google's display of sponsored links of competing brands in response to a search for Rescueceom's brand name (which fails adequately to identify the sponsored link as an advertisement, rather than a relevant search result), Google creates a likelihood of consumer confusion as to trademarks. If the searcher sees a different brand name as the top entry in response to the search for "Rescuecom," the searcher is likely to believe mistakenly that the different name which appears is affiliated with the brand name sought in the search and will not suspect, because the fact is not adequately signaled by Google's presentation, that this is not the most relevant response to the search. Whether Google's actual practice is in fact benign or confusing is not for us to judge at this time...." 562 F. 3d at p. 123, 126.

These allegations are essentially identical to those in this case. Plaintiff alleges that there is a likelihood of confusion among 1) purchasers or 2) explorers of its services. (JURIN's Complaint ¶ 51-70.) As such plaintiff's complaint properly pleads false designation of origin consistent with 15 usc. § 1125 (a)(A).

## C)     GOOGLE IS A COMPETITOR OF PLAINTIFF

Google contends that it is not a competitor of plaintiff. By allowing the use of the keyword, GOOGLE contracts with Third Parties (competitors) to derive income from plaintiffs advertising audience. The fact that GOOGLE is not in the building materials business is irrelevant. It derives its income from contracts with third parties who are direct competing with plaintiffs for the keyword for which there should be no competition. Absent use by the third parties in utilizing the Keyword Suggestion Tool and by placing Adwords campaigns, neither competitors nor GOOGLE would derive income from the same activity. Google is an intended contractual beneficiary of third party advertisers and collaborates, cooperates and or conspires in the misappropriation of the trademark. GOOGLE, along with "competitors" is vying for advertising revenue generated by the Keyword Styrotrim.

None of the cases cited by defendant, **Barrus v. Sylvania** 55 F. 3d 468 (9th Cir. 1995) **Kournikova v. General Media Communic'ns**, Inc. 278 F. Supp. 2nd 1111, 1117-1118 (C.D. Cal 2003), **Jack Russell Terrier Network of Northern California v. American Kennel Club**, 407 F. 3d 1027, 1037 (9th Cir. 2005) **Bronson v. Florida** (N.D. Cal 2009) involve trademark keywords and Adwords. Rather, those cases involved organic search results in a search engine.

*GOOGLE's* reliance on *Kournikova* is misplaced. *Kournikova* arose on a motion for summary judgment, not on a 12 (b) (6) motion for dismissal. In that case, the court found that Kournikova and defendant GMC were competitors in that they competed for the same dollars from the same target audience, i.e. of men. See 278 F. Supp. 1111, 1118. However, the court concluded that Kournikova could not present evidence of a competitive injury because Kournikova could present no evidence of relevant losses.

In this case, plaintiff is alleging that he is accruing losses from diversion of the keyword Styrotrim to third party websites through the Google Adwords. That allegation is matter subject to discovery and proof at the trial of this matter.

Plaintiff's complaint properly alleges that Google competes for the Keyword Styrotrim, in that Plaintiff is the only one entitled to market that unique keyword, and defendants motion must be denied.

**D)    PLAINTIFF HAS ALLEGED A LIKELIHOOD OF CONFUSION**

In *Kournikova*, the court stated that "Consumer confusions exists when: (1) the defendant used the plaintiff's identity; and (2) the use suggests that plaintiff approved the defendant's product. See e.g., *Waits*, 878 F, 2d at 1110-11. Because "[t] he Lanham Act's likelihood is predominately factual in nature," *Wendt v. Hos't In'l, Inc.*, 125 F. 3d 806, 812 (1997) consumer confusion must be determined with reference to the entire record before the Court. *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997).

The court cited *AMF, Inc. V. Sleekcraft Boats.*, 599 F2d 341 (9th Cir. 1979) for use of factors that are used in determining whether there was a likelihood of confusion;

1.    the level of Plaintiff's recognition among the segment of the society for whom the product in intended;
2.    the relatedness of Plaintiff's fame to defendant's product;
3.    the evidence of actual confusion
4.    marketing channels used;
5.    likely degree of purchaser care;
6.    defendant's intent in selecting Plaintiff; and
7.    the likelihood of expansion of product lines.

