1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   DANIEL JURIN,
                                     No. 2:09-cv-03065-MCE-KJM
12            Plaintiff,

13        v.                         MEMORANDUM AND ORDER

14   GOOGLE INC.,

15            Defendant.

16                          ----oo0oo----

17

18        Through this action Plaintiff Daniel Jurin ("Plaintiff")

19   alleges several violations of state and federal law arising out

20   of the use of the trademarked name "Styrotrim" as a suggested

21   keyword in the "AdWords" program operated by Defendant Google,

22   Inc. ("Defendant").  Presently before the Court is a Motion by

23   Defendant to Dismiss the Second, Fifth, Sixth, Seventh, and Ninth

24   Causes of Action alleged by Plaintiff for failure to state a

25   claim upon which relief may be granted pursuant to Federal Rule

26   of Civil Procedure 12(b)(6).

27   ///

28   ///

                                  1

1  Defendant also moves for costs and to stay the proceedings.  For

2  the reasons set forth below, Defendant's Motions are granted in

3  part and denied in part.[1]

4

5                        **BACKGROUND**[2]

6

7       This dispute is based on Plaintiff challenging the

8  lawfulness of Defendant's Keyword Suggestion tool in its

9  for-profit "Google AdWords" program.

10

11  **A.    Background on Search Engines**

12

13      Defendant is a highly recognized corporation most known for

14 its widely-used search engine website.  As part of operating its

15 search engine, Defendant "indexes" websites, collecting

16 information regarding their contents so that it may then store

17 the information for use in formulas which respond to search

18 queries.  Generally, when a user enters a query into Defendant's

19 website, the search engine will process relevant sites based on

20 several information factors and then return results to the user.

21 ///

22 ///

23 ///

24 ///

25

26      [1] Because oral argument would not be of material assistance,
   this matter was deemed suitable for decision without oral
   argument.  Local Rule 230(g).

27

28      [2] The factual assertions in this section are based on the
   allegations in Plaintiff's Complaint unless otherwise specified.

2

1    Web designers routinely use this process to influence their
2  ranking on the results page.  Prior to building a site, web
3  designers will often conduct a keyword search using various
4  available keyword tools in order to determine what terms or
5  phrases internet users are most commonly searching for.  A web
6  designer will then build his site around more popular search
7  terms in order to ensure a higher rank on a search engine results
8  page.
9    Those with more capital may also "bid" on keywords.  A web
10 designer can use a keyword tool to discover popular terms,
11 construct an ad or site using those key words, and then pay a
12 search engine provider a fee to bid on those terms in an effort
13 to appear on a results page as a "Sponsored Link".  The higher a
14 web designer bids, the higher the "Sponsored Link" placement when
15 those bid upon keywords are searched for.  "Sponsored links"
16 appear either at the top or along the side of a search engine
17 results page.
18    As part of its business, Defendant allows advertisers to bid
19 on keywords in a program called "Google AdWords".
20
21     **B.    Plaintiff's Suit**
22
23    Plaintiff owns a company which markets and sells its
24 trademarked "Styrotrim" building material to homeowners,
25 contractors, and those in the construction and remodeling
26 industries.  Plaintiff files suit in this case based on
27 Defendant's, and Plaintiff's competitors, alleged unauthorized
28 use of its trademarked name as a generic keyword.

1      Defendant's AdWords program picked up the trademark name

2 "Styrotrim" as a commonly searched term and thereafter suggested

3 it as a keyword to bidders in its AdWords program.  It then

4 allowed Plaintiff's competitors to bid on the keyword "Styrotrim"

5 thus allowing them to appear as a "Sponsored Link" on a results

6 page whenever the term "Styrotrim" was searched for.

7      Plaintiff now alleges that through its AdWords program,

8 Defendant misappropriated its trademark name for its own use,

9 generated advertising revenue from Plaintiff's competitors, and

10 facilitated Plaintiff's competitors in infringing on Plaintiff's

11 trademark.

12      Plaintiff alleges that Defendant's actions have caused a

13 dilution of its consumer base.  Plaintiff states that as a result

14 of Defendant's program, often times competitors' names may appear

15 in a position higher than Plaintiff's business on a results page.

16 Plaintiff argues this confuses consumers into believing that

17 competitor's product is preferable to Plaintiff's and, in

18 essence, is a form of "bait and switch" advertising purposefully

19 using Plaintiff's trademarked name to misdirect consumers away

20 from Plaintiff's site.

