PAUL R. BARTLESON #119273
LAW OFFICES OF PAUL R. BARTLESON
1007 7th Street, Suite 201
Sacramento, CA 95814
Ph. # (916) 447-6640
Fax # (916) 447-7840
paulbartlesonlaw@comcast.net

Attorney for Plaintiff,
DANIEL JURIN

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

-o0o-

| | |
|---|---|
| DANIEL JURIN, an Individual, | CASE NO. 2:09-CV-03065-MCE-KJM |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| GOOGLE, INC. | DATE: June 24, 2010
TIME: 2:00 PM
DEPT: Honorable Morrison C. England, Jr. |
| Defendant. | |

Plaintiff herein, DANIEL JURIN, hereby files his opposition to the instant motion to dismiss and states as follows:

I.
INTRODUCTION AND STATEMENT OF FACTS

Plaintiff DANIEL JURIN ("JURIN") is an individual and owner of a small business that markets and distributes an building industry product named STYROTRIM, which is an exterior application. In developing his business, he markets nationally and has advertising on National Televisions, print media, and, the internet, including GOOGLE Adwords.

The name STYROTRIM is Trademarked. Through this lawsuit, JURIN seeks to redress the unauthorized use of the Trademark by GOOGLE and third parties by use of the Keyword Suggestion Tool and sponsored Advertising in GOOGLE Adwords.

1  The problem arises in this case because of GOOGLE'S, and plaintiff's competitors'
2  unauthorized use of a trademarked name as a generic "keyword."

3  GOOGLE keyword suggestion tool is an integral part of the Adwords development process.
4  The keyword suggestion tool actively promotes keywords which are then put up for bid by
5  advertisers and used in constructing their ads to be seen in the Google Adwords, or sponsored
6  results. STYROTRIM is not a generic keyword but trademarked. Plaintiff alleges that GOOGLE
7  wrongfully suggests the trademark as a keyword, sells advertising to others, and then rewards the
8  advertising by ranking them for "relevance" in response to that keyword. By doing this GOOGLE
9  facilitates plaintiffs competitors in infringing on plaintiff's trademarks. Not only have plaintiffs
10 competitors been successful in bidding on plaintiff's trademarked "keywords" it has facilitated the
11 dilution of plaintiff's customer base and diverted customers and traffic that rightfully is plaintiffs,
12 and plaintiffs alone.

13 Specifically, GOOGLE enters into contracts with entities and individuals whereby said
14 parties purchase the right to use the trademarks of their competitors in such a way that when a
15 customer or potential customer inputs that trademark into GOOGLE's search engine in an attempt
16 to find the website of the goods and services associated with that trademark, the website of the
17 competitor to the trademark holder appears in GOOGLE's published search results, and often in a
18 position superior to that of the trademark holder. In order for an Adwords user to rank in the
19 sponsored search results, it is not necessary to use the Trademark in the Ad. All that is necessary
20 is for the third party to bid on the keyword and link it to its ad. But these purchasers of adwords are
21 not "competitors" in the sense that they have the right to compete for the keywords of plaintiff. They
22 are more appropriately called interlopers, usurpers or keyword pirates. However, for sake of ease,
23 they will be referred to as "competitors."

24 Plaintiff filed his amended complaint, adding substantially different allegations to the
25 second cause of action.

## I.
## STANDARD OF REVIEW

28 A complaint may be dismissed for failure to state a claim upon which relief may be granted

for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. ***Robertson v. Dean Witter Reynolds, Inc.***, 749 F.2d 530, 533-34 (9th Cir.1984). For purposes of a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. ***Clegg v. Cult Awareness Network***, 18 F.3d 752, 754 (9th Cir.1994). A complaint should not be dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." ***Clegg***, 18 F.3d at 754. However, a plaintiff is required to provide "more than labels and conclusions," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." ***Bell Atlantic Corp. v. Twombly***, 550 U.S. at 555, 127 S.Ct. 1955 (2006).

## II.
## PLAINTIFF HAS ALLEGED VIOLATIONS OF THE LANHAM ACT

The Lanham Act, 15 USC § 1114 (1) provides:

(1) Any person who shall, without the consent of the registrant—
(a) *use in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or ...

15 USC § 1125 (a) provides

(a) Civil action
(1) Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.....

....(d) Cyberpiracy prevention

(1) (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

    (I) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section;

    (ii) registers, *traffics in*, or uses a domain name that—

    (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

    (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

    (III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 20506 of title 36.

It is the unauthorized use in commerce by GOOGLE and Plaintiff's competitors. The issue is the 1) the suggestion of the keyword by Google and 2) their rewarding of the clearly improper use or behavior by the third party by ranking them in the sponsored results for the keyword. Google has two chances to screen out the Trademarked term: 1) before it is recommended by the Keyword Research Tool; and 2) after the Adwords Advertiser submits the Ad for Review. Their policy also states that they will not remove offending use of Trademarked Keywords after notice. One might also make a further argument that the GOOGLE Algorithm fails to screen out the copyrighted term from the search results because it ranks competitor's ads when they are not truly directly relevant.

