PAUL R. BARTLESON #119273
LAW OFFICES OF PAUL R. BARTLESON
1007 7th Street, Suite 202
Sacramento, CA 95814
Ph. # (916) 447-6640
Fax # (916) 447-7840
paulbartlesonlaw@comcast.net

Attorney for Plaintiff,
DANIEL JURIN

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# SACRAMENTO DIVISION

-o0o-

| | |
|---|---|
| DANIEL JURIN, an Individual, | CASE NO. 2:09 cv 03065 MCE KJM |
| Plaintiff, | PLAINTIFF'S 2nd AMENDED COMPLAINT FOR: |
| vs. | (1)  VIOLATION OF 15 USC § 1114(1) |
| | (2)  VIOLATION OF 15 USC § 1125 (a) |
| GOOGLE, INC. | (3)  VIOLATION OF 15 USC § 1125 (c)) |
| | (4)   COMMON LAW TRADEMARK |
| Defendant. | INFRINGEMENT |
| | (5) CALIFORNIA UNFAIR COMPETITION |
| | (6) BREACH OF CONTRACT |
| | General and Punitive Damages; |
| | Demand for Jury Trial |

Plaintiff DANIEL JURIN (hereinafter "Plaintiff" or "JURIN"), hereby alleges as follows:

## JURISDICTION AND VENUE

1.    This action arises under the Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. 1051 et seq., and California law.

2.    This Court has federal question jurisdiction under 28 U.S.C. 1331 and 1338 (a) and (b), and 1121(a). This Court also has supplemental jurisdiction over the California statutory and common law claims pursuant to 28 U.S.C. 1367(a) because the state law claims are so related to the federal trademark claims that they form part of the same case or controversy.

3.    Venue in this judicial district is proper under 28 U.S.C. 1391 (b) & (c) and 1400(a) in that this

1    is the judicial district in which a substantial part of the acts and omissions giving rise to the claims

2    occurred.

3

**PARTIES**

4    4.     Plaintiff DANIEL JURIN ("JURIN") is an individual residing and doing business in the

5    County of Sacramento, State of California.

6    5.     Upon information and belief, defendant GOOGLE, Inc. (hereafter, "GOOGLE") is a

7    corporation organized under the laws of the State of Delaware with its corporate offices located at

8    1600Amphitheatre Parkway, Mountainview, California 94043.   GOOGLE is an international

9    business doing business in every country and place in the world where there is an internet

10    connection. It is the leading "search engine" on the internet and holds a 70% share of the market for

11    search traffic.

12    6.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant hereto each

13    of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or

14    employee of the remaining Defendants and was at all times acting within the scope of such agency,

15    affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently

16    ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all

17    the facts and circumstances, including, but not limited to, full knowledge of each and every violation

18    of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

19

**INTRODUCTION**

20    7.     Through this action, JURIN seeks to address and remedy GOOGLE's unauthorized use and

21    exploitation of the trademarks owned by Plaintiff, and to commercially exploit registered trademarks

22    not owned by, or licensed to, GOOGLE.

23    8.     A brief explanation of how GOOGLE works and what it does is necessary.   GOOGLE is

24    in the business of providing individuals who are searching on the internet with results for their search

25    queries. As part of its business it sells advertising in the form of Google AdWords

26    9.     The invention of the internet did not immediately connect users with what they were looking

27    for as they searched online.  Using the internet involves use by people who want to find something

28    and someone with something wanting to be found. Someone wishing to find something on the

1  internet will type in the word or phrase they are looking for in the search engine that they are using,

2  such as AOL, Google, Yahoo, or Bing.

3  10.     In order to be found on the internet, one must design a "website." This is a virtual storefront,

4  where potential customers can come, look and see, what product, goods or services you have for sale.

5  11.     GOOGLE 'Indexes" or crawls your site collects information regarding its contents.

6  GOOGLE stores the information, and when a query is made by a user, it will rank the pages of your

7  website for various factors and will return results to the search query in the form of SERPs (Search

8  Engine Results Pages).

9  12.     Page traffic is generated in two basic ways. Organic Traffic and Pay Per Click Advertising.

10        1) **Organic traffic**. A web site is constructed for Search Engine Optimization using several

11  different factors.  A good website will be constructed first around keywords.  Before building a

12  website, a designer or webmaster will first do a "Keyword" search using various different tools such

13  as Google Keyword Search, Nichebot, Adword Digger, or some other tool.   The goal of keyword

14  research is to find out what keywords, terms or phrases that people are searching for.

15  13.     A webmaster will then build a website using computer code with HTML, Java Script, CSS.

16  The content of the website is built around the keywords, and the rank of the website in the search

17  results is based on keyword density, relevance, authority and value in a formula known only to

18  GOOGLE and their engineers.

19  14.     2) **Pay Per Click Advertising.**  The second way is to advertise using the search's engine's

20  manipulation of searches using specific keywords or phrases.  GOOGLE by bidding on AdWords,

21  Publish an Ad, and then by driving a traffic to a particular website. An internet marketer can identify

22  particular keywords or phrases, construct an ad using those keywords, and then pay the search engine

23  provider a fee for advertising or bidding on those particular keywords.  For example, if you owned

24  a wedding favor site, you could find out what keywords people are looking for, such as wedding

25  party favors, summer wedding favors, and so on, and then bid on those keywords against others for

26  the right to rank highly on GOOGLE against competitors.  The higher the bid, the higher your

27  ranking for your web site in the SERPs, and the more traffic or views that your website will generate.

28  This is also called "pay per click" advertising.

15. The program that GOOGLE has is called GOOGLE AdWords, or simply, "AdWords." Since GOOGLE is the dominant search engine on the internet, it is vital for any internet marketer to understand how GOOGLE AdWords work.

16. A individual wishing to rank high in the GOOGLE results would create a GOOGLE AdWords account.

17. Next, he would conduct a search using the GOOGLE AdWords keyword suggestion tool.

18. Then the advertiser would decide on what keywords to bid, and construct an ad campaign using those keywords.

19. The problem arises in this case because of GOOGLE'S, and plaintiff's competitors unauthorized use of a trademarked name as a generic "keyword."

20. GOOGLE's search engine spiders picked up plaintiff's trademarked names "STYROTRIM." Alternatively, GOOGLE populated the keywords database with trademarked keywords, in which STYROTRIM was included.

21. GOOGLE populates the keyword suggestion tool database with trademarked keywords. STYROTRIM is an "arbitrary" term Trademark. It has no individual generic or dictionary meaning. It would thus not appear in GOOGLE'S keyword database had they not put it there.

21. It then in-puts those terms into its keyword suggestion tool, and assists, facilitates, allows and encourages plaintiff's competitors to bid on those particular keywords in building an ad campaign and then by generating traffic as a result.

