PAUL R. BARTLESON #119273
LAW OFFICES OF PAUL R. BARTLESON
1007 7th Street, Suite 201
Sacramento, CA 95814
Ph. # (916) 447-6640
Fax # (916) 447-7840
paulbartlesonlaw@comcast.net

Attorney for Plaintiff,
DANIEL JURIN

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

-o0o-

DANIEL JURIN, an Individual,

Plaintiff,

vs.

GOOGLE, INC.

Defendant.
_______________________________________/

CASE NO. 2:09-CV-03065-MCE-KJM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS 2ND AMENDED COMPLAINT**

DATE: January 27, 2011
TIME: 2:00 PM
DEPT: Honorable Morrison C. England, Jr.

Plaintiff herein, DANIEL JURIN, hereby files his opposition to the instant motion to dismiss the 2nd Amended Complaint and states as follows:

## I.
## INTRODUCTION AND STATEMENT OF FACTS

Plaintiff DANIEL JURIN ("JURIN") is an individual and owner of a small business that markets and distributes an building industry product named STYROTRIM, which is an exterior application. In developing his business, he markets nationally and has advertising on National Televisions, print media, and, the internet, including GOOGLE Adwords.

The name STYROTRIM is Trademarked. Through this lawsuit, JURIN seeks to redress the unauthorized use of the Trademark by GOOGLE and third parties by use of the Keyword Suggestion Tool and sponsored Advertising in GOOGLE Adwords.

The problem arises in this case because of GOOGLE'S, and plaintiff's competitors' unauthorized use of a trademarked name as a generic "keyword."

GOOGLE keyword suggestion tool is an integral part of the Adwords development process. The keyword suggestion tool actively promotes keywords which are then put up for bid by advertisers and used in constructing their ads to be seen in the Google Adwords, or sponsored results. STYROTRIM is not a generic keyword but trademarked. Plaintiff alleges that GOOGLE wrongfully suggests the trademark as a keyword, sells advertising to others, and then rewards the advertising by ranking them for "relevance" in response to that keyword. By doing this GOOGLE facilitates plaintiffs competitors in infringing on plaintiff's trademarks. Not only have plaintiffs competitors been successful in bidding on plaintiff's trademarked "keywords" it has facilitated the dilution of plaintiff's customer base and diverted customers and traffic that rightfully is plaintiffs, and plaintiffs alone.

Specifically, GOOGLE enters into contracts with entities and individuals whereby said parties purchase the right to use the trademarks of their competitors in such a way that when a customer or potential customer inputs that trademark into GOOGLE's search engine in an attempt to find the website of the goods and services associated with that trademark, the website of the competitor to the trademark holder appears in GOOGLE's published search results, and often in a position superior to that of the trademark holder. In order for an Adwords user to rank in the sponsored search results, it is not necessary to use the Trademark in the Ad. All that is necessary is for the third party to bid on the keyword and link it to its ad. But these purchasers of adwords are not "competitors" in the sense that they have the right to compete for the keywords of plaintiff. They are more appropriately called interlopers, usurpers or keyword pirates. However, for sake of ease, they will be referred to as "competitors."

Plaintiff filed his 2nd Amended Complaint, attempting to address any issues raised by the courts Order dated 9/9/10.

//

//

## II.
## PLAINTIFF HAS ALLEGED VIOLATIONS OF THE LANHAM ACT

The Lanham Act, 15 USC § 1114 (1) provides:

(1) Any person who shall, without the consent of the registrant—

(a) *use in commerce* any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or ...

15 USC § 1125 (a) provides

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, *or* any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.....

....(d) Cyberpiracy prevention

(1) (A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(I) has a ***bad faith intent to profit from that mark***, including a personal name which is protected as a mark under this section;

(ii) registers, ***traffics in***, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 20506 of title 36.

Plaintiff has alleged competitive injury in the misuse of the name Styrotrim. Plaintiff alleges that Google has a bad faith intent to profit from the use of the trademark, and that it traffics in selling that keyword. While Google may not be a manufacturer of building materials, it directly assists competitors of plaintiff in diverting traffic which rightfully belongs to plaintiff. In recent years, internet marketing has stressed the much importance of the concept of "self branding," the concept of associating a particular good, product or service with a unique name and universal selling proposition. People do not buy the ingredients in Coke or Pepsi, they buy the brand and the thoughts, feelings and things associated with it. The real product or a trademark is not the features but the benefits that are perceived by the buyer. The 'product" is the brand name or trademark. Google collaborates, facilitates and encourages competitors of plaintiffs in the building industry to generate revenue from the use of the brand name. In others, the product is not just the building material, it is the value of the association that people have with the brand name or trademark. Plaintiff suggests that the circumstances of this case fall within the ambit of 1125 (d).

