UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL JURIN,　　　　　　　　　　　No. 2:09-cv-03065-MCE-KJM

　　　　Plaintiff,

　v.　　　　　　　　　　　　　　**MEMORANDUM AND ORDER**

GOOGLE INC.,

　　　　Defendants.

----oo0oo----

Through this action, Plaintiff Daniel Jurin ("Plaintiff") alleges several violations of state and federal law arising out of the use of its trademarked name "Styrotrim" by Defendant Google, Inc. ("Defendant"). Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Second and Sixth Causes of Action for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6)[1]. As set forth below, Defendant's Motion will be granted in part and denied in part.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

**BACKGROUND[2]**

Plaintiff challenges the lawfulness of Defendant's keyword suggestion tool in its for-profit "Google AdWords" program.

### A.  Background On Search Engines

Defendant is a highly recognized corporation most known for its widely used search engine website.  As part of operating its search engine, Defendant "indexes" websites, and collects information regarding their contents so that it, in turn, can store the information for use in formulas which respond to search queries.  Generally, when a user enters a query into Defendant's website, the search engine will process relevant websites based on several information factors and then return results to the user.

Web designers routinely use this process to influence their ranking on Defendant's results page.  Prior to building a site, web designers will often conduct a keyword search using various available keyword tools in order to determine what terms or phrases internet users are most commonly searching for.  A web designer will then build its site around more popular search terms in order to ensure a higher rank on a search engine results page.

///
///

---

[2] The factual assertions in this section are based on the allegations in Plaintiff's Complaint unless otherwise specified.

2

Additionally, those with more capital may advertise their websites by "bidding" on keywords. A web designer can construct an ad using popular keywords, and then pay a search engine provider a fee to bid on those keywords in an effort to appear on a search engine results page as a "Sponsored Link" whenever users enter those keywords in their search queries. The higher a web designer bids, the higher the "Sponsored Link" placement when those bid-upon keywords are searched for. "Sponsored Links" appear either at the top or along the side of a search engine results page. As part of its business, Defendant allows advertisers to bid on keywords in a program called "Google AdWords" ("AdWords") and through this program, encourages advertisers to bid on additional relevant keywords using a "keyword suggestion tool."

**B.   Plaintiff's Suit**

Plaintiff owns a company which markets and sells its trademarked "Styrotrim" building material to homeowners, contractors, and those in the construction and remodeling industries. Plaintiff filed suit in this case based on Plaintiff's competitors' alleged unauthorized use of its trademarked name as a generic keyword, with the alleged encouragement of Defendant's keyword suggestion tool in its AdWords program.

Defendant's keyword suggestion tool picked up the trademarked name "Styrotrim" as a commonly searched term and thereafter suggested it as a keyword to bidders in AdWords.

3

1  Defendant's AdWords program has a policy recognizing the
2  importance of trademarks and states in its terms and conditions
3  that it prohibits intellectual property infringement by
4  advertisers.  In this policy, Defendant states it will
5  investigate matters raised by trademark owners.  Additionally,
6  the terms and conditions of this policy lay out precisely the
7  scope of investigation it will conduct based on the region in
8  which the trademark holder resides.  In the United States, the
9  scope of the investigation will only cover trademarks appearing
10 in the text of advertisements, and not bid-upon keywords.
11      By both allowing and encouraging Plaintiff's competitors to
12 bid on the keyword "Styrotrim," Defendant caused their
13 advertisements to appear as "Sponsored Links" on a results page
14 whenever a user searches for "Styrotrim."  And, where Plaintiff's
15 competitors have placed a higher bid on its own trademark, they
16 will appear at a higher rank in the list of "Sponsored Links."
17      Plaintiff now alleges that through AdWords, Defendant
18 misappropriated Plaintiff's trademark name for its own profit and
19 breached its contract with Plaintiff by failing to investigate
20 trademark infringement as required by the Adwords policy.
21 Plaintiff alleges Defendant generates advertising revenue from
22 Plaintiff's competitors, and facilitates their infringement of
23 Plaintiff's trademark.  Plaintiff alleges that Defendant's
24 actions have caused a dilution of its consumer base by often
25 causing competitors to appear in a position higher than Plaintiff
26 on a results page where they have placed a higher bid on its
27 trademark name.
28 ///