In this case, plaintiff markets his product nationally on television, through Google Adwords,

Google TV and in print and internet advertising. Styrotrim is a unique product and a Trademarked name. Evidence of actual confusion is matter subject to proof and not properly the subject of a 12 (b) (6) motion; the marketing channels used by plaintiff on the internet is identical in that Google and third parties compete directly for use of the same trademarked keyword: the likelihood of consumer care is debatable, and it is unlikely that consumers are going to check every keyword listed by the Adword Suggestion tool to see if it is trademarked term, particularly when Google recommends it. Plaintiff has an unknown amount of expansion, but the diversion of customers to third party websites no doubt limits his ability to do business with those customers. **Kournikova** does not stand for the proposition that the use of Keywords in sponsored results does not in all cases create a likelihood of confusion. Rather that case held that plaintiff could not prove competitive injury in the same marketplace, because she could not show any diminution in revenue or endorsements. Here, plaintiff can show direct diversion of revenue to other advertisers and diversion of traffic to competitors.

*Jack Russell Terrier Network of Northen Ca. V. American kennel Club, Inc.*, 407 F 3d 1027 (9th Cir. 2005) is distinguishable from the case at bar.

In this case Google and the Third Party advertisers are in direct competition for the keyword Styrotrim. The fact that STYROTRIM is Trademarked means that plaintiff should have no competition for that Keyword.

In *Jack Russell Terrier*, supra, the court stated, ..."the Appellants did not allege that the JRTCA and its regional affiliates were actual or even potential competitors, or conspired through the COR to gain some competitive advantage...Nor can Appellants do so : The JRTCA is a national dog club and registry, and the regional dog clubs named as co-defendants were subject to an affiliate agreement that included provisions requiring that affiliate could not establish competing dog registries, standards or events. "In no way do the affiliates compete with the national club."

In this case, plaintiff maintains that the **Google's** and Third Parties' use in commerce and the marketing of the keyword STYROTRIM directly interferes with his ability to market that keyword. JURIN markets on a national, if not worldwide basis. GOOGLE and third parties are improperly promoting that keyword and therefore vie directly for all advertising revenue related to that

Keyword, not the search results for building materials or stucco or some other generic keyword. Potential customers of Styrotrim are misdirected to competitors websites through the utilization of the Adwords tool and sponsored results. (See Complaint ¶¶ 73=75).

As a result, consistent with the Rescuecom case, plaintiff has properly alleged violation of 1125 (a) (1) (A) and 1125 (a) (1) (B).

## IV.
## GOOGLE IS NOT IMMUNE UNDER THE CDA

### A)    ADWORDS IS NOT A "NEUTRAL TOOL" WHEN IT SUGGESTS SPECIFIC, TRADEMARKED KEYWORDS

Defendant contends that the Google Adwords Tool is a "neutral tool" when making recommendations regarding specific, in this case, Trademarked Keywords. Plaintiff contends that it is not.

> "A plaintiff may not establish developer liability under Communications Decency Act (CDA) merely by alleging that the operator of a website should have known that the availability of certain tools might facilitate the posting of improper content; substantially greater involvement is required, such as the situation in which *the website elicits the allegedly illegal content and makes aggressive use of it in conducting its business.* Communications Decency Act of 1996, § 509(f)(3), 47 U.S.C.A. § 230(f)(3)." ***Goddard v. Google*** 562 F. 3d 1193, 1195 (2009).

***Goddard*** does not suggest that the Google Adwords Tool is always a "Neutral Tool."

To the contrary, the Keyword Suggestion Tool is making a specific recommendation of a Trademarked Keyword, encourages advertisers to bid on it, and then rewards the advertisers by Ranking them in the sponsored results.    The Adword suggestion tool generally makes recommendations of generic terms and words.  In addition, in this case it recommends the use of a specific and unique Trademarked Keyword, Styrotrim.  By doing so, it elicits advertising from keywords and generates revenue by prompting, inciting, and encouraging use of particular keywords, and then rewards the advertisers by ranking them for the pay per click search results. Defendant aggressively promotes the keywords and conducts its business so as to reward those advertisers who attempt to rank for the content. Google does more than elicit the content, it precipitates it by the recommendation and then actively promotes the content, whereas, absent the keyword tool, the advertiser would not be inclined to rank for that keyword at all.