21      Defendant presently moves to dismiss Plaintiff's allegations

22 of violation of the Lanham Act, Negligent Interference with

23 Contractual Relations and Prospective Economic Advantage,

24 Intentional Interference with Contractual Relations and

25 Prospective Economic Advantage, Fraud, and Unjust Enrichment.

26 ///

27 ///

28 ///

1

**STANDARD**

2

3      On a motion to dismiss for failure to state a claim under

4  Rule 12(b)(6), all allegations of material fact must be accepted

5  as true and construed in the light most favorable to the

6  nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

7  337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

8  plain statement of the claim showing that the pleader is entitled

9  to relief" in order to "give the defendant fair notice of what

10 the...claim is and the grounds upon which it rests."  Bell Atl.

11 Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v.

12 Gibson, 355 U.S. 41, 47 (1957)).  While a complaint attacked by a

13 Rule 12(b)(6) motion to dismiss does not need detailed factual

14 allegations, a plaintiff's obligation to provide the "grounds" of

15 his "entitlement to relief" requires more than labels and

16 conclusions, and a formulaic recitation of the elements of a

17 cause of action will not do.  Id. at 1964-65 (internal citations

18 and quotations omitted).  Factual allegations must be enough to

19 raise a right to relief above the speculative level.  Id. at 1965

20 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure

21 § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain

22 something more...than...a statement of facts that merely creates

23 a suspicion [of] a legally cognizable right of action")).

24 ///

25 ///

26 ///

27 ///

28 ///

1   "Rule 8(a)(2)...requires a 'showing,' rather than a blanket

2   assertion of entitlement to relief.  Without some factual

3   allegation in the complaint, it is hard to see how a claimant

4   could satisfy the requirements of providing not only 'fair

5   notice' of the nature of the claim, but also 'grounds' on which

6   the claim rests." Twombly, 550 U.S. 556 n.3.  A pleading must

7   contain "only enough facts to state a claim to relief that is

8   plausible on its face." Id. at 570.  If the "plaintiffs...have

9   not nudged their claims across the line from conceivable to

10  plausible, their complaint must be dismissed." Id.

11  Nevertheless, "[a] well-pleaded complaint may proceed even if it

12  strikes a savvy judge that actual proof of those facts is

13  improbable, and 'that a recovery is very remote and unlikely.'"

14  Id. at 556.

15      A court granting a motion to dismiss a complaint must then

16  decide whether to grant leave to amend.  A court should "freely

17  give" leave to amend when there is no "undue delay, bad faith[,]

18  dilatory motive on the part of the movant,...undue prejudice to

19  the opposing party by virtue of...the amendment, [or] futility of

20  the amendment...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371

21  U.S. 178, 182 (1962).  Generally, leave to amend is denied only

22  when it is clear the deficiencies of the complaint cannot be

23  cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957

24  F.2d 655, 658 (9th Cir. 1992).

25  ///

26  ///

27  ///

28  ///

1

2                              **ANALYSIS**

3    **A.    Motion to Dismiss**

4              **1.    Lanham Act – Count 2**

5                    **(a)   False Designation of Origin**

6

7         Plaintiff alleges that Defendant's publishing of "Sponsored

8    Links" in response to an online search for trademark "Stryotrim"

9    constitutes a false designation of origin, affiliation,

10   connection or association of a competitor with Plaintiff.  In so

11   doing, Plaintiff alleges Defendant violates the false designation

12   of origin provision of the Lanham Act, 15 U.S.C § 1125(a).

13        The Lanham Act creates civil liability for,

14        "any person who...uses in commerce any word, term,
          name, symbol, or device, or any combination thereof, or
15        any false designations of origin, false or misleading
          description of fact, or false or misleading
16        representation of fact, which...is likely to cause
          confusion, or to cause mistake, or to deceive as to the
17        affiliation, connection, or association of such person
          with another person, or as to the origin, sponsorship,
18        or approval of his or her goods, services, or
          commercial activities by another person, or in
19        commercial advertising or promotion, misrepresents the
          nature, characteristics, qualities, or geographic
20        origin of his or her or another person's goods,
          services, or commercial activities."

21

22   15 U.S.C. 1125(a).