There does not appear to be any case directly on point in the 9th Circuit involving Trademarked Keywords. However, in the case of **Rescuecom, Inc. v. Google, Inc.** 06-4881-CV, 523 F. 3d 123, 4/3/2009, the Second Circuit held the trial court erred in dismissing the complaint, where plaintiff alleged that Google displayed, offered and sold the Trademark to GOOGLE's advertising customers selling its advertising services. In addition, Google encouraged the purchase of Rescuecom's mark through its Keyword Suggestion Tool. The court stated that GOOGLE's utilization of Rescuecom's mark fits literally within the terms specified by 15 USC § 1127. In this case, as in Rescuecom, plaintiff alleges that GOOGLE displayed, offered, recommended and sold the Trademark to its advertising customers, and encouraged its use through the Keyword Suggestion Tool.

GOOGLE asserts that the complaint still fails to allege that because they are not the producer of Styrotrim, they are not a competitor.  This argument is wrong, because they are competitors for the keyword Styrotrim, and they facilitate third parties in misappropriating the Trademarked Keyword for not only the third parties' benefit, but for their own benefit in generating advertising revenue.

In the ***Rescuecom*** case, GOOGLE made the same argument that use of the Trademarked keyword was not a use in commerce, saying,

> "Google's recommendation and sale of Rescuecom's mark to its advertising customers are not internal use...Furthermore, 1-800 did not imply that use of a trademark in a software program's internal directory precludes a finding of trademark use.  Rather influenced by the fact that the defendant was not using plaintiff's trademark at all, much less using it as the basis of a commercial transaction, the court asserted that the particular use before it did not constitute a use in commerce. See I-800, 414, F3d at 409-12.  We did not imply in 1-800 that an alleged infringer's use of trademark in an internal software program insulates the alleged infringer from a charge of infringement, no matter how likely the use is to cause confusion in the marketplace.  If we were to adopt Google and it's amici's argument, the operators of search engines would be free to use trademarks in ways designed to deceive and cause consumer confusion.  This is surely neither within the intention on the letter of the Lanham Act.  ***Rescuecom***, supra, 562 F. 3d 131.

Here, in a similar circumstance, Jurin alleges an unauthorized use in commerce that is likely to cause confusion   (Plaintiff's complaint ¶ 14-50, 55, 57-70.)

**B)     THE USE OF THE TRADEMARK IS LIKELY
          TO CAUSE CONFUSION IN CONSUMERS**

The ***Rescuecom*** court also addressed GOOGLE'S argument, for purposes of pleading, that the use of the TRADEMARK was not likely to cause confusion or to cause mistake, or to deceive as to the affiliation, or as to the origin, sponsorship, or approval of...goods [or] services. See ***Estee Lauder, Inc. v. The Gap, Inc.*** 108 F.3d 1503, 1508-09 (2d Cir. 1997).

> "We have no idea whether Rescuecom can prove that Google's use of Rescuecom's trademark in its Adwords program causes likelihood of confusion or mistake.  Rescuecom has alleged that it does, in that would be purchasers (or explorers) of its services who search for its website on Google are misleadingly directed to the ads and websites of its competitors in a manner which leads them to believe mistakenly that these ads or websites are sponsored by, or affiliated with Rescuecom.  This is particularly so, Rescuecom alleges when the advertiser's link appears in a horizontal band at the top of the list of search results in a manner which makes it appear to be the most relevant search result and not an advertisement.  What Rescuecom alleges is that by the manner of Google's display of sponsored links of competing brands in response to a search for Rescueceom's brand name (which fails adequately to identify the sponsored link as an

advertisement, rather than a relevant search result), Google creates a likelihood of consumer confusion as to trademarks. If the searcher sees a different brand name as the top entry in response to the search for "Rescuecom," the searcher is likely to believe mistakenly that the different name which appears is affiliated with the brand name sought in the search and will not suspect, because the fact is not adequately signaled by Google's presentation, that this is not the most relevant response to the search. Whether Google's actual practice is in fact benign or confusing is not for us to judge at this time...." 562 F. 3d at p. 123, 126.

These allegations are essentially identical to those in this case. Plaintiff's 1st Amended Complaint alleges that there is a likelihood of confusion among 1) purchasers or 2) explorers of its services. (JURIN's Complaint ¶ 51-70.) As such plaintiff's complaint properly pleads false designation of origin consistent with 15 usc. § 1125 (a)(A).

### C)   GOOGLE IS A COMPETITOR OF PLAINTIFF

Google contends that it is not a competitor of plaintiff. By allowing the use of the keyword, GOOGLE contracts with Third Parties (competitors) to derive income from plaintiffs advertising audience. The fact that GOOGLE is not in the building materials business is irrelevant. It derives its income from contracts with third parties who are direct competing with plaintiffs for the keyword for which there should be no competition. Absent use by the third parties in utilizing the Keyword Suggestion Tool and by placing Adwords campaigns, neither competitors nor GOOGLE would derive income from the same activity. Google is an intended contractual beneficiary of third party advertisers and collaborates, cooperates and or conspires in the misappropriation of the trademark. GOOGLE, along with "competitors" is vying for advertising revenue generated by the Keyword Styrotrim.