22. By doing so, GOOGLE misappropriated the trademarked names for its own use, generated advertising revenue from plaintiffs' competitors, and assisted or facilitated plaintiffs competitors in infringing on plaintiff's trademarks. Not only have plaintiffs competitors been successful in bidding on plaintiff's trademarked "keywords," it has facilitated the dilution of plaintiff's customer base and diverted customers and traffic that rightfully is plaintiffs, and plaintiffs alone.

23. Specifically, GOOGLE enters into contracts with entities and individuals whereby said parties purchase the AdWords in effort to market building process, they are encouraged to use the trademarks of their competitors. Plaintiff's competitors are misled to use a trademarked keyword, not knowing that it is trademarked. Thus competitors of JURIN's such as Shopzilla, Yahoo and

1    purchased the keyword STYROTRIM.  Not only does this lead to confusion among plaintiff's

2    competitors, it leads to confusion in the ultimate end user of the product.  In this sense, there are two

3    sets of "consumers", the first being the purchasers of the AdWords, who compete in the advertising

4    arena for the right to market the keyword, and second, the end user or consumer of the good, product

5    or service being advertised.

6     in such a way that when a customer or potential customer inputs that trademark into GOOGLE's

7    search engine in an attempt to find the website of the goods and services associated with that

8    trademark, the website of the competitor to the trademark holder appears in GOOGLE's published

9    search results, and often in a position superior to that of the trademark holder.  These purchasers of

10   AdWords are not "competitors" in the sense that they have the right to compete for the keywords of

11   plaintiff.  They are more appropriately called interlopers, usurpers or keyword pirates.  However, for

12   sake of ease, they will be referred to as "competitors."

13   24.      A mark, or the marks, sold in this fashion by GOOGLE will hereinafter be referred to as a

14   "Keyword," or "Keywords."

15   25.      GOOGLE charges a fee for each visit ("pay per click") is paid handsomely for this

16   arrangement.  By using the pay per click method, to the unsophisticated user, the pay per click ads

17   can have a higher rank on the SERP, thereby giving the appearance to the search engine user that the

18   competitor's website, goods and services are preferable to that of the trademark holder, despite the

19   user's intention to search for a particular keyword or phrase.  The traffic or results are in essence

20   being misdirected or diverted.  In a sense, it's a form of bait and switch advertising.  Despite a query

21   for a particular trademarked word into the search engine that he or she wants information regarding

22   the goods and services branded by the trademark,  GOOGLE diverts customers and potential

23   customers away from the websites of the trademark holder to its competitors and being paid by the

24   competitors for this sleight of hand.

25   26.      Plaintiff now brings this lawsuit to hold GOOGLE accountable for selling to Plaintiff's

26   "competitors" rights held exclusively by Plaintiff, including without limitation the right to use

27   Plaintiff's mark in commerce and/or in connection with marketing, advertising, and sales.

28   27.      Plaintiff is a company engaged in the business of marketing and selling its unique and

1   proprietary "Styrotrim" building material to homeowners, contractors, and those in the construction

2   and remodeling industries. Plaintiff has been very successful with its "Styrotrim" product, enjoying

3   substantial sales, and building strong goodwill and brand awareness. Plaintiff has expended

4   considerable resources on marketing his mark, brand, and products, including without limitation,

5   buying advertising time on television stations, and advertising over the Internet. The product became

6   so well-known that it was featured on Home and Garden television network  programming, and in

7   other media outlets.

8   28.    Plaintiff spends a large amount of time and money each year to advertise and market its

9   "Styrotrim" mark and the product bearing same. Through this advertising and market, and a superior

10   and unique product, Plaintiff has become well known and famous in his market and has acquired a

11   reputation for excellence.

12   29.    Plaintiff is also a GOOGLE ADWORD advertiser and has a contractual relationship with

13   defendant.

14   30.    The Google Adword and Adsense advertising policy regarding trademarks is found at:

15          http://www.adwords.google.com/support/aw/bin/answer.py?hl=en&answer=6118

16   30a.   The Google Adwords Poli y on trademarks in ads-scope of Investigation is found at:

17          https://adwords.google.com/support/aw/bin/answer.py?hl=en&answer=144298

18          (A true and correct copy of these policy statements is attached hereto as an **Exhibits A and**

19   **B**.)

20   31.    **What is Google's AdWords and AdSense trademark policy?**

21          "Google  recognizes the importance of trademarks. Our AdWords Terms and Conditions
22          with advertisers prohibit intellectual property infringement by advertisers. Advertisers are
            responsible for the keywords they choose to generate advertisements and the text that they
            choose to use in those advertisements.
23
            Google takes allegations of trademark infringement very seriously and, as a courtesy, we
24          investigate matters raised by trademark owners. Trademarks are territorial and apply only to
            certain goods or services. Therefore, different parties can own the same mark in different
25          countries or different industries. Accordingly, in processing complaints, GOOGLE will ask
            the trademark owner for information regarding where the mark is valid and for what goods
26          or services.

27   31a    Google States its Trademark Policies in Sponsored Links

28          "....Below, you can find information on our trademark complaint procedure across different
            regions as well as on our advertiser authorization procedure.

*JURIN v. GOOGLE*
2nd AMENDED COMPLAINT

1    ...I see an unauthorized ad using my trademark. What is GOOGLE's trademark policy?

2    Depending on the regions in which you have trademark rights, we may investigate the use
     of trademarks in ad text only or in ad text and keywords.

3

4    31b.    Google's statements as far as scope investigation is concerned is as follows:

5    **Adwords policy on trademarks in ads–scope of investigation**

6    **1.  Regions where we investigate ad text only**...

     **2.  Regions where we investigate Ad text and Keywords**:

7    "In certain regions, we may investigate both ad text and keywords: [Below this is a hyperlink

8    containing regions in which this policy applies, of which the United States is not included]

9

10   Regions in which we investigate both ad text and keywords:

11   "When we receive a complaint from a trademark owner, our review is limited to ensuring
     that the advertisements at issue are not using a term corresponding to the trademarked term
12   in the ad text or as a keyword.  If they are, we will require the advertiser to remove the
     trademarked term from the ad text or keyword list and will prevent the advertiser from using
13   the trademarked term in the future.  Any such investigation will only affect ads served on or
     by Google."

14

15   31c.    Google has no stated policy with respect to Keywords only.

16   31d.    Google's trademark policy statement is misleading to the adwords advertiser unless the

17   hyperlink is specifically clicked on and reviewed.

18   31e.    While Googles states "Our AdWords Terms and Conditions with advertisers prohibit

19   intellectual property infringement by advertisers" it does not police itself from generating the

20   keywords in the keyword suggestion tool and actively encourages advertisers to use the keyword.

21   While Google states "Advertisers are responsible for the keywords they choose to generate

22   advertisements and the text that they choose to use in those advertisements," it encourages the

23   misuse of the keyword in the keyword suggestion tool and then does nothing to disable the keyword

24   after complaint by the trademark owner.