Google has two chances to screen out the Trademarked term: 1) before it is recommended by the Keyword Research Tool; and 2) after the Adwords Advertiser submits the Ad for Review. Their policy also states that they will not remove offending use of Trademarked Keywords after notice. One might also make a further argument that the GOOGLE Algorithm fails to screen out the copyrighted term from the search results because it ranks competitor's ads when they are not truly directly relevant.

GOOGLE asserts that the complaint still fails to allege that because they are not the producer of Styrotrim, they are not a competitor. This argument is wrong, because they are competitors for the keyword Styrotrim, and they facilitate third parties in misappropriating the Trademarked Keyword for not only the third parties' benefit, but for their own benefit in generating advertising revenue.

The court in its previous order the court states that "In the context of false designation of

origin claims, the Supreme Court has held the use of the word "origin" as referring to a false or misleading suggestion as to the "producer" of the tangible goods that are offered for sale." **Dastar**, 539 U.S. at 37 (emphasis added.) Plaintiff submits that the suggestion of the keyword Styrotrim by Google and use by third party competitors does in fact create a confusion as to the "origin" of the product because a competitor can rank for the keyword without ever mentioning its own name or using the word Styrotrim in the ad copy. Google's authorization and suggestion of the keyword does in fact cause confusion as to the "producer" of the tangible good, even though it is not the actual producer. Plaintiff suggests that the language of statute does not require a false designation as the statute is written in the alternative, not the conjunctive. Plaintiff further suggests that the reason why the Rescuecom court did not focus on the designation of origin part of the statute is that it was not necessary to consider that prong in reach of the statute, as it was enough for plaintiff to allege a "use in commerce." Plaintiff contends the ***Rescuecom*** rationale applies in this case.

**B) THE SUGGESTION OF THE TRADEMARK IS LIKELY TO CAUSE CONFUSION IN CONSUMERS AND OTHER ADVERTISERS**

Plaintiff's 2AC alleges that there is a likelihood of confusion among 1) purchasers or 2) explorers of its services. (JURIN's 2nd AC ¶ 51-70.) Because a consumer can land on a competitors site by bidding ono the trademarked keyword, consumers can be easily misled as to who is the producer of the product. This diverts potential customers from plaintiff, dilutes plaintiff's traffic, and raises the cost of bidding on a keyword that solely belongs to Plaintiff. Further advertisers might assume that Styrotrim is a generic word, like Aspirin and thus craft an add using the keyword unwittingly. Plaintiff should be given a chance to prove the allegations.

**C) GOOGLE IS A COMPETITOR OF PLAINTIFF**

Google contends that it is not a competitor of plaintiff. By allowing the use of the keyword, GOOGLE contracts with Third Parties (competitors) to derive income from plaintiffs advertising audience. The fact that GOOGLE is not in the building materials business is

irrelevant. It derives its income from contracts with third parties who are direct competeting with plaintiffs for the keyword for which there should be no competition. Absent use by the third parties in utilizing the Keyword Suggestion Tool and by placing Adwords campaigns, neither competitors nor GOOGLE would derive income from the same activity. Google is an intended contractual beneficiary of third party advertisers and collaborates, cooperates and or conspires in the misappropriation of the trademark. GOOGLE, along with "competitors" is vying for advertising revenue generated by the Keyword Styrotrim.

Plaintiff's 2nd Amended Complaint properly alleges that Google competes for the Keyword Styrotrim, in that Plaintiff is the only one entitled to market that unique keyword, and defendants motion must be denied. In this case, plaintiff maintains that the **Google's** and Third Parties' use in commerce and the marketing of the keyword STYROTRIM directly interferes with his ability to market that keyword. JURIN markets on a national, if not worldwide basis. GOOGLE and third parties are improperly promoting that keyword and therefore vie directly for all advertising revenue related to that Keyword, not the search results for building materials or stucco or some other generic keyword. Potential customers of Styrotrim are misdirected to competitors websites through the utilization of the Adwords tool and sponsored results..

GOOGLE'S argument that they are not a competitor because they are not in the building industry misses the point. They, along with third party advertisers, compete for use of the trademarked keyword STYROTRIM. GOOGLE markets the keyword STYROTRIM to their own advantage and its activity is ongoing and continuous. This use is clearly contradicted by the Lanham Act. Google Adwords Advertisers are falsely led to believe that the Keyword is subject to public use and bid on the keyword. They then publish ads which rank for relevance to the Keyword, to plaintiff's resulting detriment.

As a result, consistent with the ***Rescuecom*** case, plaintiff has properly alleged violation of 1125 (a) (1) (A) and 1125 (a) (1) (B).