4

1  Plaintiff argues this arrangement confuses consumers into
2  believing that a competitor's product is preferable to
3  Plaintiff's and is a form of "bait and switch" advertising
4  purposefully using Plaintiff's trademarked name to misdirect
5  "Styrotrim" consumers away from Plaintiff's site.  Additionally,
6  Plaintiff alleges that consumers may become confused as to
7  whether its competitors are associated with Plaintiff's product.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. at 1964-65 (internal citations and quotations omitted).  Factual allegations must be enough to raise a right to relief above the speculative level.
///

5

1  Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and
2  Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must
3  contain something more...than...a statement of facts that merely
4  creates a suspicion [of] a legally cognizable right of action")).
5       "Rule 8(a)(2)...requires a 'showing,' rather than a blanket
6  assertion of entitlement to relief.  Without some factual
7  allegation in the complaint, it is hard to see how a claimant
8  could satisfy the requirements of providing not only 'fair
9  notice' of the nature of the claim, but also 'grounds' on which
10 the claim rests."  Twombly, 550 U.S. 556 n.3.  A pleading must
11 contain "only enough facts to state a claim to relief that is
12 plausible on its face."  Id. at 570.  If the "plaintiffs...have
13 not nudged their claims across the line from conceivable to
14 plausible, their complaint must be dismissed."  Id.
15 Nevertheless, "[a] well-pleaded complaint may proceed even if it
16 strikes a savvy judge that actual proof of those facts is
17 improbable, and 'that a recovery is very remote and unlikely.'"
18 Id. at 556.
19     A court granting a motion to dismiss a complaint must then
20 decide whether to grant leave to amend.  A court should "freely
21 give" leave to amend when there is no "undue delay, bad faith[,]
22 dilatory motive on the part of the movant,...undue prejudice to
23 the opposing party by virtue of...the amendment, [or] futility of
24 the amendment...."  Fed. R. Civ. P. 15(a); Foman v. Davis,
25 371 U.S. 178, 182 (1962).  Generally, leave to amend is denied
26 only when it is clear the deficiencies of the complaint cannot be
27 cured by amendment.  DeSoto v. Yellow Freight Sys., Inc.,
28 957 F.2d 655, 658 (9th Cir. 1992).

**ANALYSIS**

**A.  Lanham Act**

Plaintiff's Second Amended Complaint alleges that Defendant's use of the term "Styrotrim" in its keyword suggestion tool, and its publishing of "Sponsored Links" in response to an online search for "Styrotrim," constitutes false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Specifically, Plaintiff alleges that "advertising competitors of 'Styrotrim' in the building materials industry are falsely misled that the keyword 'Styrotrim' is a generic word and not an abstract trademarked term." According to Plaintiff, its competitors are in this way induced to infringe on Plaintiff's trademark.

Plaintiff further argues that end users have a reasonable expectation that the websites provided to them on Defendant's search results page are associated with Plaintiff. Plaintiff claims that said consumers may become "confused, mistaken, misled and/or deceived" that the "Sponsored Links" are affiliated with Plaintiff or are themselves producers of "Styrotrim."

The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in...commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), creates a federal remedy against a person who "used in commerce a 'false designation of origin, or any false description or representation' in connection with 'any goods or services.'" Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003).