In cases of generic keywords, those words and phrases are in the public domain and have no unique meaning or association with a particular brand or product.

In the case of Trademarks, the words have specific meaning associated with a particular brand or product. The fundamental purpose of Trademark Law is to protect the unique identity of the product, goods or service of the individual and prevent use by third parties.

The **Rescuecom** case did not address the issue whether The CDA immunizes defendant from unauthorized use in commerce in all instances. *Goddard* does not stand for the broad proposition that it is a neutral tool in all cases, particularly in the instance of a trademarked keyword.

**B)** **GOOGLE IS ARGUABLY AN "INFORMATION CONTENT PROVIDER" WHEN IT SUGGESTS SPECIFIC, TRADEMARKED KEYWORDS**

By the plain language of the statute, GOOGLE is not immune when they are responsible, in whole or in part for the creation or development of offending content.

> "As Google [argues], claims that seek to impose liability on a website operator as the speaker or publisher of third-party content-or to impose liability that is "merely a rephrasing of" such speaker or publisher liability," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1106 (9th Cir.2009)-are barred by the CDA unless the website also is an "information content provider," meaning that it "is 'responsible, in whole or in part, for the creation or development of' the offending content." *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC (Roommates)*, 521 F.3d 1157, 1162 (9th Cir.2008) (en banc) (quoting 47 U.S.C. § 230(f)(3)).

While GOOGLE may be an internet service provider for some purposes as far organic search results are concerned, it is an information content provider when it recommends Specific, Trademarked Keywords in the context of Google Adwords. In this case, plaintiff contends that it is an information content provider for purposes of suggesting specific keywords, and in particular, those keywords that are Trademarked. If GOOGLE was a hosting provider, and a website owner published illegal content on its site, there is on doubt that any claim against GOOGLE would be barred. The problem in this case, however, is that the idea or the suggestion of the keyword does not come from the third party, it *originates* with GOOGLE. Generic keywords are in the public domain and fair game. Trademarks are not fair game. The third party acts at the recommendation of GOOGLE and seizes the opportunity, and then GOOGLE publishes the Ad. The idea for the content originates with GOOGLE, not with the THIRD PARTY. In the case of general keywords, the

reference is universal. In the case of reference to a Trademark, the reference is unique and specific.

### C) THE INSERTION IN THE ADWORDS SUGGESTION TOOL OF A TRADEMARKED KEYWORD IS MISLEADING IN THE GENERAL MARKETPLACE FOR 1) GOOGLE ADWORDS CUSTOMERS AND 2) THE GENERAL PUBLIC

The Google Adwords tool is a prelude to competitive advertising for keywords. Smart internet marketers do keyword research before drafting the content of the ads in order to know what their ads will rank for. Implied in that premise is the assumption that keywords are up for grabs in the public domain. However, in the case of a Trademark, that assumption is not true. By inserting the keyword STYROTRIM into the GOOGLE ADWORDS tools, GOOGLE makes the implied representation that the Trademark is in the public domain and up for competitive bidding. By ranking sponsored search results other than STYROTRIM it solicits the illegal use of the keyword and then rewards advertisers for their misuse and at the same time profits. Allowing third parties to bid on, and then rank for an exclusive term creates confusion among third parties and also the public, who have no idea of telling who the owner of the Trademark is, or whether it is associated with the advertisement. Potential advertisers are misled by presence of the keyword in a competitive bidding context to believing that the keyword is subject to competitive bid.

### D) SECTION 230 OF THE CDA DOES NOT PROVIDE A BLANKET IMMUNITY

Contrary to the contention of defendants § 230, does not provide a blanket immunity:

"Provision of Communications Decency Act barring courts from treating certain internet service providers as publishers or speakers does not declare a general immunity from liability deriving from third-party content. Communications Decency Act of 1996, § 509(c)."47 U.S.C.A. § 230©. *Barnes v. Yahoo* 570 F 3d 1096.