23        A violation of this section occurs when a producer

24   misrepresents his own goods or services as someone else's, or,

25   conversely when he represents someone else's goods and services

26   as his own.

27   ///

28   ///

1  *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*,

2  496 F. 3d 1231, 1248 (11th Cir. 2007)(citing *Dastar Corp. v.*

3  *Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n. 1(2003)).

4  The Supreme court has held that in the context of false

5  designation of origin claims the use of the word "origin" refers

6  to a false or misleading suggestion as to "the producer of the

7  tangible goods that are offered for sale." *Dastar*, 539 U.S. at

8  37.  Essentially, a false designation claim requires a showing

9  that the defendant falsely represented that it was the "source"

10 of the goods when it was not, thereby suggesting that the

11 defendant was "the producer of the tangible product sold in the

12 marketplace." *Id*. at 31; see also *Sybersound Records, Inc. v.*

13 *UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008).

14     By its terms, the Lanham Act seeks to prevent confusion as

15 to the producer of the goods.  Here, Defendant has in no way

16 directly represented that it is the producer of the Styrotrim

17 product.  To the extent Plaintiff may contend that Defendant has

18 helped "facilitate" confusion of the product with others, such is

19 a highly attenuated argument.  Even if one accept as true the

20 allegation that a "Sponsored link" might confuse a consumer, it

21 is hardly likely that with several different sponsored links

22 appearing on a page that a consumer might believe each one is the

23 true "producer" or "origin" of the Styrotrim product.  As such,

24 Plaintiff fails to properly plead a false designation of origin

25 claim.

26 ///

27 ///

28 ///

1

**(b)  False Advertising**

2

3      Plaintiff also alleges that Defendant's AdWords program

4  constitutes false advertising in violation of the Lanham Act as

5  codified at 15 U.S.C § 1125(a)(1)(B).  Maintenance of a false

6  advertising claim under 15 U.S.C. § 1125(a)(1)(B) requires,

7  "(1) a commercial injury based upon a misrepresentation about a

8  product; and (2) that the injury is 'competitive,' or harmful to

9  the plaintiff's ability to compete with the defendant."  <u>Jack</u>

10  <u>Russell Terrier Network of Northern California v. American Kennel</u>

11  <u>Club, Inc.</u>, 407 F.3d 1027, 1037 (9th Cir. 2005) (holding that

12  while under a "false association claim" parties need not be

13  direct competitors, under a "false advertising" claim they do).

14      Here, Plaintiff and Defendant are not direct competitors.

15  Although Defendant may provide advertising support for others in

16  Plaintiff's industry, Defendant nonetheless does not directly

17  sell, produce, or otherwise compete in the building materials

18  market.  Without a showing of direct competition, Plaintiff fails

19  to sustain a claim for false advertising under the Lanham Act.

20

21      **2.   Communications Decency Act**

22

23      Defendant alleges that the Communications Decency Act

24  ("CDA") immunizes it from Plaintiff's allegations of Negligent

25  Interference with Contractual Relations and Prospective Economic

26  Advantage, Intentional Interference with Contractual Relations

27  and Prospective Economic Advantage, Fraud, and Unjust Enrichment.

28  ///

1    The goal of the CDA is to promote the continued development
2    of the Internet and other interactive computer services.
3    47 U.S.C. § 230(b)(1); see also Perfect 10 Inc v. CCBill LLC,
4    488 F.3d 1102, 1118 (9th Cir. 2007).  The CDA provides complete
5    immunity to any "provider or user of an interactive computer
6    service" from liability premised on "information provided by
7    another content provider."  47 U.S.C. §§ 230(c)(1).  Under the
8    CDA an interactive computer service qualifies for immunity so
9    long as it does not also function as an 'information content
10   provider' for the portion of the statement or publication at
11   issue.  Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1123
12   (9th Cir. 2003).  An unprotected service provider is defined as
13   any person or entity that is responsible, in whole or in part,
14   for the creation or development of information provided through
15   the Internet or any other interactive computer service.
16   47 U.S.C. §§ 230(f)(3).  "So long as a third party willingly
17   provides the essential published content, the interactive service
18   provider receives full immunity regardless of the editing or
19   selection process."  Carafano, 339 F.3d at 1124.