Plaintiff's 1st Amended Complaint properly alleges that Google competes for the Keyword Styrotrim, in that Plaintiff is the only one entitled to market that unique keyword, and defendants motion must be denied.    In this case, plaintiff maintains that the **Google's** and Third Parties' use in commerce and the marketing of the keyword STYROTRIM directly interferes with his ability to market that keyword. JURIN markets on a national, if not worldwide basis. GOOGLE and third parties are improperly promoting that keyword and therefore vie directly for all advertising revenue related to that Keyword, not the search results for building materials or stucco or some other generic keyword. Potential customers of Styrotrim are misdirected to

JURIN v. GOOGLE
MEMORANDUM OF POINTS AND AUTHORITIES
-6-   OPPOSITION TO MOTION TO DISMISS

competitors websites through the utilization of the Adwords tool and sponsored results. (See 1st Amended Complaint ¶¶ 73=76).

GOOGLE'S argument that they are not a competitor because they are not in the building industry misses the point. They, along with third party advertisers, compete for use of the trademarked keyword STYROTRIM. GOOGLE markets the keyword STYROTRIM to their own advantage and its activity is ongoing and continuous. This use is clearly contradicted by the Lanham Act. Google Adwords Advertisers are falsely led to believe that the Keyword is subject to public use and bid on the keyword. They then publish ads which rank for relevance to the Keyword, to plaintiff's resulting detriment.

As a result, consistent with the *Rescuecom* case, plaintiff has properly alleged violation of 1125 (a) (1) (A) and 1125 (a) (1) (B).

### IV.
### PLAINTIFF'S COMPLAINT STATES A CLAIM FOR RELIEF FOR BREACH OF CONTRACT

Plaintiff's amended complaint alleges that he has a contract with GOOGLE for his Adwords advertising account. The contract is formed by applying online through Google Adwords. As part of the terms of the agreement, an Adwords advertiser is bound to abide by the terms of the Google Adwords policy which are incorporated into the Google Adwords advertiser's terms of service. Apparently, Google doesn't think they are bound to abide by the terms of their own policy. Plaintiff respectfully submits that the policy doesn't flow only one way. The Google Adwords policy is intended to protect against unauthorized use of trademark by third parties, yet Google does not believe it is bound to respect those same terms to protect the trademark owners and the trademark law.

As an Adwords advertiser, JURIN has a reasonable expectation that he will not be deprived of the benefits of his bargain. He is the only authorized user of the Trademark, Styrotrim.

All Google advertisers, are bound by the terms of the Google adwords policy. Before an ad will run, the user must agree to the "terms of use."

As an advertiser, JURIN has a reasonable expectation that Google will comply with the terms of its own policy. It is pure sophistry to claim that Google Adwords advertisers are bound by the terms of the policy on the one hand, and that Google may disregard it in applying and enforcing the terms of promoting the use of keywords and generating revenue based on a violation of its own terms of use. Google's policy purportedly is to investigate any alleged trademark complaint in ad text o ad text and keywords, but then states that it will not disable keywords in response to complaint. This is self contradictory. There is no purpose in investigating any complaint regarding trademark use if no action is going to be taken regarding the knowing misuse of the keyword. Google cannot claim on the one hand that they will undertake to investigate any complaint of trademark infringement and then claim they have no responsibility to do something about it. The failure to do so directly deprives the rightful user of the keyword of the benefits of the advertising agreement with GOOGLE. GOOGLE'S failure to disable the keyword is a knowing breach of the agreement with the only rightful owner/user of the trademarked keyword, in flagrant disregard of the Trademark Law.

CC § 1636 provides: A contract must be so interrpeted as to give effect to the mutual intention of the parties as it existed at thim of contracting, so far as thee same is ascertainable and lawful." Further, the apparent main purpose of the parties is to be given effect. "Words in a contract which are wholly inconsistent with its nature, or with the main intention f the parties, rare to be rejected. (CC 1653). Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general purpose of the whole contract. (CC 1652; *Anderson v. Badger* (1948) 84 Cal. App. 2d 736, 742.) In this case the stated policy of investigating trademark complaints is flatly contradicted by the statement that it Google will not disable trademarked keywords. Google thus gets the benefit of promoting the keyword, generating revenue off direct competitors ads, at the same time as disclaiming any responsibility to disable the offending keyword or remove an offending ad.

For the above stated reasons, plaintiff submits that GOOGLE'S motion to dismiss the 2nd Claim for Relief must be denied.

## VII.

## CONCLUSION

WHEREFORE, for all the above stated reasons, Plaintiff respectfully prays for an ORDER DENYING Defendant's Motion to Dismiss, or that Plaintiff be allowed to amend his complaint to allege further facts consistent with the above.

DATED: June 10, 2010                    Respectfully submitted,

                                        LAW OFFICES OF PAUL R. BARTLESON


                                        By /s/ Paul R. Bartleson
                                        PAUL R. BARTLESON #119273
                                        Attorney for Plaintiff, DANIEL JURIN