25   32.    In this case, JURIN complained to GOOGLE of the unauthorized use of his trademark in

26   connection with AdWords.  Despite JURIN'S complaints, contrary to its own policy, GOOGLE

27   failed to investigate the unauthorized use and further continues to allow third parties to utilize the

28   keyword in connection with their AdWords advertisement.

33.     Plaintiff's "Styrotrim" trademark is a unique and valuable business asset, and one which Plaintiff strongly polices and protects. The "Styrotrim" mark has become distinctive and famous and serves to distinguish Plaintiff's reputation, goods and services from his competition. The market in which Plaintiff operates associates the "Styrotrim" mark with Plaintiff and Plaintiff only, and his exclusive control of this mark provides a benefit in that potential customers will use the "Styrotrim" mark to search through internet engines such as GOOGLE's to find Plaintiff's products and web presence.

34.     GOOGLE operates an internet search engine and markets and sells advertising tied to its search engine. A large portion of GOOGLE's revenues are derived from GOOGLE's "AdWords" program (hereinafter "AdWords"). Through this program, GOOGLE auctions or otherwise sells words and terms, including without limitation Keywords, to parties that wish to advertise to GOOGLE search engine users that input those words or terms while searching the internet. The highest bidder for a search term has its website address listed as a clickable link under the title "Sponsored Links" either above or to the right of the other website address links.

35.     Clicking on these links brings the user to the website of the company who purchased use of the Keyword and was listed as a "Sponsored Link." As each user clicks the "Sponsored Links" set forth on GOOGLE's published results page, which are represented to the user to be listed by relevance to the user's search, GOOGLE earns and realizes revenues.

36.     GOOGLE uses a propriety code or algorithm to determine what results to publish after a use inputs search terms, and what order in which to publish those results. It is generally understood that the higher a listing is published on the GOOGLE search results page, the more likely the user is to "click through" to that listing and view the page and purchase goods or services. In fact, Plaintiff alleges on information and belief that there exists a whole industry that purports to be able to manipulate GOOGLE's code or algorithm to ensure that a company's listing appears higher in GOOGLE's published search results.

37.     On information and belief, Plaintiff alleges that GOOGLE represents to its users and the public that the higher a result is listed on the search results page, the more relevant it is to the party searching. Many of the "Sponsored Links" appear at the very top of the list of published search

1   results, indicating to the consumer that said links are the ones most relevant to the terms searched,

2   and the needs and interests of the user.

3   38.     The "Sponsored Links" are not clearly marked as advertisements and/or as "paid-for

4   placements," and are depicted in such a way as to confuse the ultimate consumers or end users as to

5   the reasons why the "Sponsored Links" have appeared as a result of the user's search for the goods

6   and services identified by the trademarked term input by the user.

7   39.     Plaintiff operates a website at http://www.styrotrim.com. This website is one of Plaintiff's

8   primary sources of advertising and sales. Many users search for Plaintiff's website and products

9   through internet search engines such as GOOGLE's search engine. This website, and the "Styrotrim"

10  mark, are well-known and oft- searched for on internet search engines. The trademark "Styrotrim,"

11  and the www.styrotrim.com domain name, were submitted to GOOGLE by Plaintiff to ensure that

12  if such terms were searched by a user, the search results published by GOOGLE would list as the

13  lead link for Plaintiff's website. Clicking on this link would lead the user to Plaintiff's website.

14  40.     Plaintiff owns the federal registration in and to the "Styrotrim" mark. Plaintiff applied for the

15  registration for the mark on August 8, 2005, and the registration was granted on July 25, 2006.

16  Plaintiff has also applied for and received a design mark for Styrotrim. At no time has Plaintiff

17  licensed or otherwise granted any rights in these marks to GOOGLE, aside from GOOGLE being

18  able to use the marks to locate and/or identify Plaintiff's website.

19  41.     Plaintiff is informed and believes and thereon alleges that GOOGLE sold certain rights to

20  Plaintiff's "Styrotrim" mark to Plaintiff's competitors, and others, in the same or similar industries

21  and/or markets. GOOGLE has improperly infringed upon and diluted Plaintiff's name and trademark

22  "Styrotrim" by selling the trademark "Styrotrim" to Plaintiff's competitors as a Keyword so that when

23  an user of GOOGLE's search engine searches for "Styrotrim," the competitor's advertisement

24  hyperlink will appear on the first page of the search results.

25  42.     In many cases, the link to the competitor's website will appear higher and more

26  conspicuously than the link for Plaintiff's website. This enables GOOGLE and Plaintiff's

27  competitors to exploit Plaintiff's trademarks in such a way so as to place their advertising hyperlinks

28  in front of consumers who specifically search for "Styrotrim," thereby diverting a percentage of such

1  customers away from Plaintiff's website. In addition, Plaintiff's competitors benefit from all of the

2  goodwill, initial interest, and "buyer's momentum" associated with Plaintiff's valuable trademark,

3  and at a fraction of the cost.

4       A screen shot taken on May 28, 2009 of the search results published by GOOGLE when a

5  GOOGLE search engine user searches for "Styrotrim." As is evident from said search results, the

6  links to the websites of Plaintiff's competitors, none of which have any connection to Plaintiff or the

7  "Styrotrim" mark, appear above and in combination with Plaintiff's links in GOOGLE's published

8  results.

9  43.    In searching for Plaintiff's products and web presence by entering "Styrotrim" as a search

10  term into GOOGLE's internet search engine, a user is indicating that he or she is interested in

11  Plaintiff and its products, and making purchases of Plaintiff's products.

12  44.    GOOGLE exploits for profit its knowledge of this interest by selling contextual advertising

13  space to competitors in the market that services users with this interest. This type of advertising

14  space allows companies with similar, related, and/or competing goods and services to those being

15  searched for to have links advertising said goods and services appear on the same page of results on

16  which the Keyword results appear. This implies to the search engine user a sponsorship,

17  endorsement and connection between the product identified by the Keyword, and the third party

18  companies' goods and services. It also allows third parties to free-ride off of the reputation and good

19  will associated with the term that is input into the search engine. This sort of advertising is

20  advantageous because it targets a specific market that has already exhibited an interest, through the

21  input of the Keyword, in the type of goods and services offered by the third party.

22  45.    GOOGLE thereby profits financially from infringing upon and diluting Plaintiff's protected

23  trademarks and assisting and encouraging third parties to do so as well.