**IV.**
**PLAINTIFF'S COMPLAINT STATES A**

**CLAIM FOR RELIEF FOR BREACH OF CONTRACT**

Plaintiff's 2nd Amended complaint alleges that he has a contract with GOOGLE for his Adwords advertising account. The contract is formed by applying online through Google Adwords. As part of the terms of the agreement, an Adwords advertiser is bound to abide by the terms of the Google Adwords policy which are incorporated into the Google Adwords advertiser's terms of service.

Google's Trademark Policy is incongruent and contradictory, (2AC¶¶ 31-31e). At first blush, Google states that Google recognizes the importance of trademarks. Our Adwords Terms and Conditions with advertisers prohibit intellectual property infringement by advertisers. (2AC ¶ 31.) Google then goes on to state "Advertisers are responsible for the keywords they choose to generate advertisements and text that they choose to use in those advertisements." At the same time, Google apparently takes no responsibility for the keywords *it generates* when suggesting trademarked terms in the keyword suggestion tool. Yet Google refuses to disable the offending keyword even after notice. In the real world, this is called hypocrisy. The reason why it won't disable others from using the trademarked keyword is that it generates advertising revenue from the sale of that keyword. The product being sold by Google is the keyword itself, not the building material. That keyword is Jurin's not Google's and Google profits from others every time the make a sale on that keyword.

As an Adwords advertiser, JURIN has a reasonable expectation that he will not be deprived of the benefits of his bargain. He is the only authorized user of the Trademark, Styrotrim.

All Google advertisers, are bound by the terms of the Google adwords policy. Before an ad will run, the user must agree to the "terms of use."

As an advertiser, JURIN has a reasonable expectation that Google will comply with the terms of its own policy. It is pure sophistry to claim that Google Adwords advertisers are bound by the terms of the policy on the one hand, and that Google may disregard it in applying and enforcing the terms of promoting the use of keywords and generating revenue based on a violation of its own terms of use. Google's policy purportedly is to investigate any alleged trademark complaint in ad text o

ad text and keywords, but then states that it will not disable keywords in response to complaint. This is self contradictory. There is no purpose in investigating any complaint regarding trademark use if no action is going to be taken regarding the knowing misuse of the keyword. Google cannot claim on the one hand that they will undertake to investigate any complaint of trademark infringement and then claim they have no responsibility to do something about it. The failure to do so directly deprives the rightful user of the keyword of the benefits of the advertising agreement with GOOGLE. GOOGLE'S failure to disable the keyword is a knowing breach of the agreement with the only rightful owner/user of the trademarked keyword, in flagrant disregard of the Trademark Law.

CC § 1636 provides: A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at time of contracting, so far as thee same is ascertainable and lawful." Further, the apparent main purpose of the parties is to be given effect. "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected. (CC 1653). Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clauses, subordinate to the general purpose of the whole contract. (CC 1652; ***Anderson v. Badger*** (1948) 84 Cal. App. 2d 736, 742.)

In this case the stated policy of investigating trademark complaints is flatly contradicted by the statement that it Google will not disable trademarked keywords. Further, the fact that Google's stated policy of not disabling trademarked keywords is hidden or concealed under another hyperlink is deceptive. It is also fascinating to ponder why Google would disable keywords in other countries, but not the U.S. Google thus gets the benefit of promoting the keyword, generating revenue off direct competitors ads, at the same time as disclaiming any responsibility to disable the offending keyword or remove an offending ad.

Plaintiff contends this is a breach of the expectation of the average Google Adword user and a breach of the implied covenant of good faith and fair dealing. "There is implied in every contract a covenant by each party not to do anything which deprive the other parties thereto of the benefits of the contact...This covenant not only imposes upon each contracting party the duty to refrain from

doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose. Witkin, Summary of Cal. Law, 10th Ed 2005) Contracts § 798, p. 892 and cases cited therein.

The Restatement 2d of Contracts declares: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest. 2d, Contracts § 205.)

Witkin goes on to state that,

> "Good faith performance is explained in comment d: "Subterfuges and evasions violate the obligation of food faith in performance even thought the act believes his conduct to be justified. But the obligation goes further: bad faith may be over or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference or failure to cooperate with the other party's performance. (Ibid at p. 893, 894.)

Plaintiff respectfully submits that Google's self contradictory policy as set forth is a breach of the implied covenant of good faith and fair dealiing. As such, plaintiff has stated a claim for breach of contract.

**VII.**
**CONCLUSION**

WHEREFORE, for all the above stated reasons, Plaintiff respectfully prays for an ORDER DENYING Defendant's Motion to Dismiss, or that Plaintiff be allowed to amend his complaint to allege further facts consistent with the above.

DATED: January 13, 2011

Respectfully submitted,

LAW OFFICES OF PAUL R. BARTLESON

By/s/ Paul R. Bartleson

PAUL R. BARTLESON #119273
Attorney for Plaintiff, DANIEL JURIN