7

15 U.S.C. § 1125(a) creates civil liability for,

> "(1) any person who...uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designations of origin, false or misleading description of fact, or false or misleading representation of fact, which...
>
>     (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
>     (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

15 U.S.C. § 1125(a), then, provides two distinct grounds on which to base a cause of action alleging unfair competition. 15 U.S.C. § 1125(a)(1)(A) protects against false association and 15 U.S.C. § 1125(a)(1)(B) protects against false advertising. <u>Kournikova v. General Media Communs., Inc.</u>, 278 F. Supp. 2d 1111, 1116-17 (C.D. Cal. 2003). Plaintiff has invoked both of these grounds in its second claim for false designation of origin.

### 1. False Association

To bring a false association claim, § 1125(a)(1)(A) requires the holder of a valid trademark to show that a defendant's illicit use of its mark in commerce has caused consumers to become confused, mistaken, misled and/or deceived as to the producer of the goods offered for sale. <u>Waits v. Frito-Lay, Inc.</u>, 978 F.2d 1093, 1109-10 (9th Cir. 1992).

///

8

1  Unlike the false advertising prong of § 1125(a), a false
2  association claim does not require parties to be direct
3  competitors. Id.; see also Jack Russell Terrier Network v. Am.
4  Kennel Club, Inc., 407 F.3d 1027, 1036-37 (9th Cir. 2005).
5      Plaintiff's Second Amended Complaint alleges that
6  Defendant's use of AdWords program and its keyword suggestion
7  tool has caused a false association between Plaintiff's
8  "Styrotrim" building materials and those of its competitors.
9  Plaintiff alleges that internet users who enter the keyword
10 "Styrotrim" on Defendant's search engine, and view the websites
11 for Plaintiff's competitors in "Sponsored Links," may become
12 confused as to which company is the producer of "Styrotrim," or
13 whether competitors are associated with "Styrotrim."
14     Defendant does not dispute that Plaintiff has standing to
15 bring a claim for false association.  Rather, Defendant's sole
16 contention as to this prong is that § 1125(a)(1)(A) should be
17 construed narrowly such that the defendant must be the producer
18 of the goods that the plaintiff has alleged caused confusion with
19 its own goods.  Because Defendant is a search engine, and not a
20 producer of building materials, Defendant argues that Plaintiff's
21 claim is not properly brought against it.
22     Defendant cites to two cases to support this contention:
23 Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1014 (3d Cir. 2008)
24 and Cairns v. Franklin Mint Co., 24 F. Supp. 2d 1013, 1032 (C.D.
25 Cal. 1998).  However, neither of these cases address the issue of
26 whether the statute requires defendant to be the producer of the
27 goods at issue.
28 ///

The former case merely states the issue as it applies to the particular facts of that case, which did involve a direct competition between the plaintiff and defendant. The latter case is concerned with the issue of who may be a <u>plaintiff</u>, and not who may be a <u>defendant</u>. In fact, this same case goes on to state that the statutory language, "another person" was purposefully selected with the intent that it be applied broadly, and that these words indicate Congressional intent to make § 1125(a)(1)(A) an expansive provision. <u>Cairns</u>, 24 F. Supp. 2d at 1032-33.

<u>Cairns</u> was right to point out that the language of § 1125(a)(1)(A) is general in nature. In referring to parties who may be involved, the statute uses indefinite language such as "any person" and "another person." Further, the legislative history for the 1988 amendments[3] to § 43(a) of the Lanham Act contains a report by the International Trademark Association confirming legislative intent to construe the provision broadly. This report explains in detail the underlying rationale for each recommended amendment. In the section of the report recommending changes to § 43(a), the report duly noted the fact that the original 1946 version of § 43(a) was very narrow in scope, but was subsequently interpreted quite broadly by judges over ensuing years. The report goes on to state that it "believes it advisable to conform the language of § 43(a) to the expanded scope of protections applied by the courts."

---

[3] The 1988 amendments first split § 43(a) into the two separate prongs for false association and false advertising. The original 1946 version of § 43(a) had no subsections. Lanham Act of 1946, Pub. L. No. 489, § 1125(a), 60 Stat. 427, 441 (1946) (amended 1988).