What matters, for purposes of determining whether a defendant is immune from suit under statute under Communications Decency Act, is not the name of the cause of action; what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another. Communications Decency Act of 1996, § 509(c)(1), 47 U.S.C.A. § 230(c)(1).

"Although "[c]ourts have construed the immunity provisions in § 230 broadly in all cases arising from the publication of user-generated content," *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir.2008), the Ninth Circuit recently noted in *Barnes* that "neither ... subsection [ (c)(1) ] nor any other *declares a general immunity* from liability deriving from third-party content," *Barnes*, 570 F.3d at 1099-1100 (referring to "the so-called immunity" provided by § 230).

Nonetheless, immunity is defined as an "exemption from ... liability." Black's Law

Dictionary (8th ed. 2004), and that is what § 230© provides, albeit not in every case. Thus, with the recognition that cases involving the application of § require a "careful exegesis of the statutory language," **Barnes**, 570 F.3d at 1100, courts consistently have used the term "immunity" to describe the effect of the CDA's provisions. *See, e.g.. Zeran,* 129 F.3d at 330 ("By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information ***originating with a third-party user*** of the service."); *see also* **Roommates**, 521 F.3d at 1164-65;*Doe,* 528 F.3d at 418: **Green v. America Online**, 318 F.3d 465, 471 (3d Cir. 2003); **Carafano v. Metrosplash**, 339 F.3d 1119, 1123-24 (9th Cir.2003) **Batzel v. Smith**, 333 F.3d 1018, 1029-35 (9th Cir.2003) **Ben Ezra, Weinstein, & Co. v. Am. Online Inc.**, 206 F.3d 980, 984-86 (10th Cir.2000). **Goddard**, supra, at 1195.

In this case, the content derives from the suggestion by GOOGLE in the Adwords tool. It does not originate with the third party user. In a sense, it is not the publishing or speaking of improper content, but the utilization of the keyword to achieve rankings and misdirection of traffic away from Plaintiff's website Ranks solely as a result of bidding on the keyword, regardless of any content published by the Third Party.

The Lanham Act is undermined if GOOGLE can market the use of a Trademarked keyword to the detriment of Plaintiff.      In this case, as alleged in the complaint, the suggestion of the Keyword Styrotrim originates with GOOGLE, not with the third party. Unlike Yahoo, Google's policy and practice is to allow an advertiser to bid on a competitor's trademark as a keyword. Yahoo's policy is consistent with "nominative fair use" of a third party's advertising. See **New Kids on the Block v. News Am. Publ., Inc**, 971 F. 2nd 302 (9th Cir. 1992) See Yahoo v. American Airlines. (N.D. Cal 2009).

From Google's website, its Adwords and Adsense trademark policy is as follows: "Google recognizes the importance of trademarks. Our Adwords Terms and Conditions with advertisers prohibit intellectual property infringement by advertisers. Advertisers are responsible for the keywords they choose to generate advertisements and the test that they choose to use in those advertisements." However, GOOGLE goes on to state **"We will not disable keywords in response to a trademark complaint.**" Google's practice, as opposed to their policy, is therefore inconsistent with their policy and the policy of protecting trademarks. On the one hand, it avows that it respects the rights of trademark owners, but in practice, it promotes the abuse of trademarks through the Keyword Suggestion Tool and its Adwords Program, and then disclaims any liability therefore. In this case, the Keyword Styrotrim, allows third parties to infringe on the trademark, and then

GOOGLE refuses to disable the keyword, even after notice.

In this case, Jurin contacted Google and demanded that they remove the keyword from the keyword suggestion tool and Adwords. Google refused, consistent with their practice, not their policy. This court must decide whether the practice of Google is consistent with the Lanham Act or whether the CDA overrides the Lanham act in the instance of internet service providers under the circumstances of this case.