20   Defendant argues that it satisfies the definition of a
21   protected interactive computer service.  Plaintiff conversely
22   argues that through its keyword suggestion tool Defendant does in
23   fact participate in the content of the advertisements, rendering
24   them an "information content provider" outside of the protection
25   of the CDA.

26   ///
27   ///
28   ///

1   However Defendant does not provide the content of the
2   "Sponsored Link" advertisements.  It provides a space and a
3   service and thereafter charges for its service.  By suggesting
4   keywords to competing advertisers Defendant merely helps third
5   parties to refine their content.  This is tantamount to the
6   editorial process protected by the CDA.  Defendant's keyword
7   suggestion tool hardly amounts to the participation necessary to
8   disqualify it of CDA immunity.  Rather it is a "neutral tool,"
9   that does nothing more than provide options that advertisers
10  could adopt or reject at their discretion, thus entitling the
11  operator to immunity.  <u>Goddard v. Google, Inc.</u>,640 F. Supp. 2d
12  1193, 1197-98 (N.D. Cal. 2009)

13  The purpose of the CDA is to encourage open, robust, and
14  creative use of the internet.  <u>See</u> 47 U.S.C §230(b).  Ultimately,
15  Defendant's Adwords program simply allows competitors to post
16  their digital fliers where they might be most readily received in
17  the cyber-marketplace. Accordingly, Defendant meets the
18  definition of a protected interactive computer service and is
19  therefore immunized from liability on Plaintiff's Fifth, Sixth,
20  Seventh, and Ninth Causes of Action.

21
22  **B.    Motion for Costs and to Stay Proceedings**
23
24  Defendant concurrently moves for an order requiring
25  Plaintiff to pay costs for an almost identical complaint
26  previously filed by Plaintiff against Defendant in the Central
27  District of California on June 2, 2009 and voluntarily dismissed
28  on July 23, 2009.

1  Defendant also moves for an order to stay the current proceedings

2  until Plaintiff has complied with the order to pay costs.

3  Specifically, Defendant seeks $6,030.52, as the cost of the

4  previous litigation including attorney fees.

5      Rule 41(d) of the Federal Rules of Civil Procedure provides:

6      Costs of a Previously-Dismissed Action.  If a
       plaintiff who previously [voluntarily] dismissed an
7      action in any court files an action based on or
       including the same claim against the same defendant,
8      the court:
           (1) may order the plaintiff to pay all or part
9      of the costs of that previous action; and (2) may
       stay the proceedings until the plaintiff has
10     complied.

11  Fed. R. Civ. P. 41(d).  Rule 41(d) is an expression of the

12  Court's inherent power to protect defendants from the harassment

13  of repeated lawsuits by the same plaintiff on the same claims.

14  See Hacopian v. United States Dept. of Labor, 709 F.2d 1295, 1296

15  (9th Cir. 1983).

16      Comparing the Complaint of the previous action against that

17  of the present action confirms that Plaintiff's current suit does

18  in fact include all of the claims previously brought before the

19  Central District, as well as additional claims.  It appears that

20  Plaintiff has simply re-filed an amended version of his earlier

21  suit.  Pursuant to Rule 41(d), Plaintiff may not voluntarily

22  dismiss his original suit only to further harass Defendant with

23  renewed allegations of the same claims. Resultantly, the Motion

24  for Costs is granted.

25  ///

26  ///

27  ///

28  ///

12

1

**CONCLUSION**

2

3       For the foregoing reasons, Defendant's Motion to Dismiss

4   (Docket No. 9) Plaintiff's Second, Fifth, Sixth, Seventh and

5   Ninth Causes of Action is GRANTED with leave to amend.  Plaintiff

6   may file an amended complaint not later than twenty (20) days

7   after the date this Memorandum and Order is filed electronically.

8   If no amended complaint is filed within said twenty (20)-day

9   period, without further notice, the causes of action addressed by

10  this Order will be dismissed without leave to amend.

11      Defendant's Motion for Costs (Docket No. 10) is GRANTED.

12  Defendant's Motion to Stay Proceedings (Docket No. 10) is DENIED.

13  Plaintiff is ordered to pay costs for the previous action brought

14  against Defendant not later than twenty (20) days after the date

15  this Memorandum and Order is filed electronically.

16      IT IS SO ORDERED.

17
   Dated: February 26, 2010

18

19

20                        MORRISON C. ENGLAND, JR.
                          UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

13