24  46.    Upon information and belief, GOOGLE also employs software or other programming known

25  as a "Keyword Suggestion Tool." This tool suggests to Plaintiff's competitors that they should use

26  Plaintiff's "Styrotrim" trademark as a Keyword for their advertising and to maximize their sales.

27  GOOGLE's use of this tool is designed to make such competitors' advertising more successful, and

28  to lead more users to bypass the link to Plaintiffs website and click on the competitors' links. The

1   more times said links are clicked by the user, the more profits are realized by GOOGLE. In essence,

2   by intercepting and diverting Plaintiffs customers and potential customers to websites owned by

3   Plaintiffs competitors, GOOGLE is realizing revenues.

4   47.     Upon information and belief Plaintiff alleges that it is GOOGLE's policy to sell the rights to

5   use marks such as Plaintiffs to Plaintiffs competitors in order to increase revenues, and such sales

6   are uses in commerce as defined in the Lanham Act; and it is also GOOGLE's practice, contrary to

7   stated policy, not to investigate complaints about GOOGLE's policies and practices to the extent they

8   are based on trademark infringement.

9   48.     Plaintiff has provided written notice to GOOGLE of his allegations that GOOGLE has

10   violated his trademark rights. No remedial action was taken by GOOGLE.

11   49.     Upon information and belief, Plaintiff alleges that GOOGLE sells the right to use Plaintiffs

12   "Styrotrim" trademark to third parties without the consent of Plaintiff. GOOGLE sells this use of

13   Plaintiffs "Styrotrim" trademark to third parties in connection with advertising that GOOGLE hosts

14   on its websites, and from which it profits. In doing so, GOOGLE, in concert with these third parties,

15   exploits Plaintiffs "Styrotrim" mark to divert customers and potential customers of Plaintiffs to

16   websites hosted by, and offering the competing products and services of, these third parties.

17   50.     Upon information and belief, Plaintiff alleges that in committing the acts alleged in the

18   preceding paragraph, GOOGLE contravenes fair business practices by intercepting and diverting

19   customers and Plaintiffs that were rightly those of Plaintiff and had entered Plaintiffs marks into

20   GOOGLE's search engine; by trading on the goodwill, brand awareness and business reputation of

21   Plaintiff; by diluting the value of Plaintiffs marks by associating them with companies and products

22   of a different and inferior nature; by creating a false sense of sponsorship, affiliation, or connection,

23   between Plaintiff and the goods and services of third parties; by indicating to consumers that the

24   goods and services of those third parties that appear on the search results page that is published after

25   the entry of Plaintiffs marks are as credible, quality, and trustworthy as Plaintiffs, and qualify as

26   acceptable substitutes for Plaintiffs goods and services; by profiting from the use of Plaintiffs marks

27   without compensation to, or the authorization of, Plaintiff; and by negating the value of Plaintiffs

28   own online advertising campaign by allowing itself and third parties to benefit and profit when users

1   search for the marks advertised, marketed and developed by Plaintiff.

2   51.      Upon information and belief, Plaintiff alleges that GOOGLE's use of Plaintiffs marks to

3   identify and direct consumers to the goods and services of others causes significant confusion in the

4   marketplace, dilutes the value of Plaintiffs marks, implies a false sponsorship and association

5   between Plaintiff and his competitors, allows Plaintiff's competitors to free-ride on and benefit from

6   the goodwill and reputation of Plaintiff, and denies Plaintiff the ability to control his marks, and the

7   goods and services with which they are associated.

8   52.      Upon information and belief, when GOOGLE presents a user that searched through

9   GOOGLE's search engine for Plaintiffs mark with published results that conspicuously display

10  "Sponsored Links" containing links of Plaintiffs competitors, the user will often times bypass

11  Plaintiff's link and instead go to the websites of Plaintiff's competitors, or attempt another search

12  that does not seek information regarding Plaintiff's website or goods. This damages Plaintiff, and

13  does so even if the user eventually realizes that the website is not Plaintiffs, and is not associated

14  with Plaintiff.

15  53.      Upon information and belief Plaintiff alleges that GOOGLE is and was aware that its actions

16  as described herein constitute trademark infringement and unfair business practices. As such, its

17  actions were and are deliberate and willful, and were and are taken with full knowledge that they

18  constitute a violation of the law. GOOGLE knowingly exploited and traded on the goodwill of

19  trademarks in which it had no ownership rights for the Said conduct was undertaken by GOOGLE

20  for the sole purpose of increasing its own profits. This constitutes willful infringement.

21  54.      Internet advertisers or users of GOOGLE AdWords are deceived into believing that the

22  keyword "Styrotrim" is in the public domain as a result of the keyword suggestion tool and being

23  guided through the Adword creation process, thereby being encouraged to formulate ads that infringe

24  on plaintiff's trademark.

25  55.      Ultimate end users or buyers of the product of the advertising, internet users, who search

26  through GOOGLE's search engine for any of Plaintiff's marks, or for any of Plaintiff's marks in

27  combination with other terms, are deceived into believing that the "Sponsored Links" of plaintiff's

28  competitors that appear on GOOGLE's published results list are related to Plaintiff by their

1   placement on the results page, their appearance and similarity to the results, the good and services

2   they offer, and/or their content. There is no indication whatsoever on the results page to

3   communicate to the user that the "Sponsored Links" are not sponsored by Plaintiff or otherwise bear

4   a relationship to Plaintiff, and are in fact paid advertisements by Plaintiff's competitors.

5

6   ### FIRST CLAIM FOR RELIEF
    ### (VIOLATION OF THE LANHAM ACT -15 USC § 1114 (1))

7   56.   Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1

8   through 55 as though more fully set forth herein.

9   57.   Plaintiff owns the United States Trademark Registration for the word mark "STYROTRIM."

10  He also owns a design mark registration bearing the same word.

11  58.   Upon information and belief Plaintiff alleges that GOOGLE has violated plaintiff's exclusive

12  rights to the name and trademark "Styrotrim," and contributed to the violation of such rights by

13  others, by using and suggesting and encouraging the use by its AdWords advertisers of the trademark

14  "Styrotrim" as a Keyword for purposes advertising and selling the goods and services of Plaintiff's

15  competitors through GOOGLE's AdWords advertising system, and the publishing by GOOGLE of

16  59.   "Sponsored Links," including Plaintiff's competitors links, in response to a search for

17  "Styrotrim" by a user of GOOGLE's search engine.

18  60.   GOOGLE's use of Plaintiff's trademark "Styrotrim" constitutes a use in commerce in

19  connection with the sale, offering for sale, distribution and advertising of goods and services.

20  GOOGLE's sales of rights to exploit Plaintiff's "Styrotrim" trademark, and the branding of certain

21  GOOGLE searches with the "Styrotrim" trademark, also constitutes use in commerce.

22  61.   The goods and services offered by one or more of Plaintiff's competitors which participated

23  in GOOGLE's AdWords campaign by using the trademark "Styrotrim" as a Keyword are

24  substantially similar to the goods and services offered by Plaintiff under the "Styrotrim" mark.