1  The report then notes that it wished to "make it clear that we
2  encourage the courts to give our amended section the same
3  innovative interpretation they have given the original."  "The
4  United States Trademark Association Trademark Review Commission
5  Report and Recommendations to USTA President and Board of
6  Directors," 77 T.M. Rep. 375, 426-27 (1987).  See also 133 Cong.
7  Rec. 32812 (1987) (statement of Sen. DeConcini) ("The bill I am
8  introducing today is based on the Commission's report and
9  recommendations").  Given the very broad and general language of
10 § 1125(a) and the legislative history encouraging courts to
11 interpret innovatively, Defendant has very little, if any,
12 support for a narrow construction of the statute.
13     Finally, if this Court were to superimpose the words
14 "plaintiff" and "defendant" over the general language of the
15 statute, as Defendant advocates, it would undermine an abundance
16 of case law explicitly holding that subsection (A) does not
17 require defendant to be a "direct competitor" of plaintiff.  See
18 e.g. Jack Russell Terrier Network 407 F.3d at 1036-37; Waits,
19 978 F.2d at 1109-10.  A competitor in the sale of goods is
20 defined as persons endeavoring to furnish the same merchandise.
21 Kournikova, 278 F. Supp. 2d at 1117.  With very few exceptions in
22 suits over false designation of goods, if a defendant must be the
23 producer of the goods that are confused with plaintiff's goods,
24 it must necessarily be a direct competitor of plaintiff.  Neither
25 case law nor congressional intent provides support for the
26 dramatic change in statutory interpretation espoused by
27 Defendant.
28 ///

11

Because of both long-standing tradition in the case law, as well as clearly stated legislative intent in interpreting § 43(a) of the Lanham Act broadly, this Court declines to require Defendant to be the producer of goods in order to continue a claim for false association. Because a narrow construction of the statute was Defendant's only argument against Plaintiff's claim for false designation of origin, the claim stands.[4] Defendant's Motion to Dismiss Plaintiff's second claim for false designation of origin is denied.

**2.     False Advertising**

Plaintiff also alleges that Defendant's AdWords program constitutes false advertising. False advertising claims arising under 15 U.S.C. § 1125(a)(1)(B) must show that the holder of a valid trademark has sustained a competitive injury from a defendant's illicit use of the trademark in advertising that misrepresents plaintiff's goods. <u>Jack Russell Terrier Network</u>, 407 F.3d at 1037. A 'competitive injury' occurs when a direct competitor, defendant, harms the plaintiff's ability to compete with it in their shared marketplace. <u>Id.</u>

///
///
///

---

[4] To the extent this conclusion runs counter to the Court's previous orders (ECF Nos. 19, 39) on Defendant's prior Motions to Dismiss, the Court has now concluded that the analysis set forth herein is the correct one. Any earlier determination to the contrary is hereby revised in accordance with the provisions of Federal Rule of Civil Procedure 54(b).

12

1  Plaintiff contends that it did sustain a competitive injury
2 from Defendant's misappropriation of its trademark because the
3 two companies are competitors for the word "Styrotrim."  Because
4 Plaintiff has alleged both false association and false
5 advertising in its second claim, and because the false
6 association ground survives, the claim as a whole stands.  This
7 Court need not address whether Plaintiff and Defendant are direct
8 competitors for the keyword "Styrotrim" at this point under a
9 false advertising analysis.

**B.  Breach of Contract**

Plaintiff's sixth claim alleges breach of contract generally, but does not allege breach of an express provision. Instead, Plaintiff articulates in ¶ 116 of its Second Amended Complaint that the claim is for breach of the implied covenant of good faith and fair dealing.  Because this is a contractually based claim, a discussion of whether an underlying contractual breach is present is in order.  That discussion follows.

**1.  Breach of Express Provision**

Under California law, to state a claim for breach of contract, plaintiff must show: 1) the existence of the contract; 2) plaintiff's performance or excuse for nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damages. Armstrong Petrol Corp. v. Tri Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n. 6 (2004).