## IV.
## PLAINTIFF'S COMPLAINT STATES A CAUSE OF ACTION FOR INTERFERENCE WITH CONTRACT OR ECONOMIC ADVANTAGE

Witkin States that,

"The elements of damage for interference with a contract or prospective contractual relation: (a) the pecuniary loss of benefits of the contract or prospective economic relation; (b) consequential losses for which the interference is a legal cause; and © emotional distress or actual harm to the reputation, if they are reasonably to be expected to result from the interference " (10 Witkin Summary of Cal. Law, Torts, §1709.) Where the plaintiff is unable to establish lost profits with certainty, recovery may be based on proof of the actual profits received by th defendant tortfeasor, Ibid at 1238; Ramona Manor Convalescent Hosp. V. Care Enterprises (1986) 177 Cal. App. 3d 1120, 1140. The elements of the tort of intentional interference with prospective economic advantage include the following (a) An economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (b) defendants knowledge of the relationship; © Intentional acts by the defendant designed to disrupt the relationship. (d) Actual disruption of the relationship; (e) economic harm to the plaintiff proximately caused by the acts of the defendant. (f) conduct that was wrongful by some legal measure other than the fact of interference itself. See ***Della Penna v. Toyota Motor Sales, U.S.A.*** 11 Cal. 4th 376, 378 (1995).

In this case plaintiff alleges facts in paragraphs 95-107 which alleges diversion of potential customers, loss of revenue. Plaintiff's complaint alleges the existence of contracts between third parties and potential new business being disrupted as a result of diversion through the Keyword Tool and sponsored results. If deemed insufficient plaintiff can set forth more allegations regarding the existence of actual customers, diversions to specific websites, and other facts.

## V.
## THE COMPLAINT STATES A CAUSE OF ACTION FOR NEGLIGENT INTERFERENCE WITH ECONOMIC RELATIONS.

In 1979 the California Supreme Court rejected the rule of nonliability for negligent interference with prospective economic advantage in ***J'Aire Corp. v. Gregory*** (1979) 24 Cal. 3d 799. The supreme court applied the rule in ***Biankanja v. Irving*** (1958) 49 Cal. 2d 647 as the criteria for

determining whether a duty of care is owed: the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendants conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of protecting future harm. *J'Aire Corp. v. Gregory*, 24 Cal. 3d 804. See also BAJI No. 7.82.

In this case, there is an existing economic relationship between plaintiff and defendant in that Plaintiff is a Google Adwords advertiser; defendant knew of this relationship and the fact that plaintiff marketed his services for the product and keyword STYROTRIM; defendant allows the use of trademarked keyword and refused to disable it after demand; it is reasonably foreseeable, if not entirely probable that this wrongful conduct would interfere or disrupt the economic relationship with defendant and third parties being diverted away from plaintiff's site; the economic relationship was interfered with or disrupted because potential customers actually were diverted to and purchased products from others; plaintiff lost the economic benefit as a result.

## VI.
## PLAINTIFF'S COMPLAINT STATES A CAUSE OF ACTION FOR FRAUD

California Civil Code §1709 provides:

"One who willfully deceives another with intent to induce him to alter his position to his injury or risk liable for any damage which he thereby suffers.

Deceit, within the meaning of CC §§ 1709, can take any of the following forms (CC 1710):

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The assertion as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or...

4. A promise, made without any intention of performing it.

CC § 1571. Fraud is either actual or constructive.

CC § 1572. Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;

3. The suppression of that which is true, by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive.1573. Constructive fraud consists:1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

6. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

In this case, the Keywords Suggestion tool implies that the Keyword Styrotrim is in the public domain and subject to competitive bidding. GOOGLE'S marketing of the Keyword STYROTRIM is ongoing and continuous. This use is clearly contradicted by the Lanham Act. Google Adwords Advertisers are falsely led to believe that the Keyword is subject to public use and bid on the keyword. They then publish ads which rank for relevance to the Keyword, to plaintiff's resulting detriment. Plaintiff can amend the complaint if needed to set forth allegations that the representations and use of the Keyword are ongoing and continuous.

## VII.
## CONCLUSION

WHEREFORE, for all the above stated reasons, Plaintiff respectfully prays for an ORDER DENYING Defendant's Motion to Dismiss, or that Plaintiff be allowed to amend his complaint to allege further facts consistent with the above.

DATED: January 14, 2010

Respectfully submitted,
LAW OFFICES OF PAUL R. BARTLESON

By /s/ Paul R. Bartleson
PAUL R. BARTLESON #119273
Attorney for Plaintiff, DANIEL JURIN