25  62.   Upon information and belief, GOOGLE's use of Plaintiff's trademark causes some advertisers

26  of building related products to utilize the trademark in conjunction with the creation of the their

27  AdWords campaigns.

28  63. Upon information and belief, at least some ultimate users or consumers actively seeking to find

1   and do business with Plaintiff to click on one or more "Sponsored Links" linking to the websites of

2   Plaintiff's competitors, either by mistake, or through confusion or because they are deceived into

3   believing such "Sponsored Links" are related to Plaintiff; and, further, causes some users to abandon

4   their attempts to locate Plaintiff's website.

5   64.    Upon information and belief, GOOGLE's use of Plaintiff's name and trademark causes at

6   least initial confusion among users of GOOGLE's search engines who see competitors' "Sponsored

7   Links" published by GOOGLE in response to a search by the user for Plaintiff's marks.

8   65.    Upon information and belief, there is an expectation among internet users who conduct

9   searches on GOOGLE's search engine that the results published by GOOGLE in response to the

10  search, including the "Sponsored Links," will be related to the search term, especially with regard

11  to "Sponsored Links" that appear immediately above the published results of the search, and are

12  designed to look similar to the other search results published by GOOGLE in response to a search.

13  66.    Plaintiff expends significant sums of money in advertising its brand and trademark both on

14  the internet and on television. As a result, the name the mark "Styrotrim" has become well-known,

15  famous and distinctive in its market among contractors, homeowners, and those in the construction

16  and remodeling industries.

17  67.    GOOGLE is promoting, encouraging, enabling and profiting from Plaintiff's competitors

18  "free-riding" on Plaintiff's goodwill and the name recognition it enjoys in its marketplace and among

19  its customers.

20  68.    Upon information and belief, some users who search for Plaintiff's marks on GOOGLE's

21  search engines by inputting the terms "Styrotrim" or "www.styrotrim.com." thereafter click upon a

22  competitor's link by mistake, or out of confusion or because they are deceived into believing it is

23  related to the search terms set forth above, and thereafter do not continue their search for Plaintiff

24  either because they do business with a competitor, or out of discouragement or because they are

25  diverted and distracted from continuing their search.

26  69.    Upon information and belief, after being diverted from their search for Plaintiff, some users

27  lose the initial "momentum' generated by the goodwill associated with the "Styrotrim" brand, or are

28  otherwise presented with purchasing barriers associated with making a choice between competing

providers of goods and services, and causes Plaintiff to lose one of the key benefits of its well-known trademark.

70.     By reason of the above, GOOGLE has violated the exclusive rights of Plaintiff in and to its use of the registered trademark "Styrotrim" and has contributed to the violation of such rights by others by enabling, cooperating with, suggesting and encouraging the use of Plaintiff's trademark by others, and may be held liable in a civil action under 15 U.S.C. § 1114 (1).

71.     GOOGLE has refused written notice of Plaintiff's claim and has refused to take remedial measures and refused to alter its policy permitting companies other than Plaintiff, including Plaintiff's competitors, from using the "Styrotrim" trademark to direct consumers to "Sponsored Links" which include Plaintiff's competitors; therefore its violation of plaintiff's trademark rights under the Lanham Act is a willful and intentional violation of Plaintiffs exclusive rights.

72.     Upon information and belief, GOOGLE used and encouraged third parties to use the name and trademark "Styrotrim" with the intention of benefitting from the goodwill associated with Plaintiff's trademark in that such use was intended to cause confusion, mistake or to deceive potential customers, or to divert customers from Plaintiff to third parties, or otherwise improperly benefit from the goodwill associated with plaintiff's mark.

73.     Upon information and belief, GOOGLE has altered its policy of regarding trademark violations through its search engine and its AdWords advertising program for the purpose of profiting from the sale of such additional trademarked search terms and the advertising benefit it provides to Plaintiff's competitors. This change in policy was made with the intent of increasing GOOGLE's advertising revenues.

74.     By reason of the above, GOOGLE is in violation of 15 U.S.C. § 1114 (1) and Plaintiff is entitled to recover profits and damages from defendant.

75.     Plaintiff has been damaged by defendant's violations of its rights under the Lanham Act in an amount to be determined at trial.

76.     As a result of the above, Plaintiff has suffered and continues to suffer general, special, and irreparable damages and has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

1      **(FALSE DESIGNATION OF ORIGIN - 15 U.S.C. § 1125 (a))**

2      77.    Plaintiff repeats and realleges each and every allegation made above as if set forth in full

3      herein.

4      78.    GOOGLE's sale of the right to use Plaintiff's registered trademark "Styrotrim" to competitors

5      of Plaintiff in order for said competitors to use the term to drive customers to their websites

6      constitutes a use in commerce.

7      79.    The Keyword Suggestion Tool is an integral part of the AdWords process and guides potential

8      users through the system in selecting keywords and making recommendations regarding which

9      keywords to choose and the amount of the bid.  The keyword suggestion tool is the precursor to

10     AdWords.

11     80.    The ad is not just the text that is displayed in the results page but a resulting creation of the

12     total system from keyword suggestion to display, and the AdWords advertisers purchase the total

13     system from GOOGLE via their AdWords accounts.

14     81.    The advertising competitors of STYROTRIM in the building industry are falsely misled that

15     the keyword Styrotrim is a generic word and not an abstract trademarked keyword.  GOOGLE

16     populates the keyword tool with a database of trademarked keywords. "Styrotrim" is an "arbitrary"

17     term having no dictionary meaning and would not have appeared in GOOGLE's database and in the

18     keyword suggestion tool had not the put it there.

19     81a.    Plaintiff as the owner of the trademark styrotrim, is the only one authorized to utilize or bid

20             on

21     the keyword Styrotrim, unless otherwise licensed or authorized to an affiliate.

22     81b.    Google becomes a direct competitor of plaintiff by populating the keyword tool with the

23     trademarked keyword, and enabling, encouraging, aiding and abetting,  and conspiring with third

24     parties to generate revenue from advertisement based on the keyword Styrotrim.  Although Google

25     is not in the business of producing of building materials, it directly competes for the keyword

26     Styrotrim by promoting it through the keyword suggestion tool and encouraging competitors of

27     plaintiff in the building industry to compete for the keyword.

28     82.    Plaintiff alleges that the Google's wrongful suggestion of the keyword Styrotrim and third

1  party purchasers of the keyword/AdWords advertisements result in a competitive injury to plaintiff.

2  82a.    Google is a direct competitor of plaintiff in the world of ecommerce as it attempts to derive

3  revenue through use of the trademarked term "Styrotrim", which is an unathorized use by plaintiff.

4  83.    End users or consumers, third party internet users who search using the term "Styrotrim" on

5  GOOGLE's search engine have a reasonable expectation that the websites and hyperlinks appearing

6  on GOOGLE's published list of search results are sponsored by or related to Plaintiff.