13

A contract requires consideration between the parties, or an exchange of some kind.  Restatement (Second) of Contracts § 71 (1981).

Plaintiff alleges that it has a contract with Defendant, but has not referred to any written agreement between itself and Defendant above and beyond the AdWords policy.  Plaintiff alleges no facts to support its contention that this policy was a contract between Plaintiff and Defendant, and not just a general policy statement on Defendant's website.  A broadly stated promise to abide by its own policy does not hold Defendant to a contract.

Even were a contract present, however, Plaintiff points to no breach of any express provision that would give rise to contractual liability.  Plaintiff states that Defendant was required by the terms and conditions of the AdWords policy to investigate Plaintiff's complaint of trademark infringement and to remove the trademarked keyword term from its database. However, by Plaintiff's own admission in its Second Amended Complaint, Defendant did not violate its policy: "...[Defendant] does not prohibit itself from misusing the trademark of the owner in the keyword suggestion tool...Further, the stated policy of investigating ad words and keywords is not applicable in the United States..."  (Second Am. Compl. ¶¶ 113-114).

///
///
///
///
///

14

Defendant attaches in Exhibit B to the Declaration of Margaret M. Caruso (ECF No. 42) its Adwords policy[5], which does in fact state that it will not disable keywords in response to a trademark complaint in several regions including the United States. It follows then, that Defendant did not violate any express provision of its policy or of any contract which may have existed.

### 2. Breach of Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing is limited to protecting express terms of the contract, and cannot itself override an express contractual provision. <u>In re Sizzler Restaurants Intern., Inc</u>., 225 B.R. 466, 476 (C.D. Cal. 1998). Good faith and fair dealing is satisfied where the conduct at issue is either expressly permitted or at least not prohibited. <u>Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.</u>, 2 Cal. 4th 342, 373 (1992).

Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing by taking a strong stance against trademark infringement, yet encouraging misuse of trademarks in the keyword suggestion tool.

///

---

[5] <u>U.S. v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003) permits a document to be considered part of the complaint if plaintiff refers to the document extensively. Defendant may proffer the document at the 12(b)(6) stage when plaintiff has omitted references to the document upon which his claims are based. Plaintiff has done that here. This Court therefore incorporates by reference, Defendant's Adwords policy provided in support of its Motion to Dismiss (ECF No. 42).

1  Defendant's stated policy is that in the United States it will
2  only investigate trademark infringements where they appear in the
3  ad itself, and not in the keywords.  Defendant did not violate,
4  but rather followed, the terms of its policy, and because this
5  conduct was expressly permitted, good faith is satisfied.  Since
6  the implied covenant cannot override express provisions,
7  Plaintiff may not force Defendant to do what the provision states
8  it will not do, and insist on an investigation of keywords.
9  Defendant has not breached the implied covenant of good faith and
10 fair dealing as alleged by Plaintiff.
11     Plaintiff is unable after a third opportunity to allege
12 conduct constituting breach of an existing contract or the
13 implied covenant of good faith and fair dealing.  This Court
14 presumes, then, that Plaintiff cannot remedy this defect.
15 Accordingly, Defendant's Motion to Dismiss Plaintiff's sixth
16 Claim for breach of contract is GRANTED without further leave to
17 amend.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to
Dismiss **Plaintiff**'s Second Amended Complaint (ECF No. 41) is
GRANTED in part and DENIED in part.  Defendant's Motion to
Dismiss Plaintiff's Second Claim for Relief pursuant to Federal
Rule of Civil Procedure 12(b)(6) is DENIED.
///
///
///

16

1  Defendant's Motion to Dismiss Plaintiff's Sixth Claim for Relief
2  pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED,
3  without further leave to amend.[6]
4      IT IS SO ORDERED.
5  Dated: February 14, 2011

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[6] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument.  E.D. Cal. Local Rule 230(g).