7  84.    Internet users who view the "Sponsored Links" on GOOGLE's published list of results, some

8  or all of which appear to be part of the published search results, may become confused, mistaken,

9  misled and/or deceived that "Sponsored Links" which link to Plaintiff's competitor's websites may

10  be affiliated with, connected to, or approved or sponsored by Plaintiff.

11  85.    GOOGLE's publishing of the "Sponsored Links" in response to a search by an user using the

12  trademark "Styrotrim" as one or more of the search terms constitutes a false designation of origin,

13  affiliation, connection or association of such competitor with Plaintiff, or a false description of

14  origin, sponsorship or approval of the goods or services or activities of such competitor by Plaintiff,

15  and a contribution to the false designations by others by enabling, cooperating with, suggesting and

16  encouraging the use of Plaintiff's trademark by others. Such conduct also constitutes false

17  advertising.

18  86.    As a result of the above, Plaintiff has suffered and continues to suffer general, special, and

19  irreparable damages and has no adequate remedy at law.

20  **THIRD CLAIM FOR RELIEF**
21  **(DILUTION OF PLAINTIFF'S TRADEMARK -15 U.S.C. § 1125 (c)))**

22  87.    Plaintiff repeats and realleges each and every allegation made above as if set forth in full

23  herein.

24  88.    Plaintiff's mark "Styrotrim" is a distinctive and famous mark under 15 U.S.C. § 1125 for the

25  following reasons:

26      A.    "Styrotrim" is a distinctive unique word which is not merely

27       descriptive;

28      B.    "Styrotrim" is used extensively in connection with television and internet advertising

1   for Plaintiff's goods and services;

2   C.      "Styrotrim" is recognized widely, particularly among Plaintiff's

3   market of homeowners, contractors, construction workers and remodelers.

4   D.      No other party uses a mark similar to Plaintiff's mark for similar

5   services;

6   E.      "Styrotrim" has been federally registered by plaintiff as a

7   trademark.

8   89.     GOOGLE's sale to competitors of Plaintiff the use of the trademark "Styrotrim" as a search

9   term that, when inputted by a user, will trigger the publishing of "Sponsored Links" including the

10  competitor is a commercial use in commerce because defendant is a commercial entity selling and

11  offering for sale advertising on its search engine located on the internet at www.GOOGLE.com.

12  90.     Upon information and belief, GOOGLE's use of the trademark "Styrotrim" for commercial

13  use in commerce occurred after Plaintiff's trademark "Styrotrim" became famous or distinctive.

14  91.     Defendants' use of the trademark "Styrotrim" dilutes the distinctive quality of Plaintiff's

15  trademarks as it causes and can cause confusion among customers and potential customers of

16  Plaintiff.   In   addition,   customers   and   potential   customers   may   view   competitor's

17  advertisements/Sponsored Links in response to a search for "Styrotrim" on GOOGLE's search engine

18  and reasonably believe that the advertising company, often a competitor of Plaintiff, is affiliated or

19  associated with, or approved by or sponsored by Plaintiff.

20  92.     GOOGLE's use of Plaintiff's trademarks causes a "blurring" of the trademark's relationship

21  to Plaintiff. It also may lead to consumers viewing Plaintiff's name and trademarks as a generic term

22  referring to home improvement.

23  93.     Finally, customers or potential customers and potential customers may view competitor's

24  websites after clicking on the "Sponsored Links" published by GOOGLE, and be dissatisfied with

25  the level of quality of services provided by such competitor, thereby tarnishing the "Styrotrim" mark

26  and name in the mind of the consumer.

27  94.     GOOGLE's use of Plaintiff's trademarks therefore constitutes a dilution of same, or a

28  contribution to the acts of dilution of such trademark by others by suggesting and encouraging the

1  use of such trademarks.

2  95.    Plaintiff has incurred and may incur damages related to lost or diverted customers and

3  potential business, and the decline in the value and goodwill of its marks. In addition, if a potential

4  customer is misdirected by GOOGLE's published results to a competitor's business, believing a

5  relationship exists between this competitor and Plaintiff, or that the quality of such competitor's

6  goods and services are indicative of the quality of Plaintiff's goods and services, or because of a

7  perception that Plaintiff is not controlling the use of its trademark for the exclusive use of his

8  company, and that Plaintiff's marks are diluted and/or tarnished by Defendant's use of identical marks

9  as a means of advertising such competing businesses, Plaintiff will be greatly harmed.

10  96.    Upon information and belief, Plaintiff alleges that GOOGLE was aware of Plaintiff's use of

11  the trademark "Styrotrim," and its own lack of rights to use or sell rights in that mark, and willfully

12  intended to trade upon Plaintiff's reputation or to cause dilution of Plaintiff's trademark, or to

13  contribute to such dilution by others. At the very least, GOOGLE's actions were willful after it

14  refused to remove such competing Sponsored Links and refusing to remove STYROTRIM's name

15  from its list of suggested search terms via its Keyword Suggestion Tool program.

16  97.    As a result of the above, Plaintiff has suffered and continues to suffer general, special, and

17  irreparable damages and has no adequate remedy at law.

18
19                          **FOURTH CLAIM FOR RELIEF**
                       **(COMMON LAW TRADEMARK VIOLATION)**

20  98.    Plaintiff repeats and realleges each and every allegation made above as if set forth in full

21  herein.

22  99.    GOOGLE's use of Plaintiff's trademark "STYROTRIM" for the commercial purpose of

23  selling it in return for advertising revenue, and for the purpose of advertising the goods and services

24  of those in competition with Plaintiff, and not for the purpose of referring to Plaintiff and its goods

25  and services, and without the permission of Plaintiff, is an infringement of Plaintiff's common law

26  trademark rights.

27  100.   GOOGLE's use of the "STYROTRIM" name and trademark allows defendant to freely trade

28  off of and benefit from the goodwill and reputation associated with Plaintiff's name and trademark

1  "STYROTRIM" without consequent expense to itself, to its advertisers, or compensation to Plaintiff.

2  101.   GOOGLE's use of the "STYROTRIM" name and trademark is deceptive and is likely to

3  cause confusion or mistake in the minds of potential AdWords buyers and end users, customers and

4  potential franchisees who search for "STYROTRIM" on GOOGLE's search engine, and is therefore

5  a violation of Plaintiff's common law trademark rights and a contribution to the violation of such

6  rights by others by encouraging, suggesting and enabling them to do so.

7  102.   As a result, Plaintiff has suffered damages in an amount to be determined at trial.

8  103.   As a result of the above, Plaintiff has suffered and continues to suffer general, special, and

9  irreparable damages and has no adequate remedy at law.

10
**FIFTH CLAIM FOR RELIEF**
**(For California Unfair Competition, Violation of Business and Professions**
11
**Codes §§ 17200, 17500, 14245)**

12  104.   Plaintiff repeats and realleges each and every allegation made above as if set forth in full

13  herein.

14  105.   Defendant's wrongful conduct, as alleged above and otherwise, constitutes unfair competition

15  and deceptive practices under California Business & Professional Code §§ 17200, et seq., and 17500,

16  and §14245 et seq.

17  106.   Moreover, Defendant's conduct, as set forth above, constitutes unlawful, unfair, and/or

18  fraudulent business practices, and presents a continuing threat to the consuming public in that the

19  public is likely to be deceived as to the affiliation, connection, and association of the "Sponsored

20  Links" published by GOOGLE after a member of the public enters a Keyword into GOOGLE's

21  search engine.

22  107.   The purchasers of GOOGLE'S advertising in turn use GOOGLE'S suggested keywords to

23  create text ads in GOOGLE'S. AdWords system to display on GOOGLE'S search pages.   This

24  assistance by GOOGLE spans all the way from the Keyword Suggestion Tool, through the text ad

25  creation system, all the way to GOOGLE's own system that displays the text ads on GOOGLE'S

26  search pages.

27  108.   Cal. Business and Professions Code 14245 provides in pertinent part.

28      (A) A person who does any of the following shall be subject to a civil action by the owner

of the registered mark, and the remedies provided in Section 14250:

...(3)  Knowingly facilitate, enable or otherwise assist a person to manufacture, use, distribute, display, or sell any goods or services bearing any reproduction, counterfeit, copy or colorable imitation of a mark registered under this chapter."

109.    Whether or not GOOGLE knowingly populates its database with trademarked keywords, the fact remains that JURIN put GOOGLE on notice that the keyword suggestion tool was being used to assist third parties in the infringement on his trademark.  In breach of its own stated AdWords Policy, GOOGLE simply ignored JURIN's demand that they remove it from the keyword database, in willful violation of B & P 14245 (a).  JURIN demanded that GOOGLE remove the Trademark from the keyword suggestion tool database.  GOOGLE failed and refused, and continues to fail and refuse to enforce its own trademark policy and prevent others from infringing on plaintiff's trademark.

110.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer injury in fact resulting in the loss of money, goodwill and/or property in an amount to be determined at trial.

111.    In addition, Defendants, and each of their, conduct, unless enjoined and restrained has, and will continue to cause irreparable harm to Plaintiff, for which Plaintiff has no adequate remedy at law.  In order to restore Plaintiff's interests in monies and property acquired by Defendants, and each of them, by the unfair competition complained of herein, Plaintiff seeks to have Defendants, and each of them, enjoined from unlawfully selling to Plaintiff's competitors, or any other party, the right to use in commerce Plaintiff's "STYROTRIM" trademark.

112.    GOOGLE also used, exploited and profited from use of Plaintiff's marks. This use of Plaintiff's marks had value, as GOOGLE received payment by Plaintiff's competitors for the right to use Plaintiff's trademarks in connection with the generation of "Sponsored Links" in GOOGLE's published search results. It did so without the authorization and consent of Plaintiff, and to the detriment of Plaintiff.

113.    This conduct resulted in the unjust enrichment of Plaintiff, and it would be inequitable to allow GOOGLE to retain these ill-gotten gains.

1   114.    Plaintiff has been generally and specially damages by the above in an  amount to be proven

2   at trial, and has been irreparably harmed.

3          Wherefore, plaintiff prays for judgment as set forth herein.

4

5                        **SIXTH CLAIM FOR RELIEF**

6                         **(For Breach of Contract)**

7

8   108.    Plaintiff repeats and realleges each and every allegation made above as if set  forth in full

9   herein.

10  109.    Defendant's breached their contract with plaintiff by violating the AdWords policy as stated

11  above.

12  110.    After demand and complaint by plaintiff, defendant failed to remove the trademarked term

13  from its keyword database, made no investigation, and continued to permit advertising competitors

14  of plaintiff to use the trademarked keyword.

15  111.    While Google states that "Google recognizes the importance of trademarks. Our AdWords

16  Terms and Conditions with advertisers prohibit intellectual property infringement by advertisers.

17  Advertisers are responsible for the keywords they choose to generate advertisements and the text that

18  they choose to use in those advertisements." Google refuses to disable trademarked keywords in the

19  keyword suggestion tool after complaint by the trademark owner.

20  112.    Depending on the regions in which you have trademark rights, we may investigate the use

21          of

22  trademarks in ad text only or in ad text and keywords.

23  113.    Google's statements as far as the scope of investigation contradict its own statement of

24   recognizing the importance of trademarks and prohibit intellectual property infringement by

25  advertisers, it does not prohibit itself from misusing the trademark of the owner in the keyword

26  suggestion tool.

27  114.    Further, the stated policy of investigating ad words and keywords is not applicable in the

28  United States and buried beneath a hyperlink, essentially rendering Google's stated policy against

intellectual property infringement illusory and disingenous.

115.    Google breached its agreement by failing to honor the policy against intellectual property infringement by disabling the keyword Styrotrim after complaint by its owner.

116.    Google breached the implied covenant of good faith and fair dealing, implied in every contract

by depriving Plaintiff of the exclusive use of his trademarked name. After notice, Google knowingly assisted third parties in the use of the keyword in their advertisements.

117.    As a proximate result of defendant's breach of contract, plaintiff has suffered general damages in an amount according to proof.

118.    As a further proximate result of defendant's breach of contract, plaintiff has suffered loss of advertising traffic, loss of customers, and dilution of his trademark, all in an amount subject to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Daniel JURIN respectfully requests that this Court grant judgment against the Defendants on all causes of action as follows:

1. A preliminary and permanent injunction against defendant GOOGLE, Inc. directing it to discontinue use of the trademark "STYROTRIM", or any substantially similar word as a search term or as part of a search term phrase in connection with advertising on its search engine, including without limitation, with its sale of Sponsored Links through its AdWords advertising program;

2. A preliminary and permanent injunction against GOOGLE, Inc. directing it to discontinue the practice of suggesting and encouraging advertisers to use the "STYROTRIM" name and trademark as part of their AdWords search terms via GOOGLE's Keyword Suggestion Tool, or by any other means;

3. A preliminary and permanent injunction against defendant GOOGLE, Inc. directing it to suspend all current Sponsored Links which use "STYROTRIM" as a search term or part of a search term phrase, other than Plaintiff's Sponsored Links;

4. An accounting of all revenue earned by GOOGLE, for its own account or through affiliates or agents, and or AdWords users, by selling plaintiff's trademark "STYROTRIM" in its

1  AdWords program, or any other advertising program, and an Order to pay such revenue to Plaintiff,

2  or such percentage of revenue as determined by this Court to be just and fair:

3      5.  Damages in an amount determined by the Court, up to treble plaintiff's actual damages

4  in a sum to be determined at trial, or alternatively statutory damages of not less than $500.00 per use

5  of plaintiffs mark, as the Court considers just, together with punitive damages as determined by the

6  Court;

7      6.  General Damages in an amount according to proof;

8      7.  Consequential Damages in an amount according to proof;

9      8.  Reasonable attorneys fee as determined by the Court upon application;

10     7.  Costs and disbursements incurred by the plaintiff; and

11     8.  Such other and further relief as this Court deems just and proper.

12     9.  Plaintiff requests a Trial by Jury Pursuant to FED. R. CIV. P. 38 and the 7th Amendment

13  to the United States Constitution.

14  //

15  DATED: September 29, 2010                          Respectfully submitted,

16                                          LAW OFFICES OF PAUL R. BARTLESON

17

18                                          By /s/ Paul R. Bartleson

19                                          PAUL R. BARTLESON #119273
                                            Attorney for Plaintiff, DANIEL JURIN

20

21

22

23

24

25

26

27

28

# EXHIBIT
# -A-

Google AdWords Help

# What is Google's AdWords and AdSense trademark policy?

Google recognizes the importance of trademarks. Our AdWords Terms and Conditions prohibit intellectual property infringement by advertisers. Advertisers are responsible for the keywords they choose to generate advertisements and the text that they choose to use in those advertisements.

Google takes allegations of trademark infringement very seriously and, as a courtesy, we investigate matters raised by trademark owners. Trademarks are territorial and apply only to certain goods or services. Therefore, different parties can own the same mark in different countries or different industries. According'y, in processing complaints, Google will ask the trademark owner for information regarding where the mark is valid and for what goods or services. Please note the following about our complaint process:

- The trademark owner doesn't need to be a Google AdWords advertiser in order to send a complaint.
- Any such investigation will only affect ads served on or by Google.
- Google's trademark policy does not apply to search results. Our investigations only apply to sponsored links. For trademark concerns about websites that appear in Google search results, the trademark owner should contact the site owner directly.
- In the case of an AdSense for Domains trademark complaint, an investigation will affect only the participation of the domain name in question in our AdSense for Domains program.
- Because Google is not a third-party arbiter, we encourage trademark owners to resolve their disputes directly with the advertisers, particularly because the advertisers may have similar ads running via other advertising programs.

## AdWords Trademark Policies in Sponsored Links

Below, you can find information on our trademark complaint procedure across different regions as well as on our advertiser authorization procedure.

### AdWords trademark complaints

Depending on the regions in which you have trademark rights, we may investigate the use of trademarks in ad text only or in ad text and keywords. Please see the regional breakdown of our ad text and keyword policies.

Trademark owners may submit either a specific or general trademark complaint. A **specific complaint** means that we will investigate a trademark term in specific advertisements only. The trademark owner is required to provide the exact URLs in question, and we will not investigate the trademark in any other advertisements. A **general complaint** means that we will investigate the trademark in all relevant advertisements. The trademark owner does not need to provide the specific URLs in question. However, if there are specific advertisers that are authorized to use the trademark, the trademark owner is required to provide the corresponding customer IDs or login emails.

If you have concerns about the use of your trademark in AdWords ads or keywords showing in an applicable region, file a trademark complaint. If your complaint concerns the use of your trademark in multiple regions. please send us one complaint with ownership information for your trademark in these regions. We'll follow the appropriate procedure for each region submitted in your complaint.

### Authorize advertisers to use trademarks

## AdWords Counterfeit Goods Complaint in Sponsored Links

### A Google advertiser is selling counterfeit goods. What is Google's Counterfeit Goods policy?

## AdSense for Domains Trademark Policy

**A parked domain is serving AdSense ads, and the domain name is using my trademark or variation thereof. What is Google's AdSense for Domains trademark policy?**

Concerned about the use of one of Google's trademarks? Please let us know about websites using Google trademarks inappropriately.

**Was this information helpful?**          Yes    No


AdWords - Contacting Us - Help with other Google products -
©2010 Google

EXHIBIT

-B-

            **AdWords Help**

## AdWords policy on trademarks in ads - scope of investigation

In certain regions, we allow some ads to show with a trademark in ad text if the ad is from a reseller or from an informational site. Learn more about our trademark policy for resellers and informational sites.

For regions that are not included under our trademark policy for resellers and informational sites: if our investigation finds that the advertiser is using the trademark in ad text, we will require the advertiser to remove the trademark and prevent them from using it in ad text in the future.

### 1. Regions where we investigate ad text only

Please note the regions where we will investigate ad text only. We will not disable keywords in response to a trademark complaint in these regions. Furthermore, our investigation will only affect ads served on or by Google.

Google is dedicated to providing relevant advertising to our users, advertisers, and publishers alike. Accordingly, our trademark policy aims to provide users with choices relevant to their keywords. At the same time, we investigate trademark violations in ad text, both as a courtesy to the trademark owner and to ensure that ads are clear to users.

   Regions in which we investigate ad text only

EU and EFTA Regions: In EU and EFTA regions, we do not prevent the selection of trademarks as keywords. However, in response to a complaint, we will do a limited investigation as to whether a keyword (in combination with particular ad text) is confusing as to the origin of the advertised goods and services. An example could be an ad that falsely implies affiliation with the trademark owner. If we find that it is confusing, we will remove the specific ad that is the subject of the complaint.

Under our EU and EFTA policy, we will permit the following types of ads to display against a trademarked keyword, *provided that the ad is not confusing as described above.* (The following are examples and not an exhaustive list.)

- ads using a trademarked term when that term is being used in a descriptive or generic way, such as not in reference to the term as a trademark
- ads for competing products or services
- ads for resale of the trademarked goods or services
- ads for the sale of components, replacement parts, or compatible products corresponding to a trademark
- ads for informational sites about a product or service corresponding to the trademark

   See EU and EFTA regions

### 2. Regions where we investigate ad text and keywords

In certain regions, we may investigate the use of trademarks in ad text, in keywords, or in both ad text and keywords.

   Regions in which we investigate both ad text and keywords

When we receive a complaint from a trademark owner, our review is limited to ensuring that the advertisements at issue are not using a term corresponding to the trademarked term in the ad text or as a keyword. If they are, we will require the advertiser to remove the trademarked term from the ad text or keyword list and will prevent the advertiser from using the trademarked term in the future. Any such investigation will only affect ads served on or by Google.

We do not take any action in situations where an advertisement is being triggered by non-trademarked terms.

even though the search query contains a trademarked term. This occurrence stems from the fact that Google allows advertisers to use a broad matching system to target their ads. For example, if an advertiser has selected the keyword "shoes," that advertiser's ad can appear when a user enters the word "shoes" as a search query, regardless of other search terms that may be used. So, the ad could show if the user enters any of the following search queries: "tennis shoes," "red shoes," or "Nike shoes." This system eliminates the need for the advertiser to specify the many different search query combinations that are relevant to their ad.

**Was this information helpful?**             Yes    No

AdWords - Contacting Us - Help with other Google products -

©2010 Google